**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | |
|---|---|
| FRIENDS OF THE RUIDOSA CHURCH, *et al.*, <br><br>                     *Plaintiffs*, <br><br> *v.* <br><br><br> MARKWAYNE MULLIN, *et al.*, <br><br>                     *Defendants*. | Civil Action No. 3:26-CV-01099-KC |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

STATEMENT OF ISSUES ................................................................................................ vii

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND.............................................................................................. 2

    I.      Statutory Framework ...................................................................................... 2

    II.     The Secretary's Exercise of Waiver Authority........................................... 4

    III.    Procedural History ...................................................................................... 6

ARGUMENT................................................................................................................... 6

    I.      The Plaintiffs cannot, and do not, challenge the construction of a "Great Wall.".. 6

    II.     The Big Bend Waivers do not violate the Major Questions Doctrine. ................... 7

    III.    The Big Bend Waivers do not violate the Non-Delegation Doctrine. .................. 11

    IV.    The Big Bend Waivers do not violate the Take Care Clause. ............................. 16

    V.     The Big Bend Waivers do not violate the Presentment Clauses........................... 18

CONCLUSION............................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Acree v. Republic of Iraq*,
370 F.3d 41 (D.C. Cir. 2004) ...................................................................................... 19

*Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
594 U.S. 758 (2021) ................................................................................................... 10

*Am. Power & Light Co. v. SEC*,
329 U.S. 90 (1946) ..................................................................................................... 13

*Biden v. Nebraska*,
600 U.S. 477 (2023) .............................................................................................. 7, 8, 10

*Brnovich v. Biden*,
630 F. Supp. 3d 1157 (D. Ariz. 2022) ........................................................................ 16

*Clinton v. City of New York*,
524 U.S. 417 (1998) ............................................................................................... 18, 20

*Cnty. of El Paso v. Chertoff*,
No. 08-196, 2008 WL 4372693 (W.D. Tex. Aug. 29, 2008),
*cert. denied*, 557 U.S. 915 (2009) .............................................................. 5, 12, 15, 18

*Ctr. for Biological Diversity v. McAleenan*,
404 F. Supp. 3d 218 (D.D.C. 2019),
*cert. denied sub. nom. Ctr. for Biological Diversity v. Wolf*, 591 U.S. 1015 (2020) ......... *passim*

*Ctr. for Biological Diversity v. Noem*,
No. 25-00365-TUC-AMM, 2026 WL 836278 (D. Ariz. Mar. 26, 2026) ................. 4, 12, 13, 18

*Defs. of Wildlife v. Chertoff*,
527 F. Supp. 2d 119 (D.D.C. 2007),
*cert. denied*, 554 U.S. 918 (2008) ....................................................................... *passim*

*FCC v. Consumers' Rsch.*,
606 U.S. 656 (2025) ............................................................................................... 12, 13

*Florida v. United States*,
660 F. Supp. 3d 1239 (N.D. Fla. 2023) ...................................................................... 16

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
561 U.S. 477 (2010) .................................................................................................... 16

*In re Border Infrastructure Env't Litig.*,
  284 F. Supp. 3d 1092 (S.D. Cal. 2018),
  *aff'd*, 915 F.3d 1213 (9th Cir. 2019),
  *cert. denied sub. nom.*
  *Animal Legal Def. Fund. v. DHS*, 586 U.S. 1035 (Dec. 3, 2018) ............................. 4, 12, 15, 17

*In re NSA Telecomms. Recs. Litig. v. AT&T Corp.*,
  671 F.3d 881 (9th Cir. 2011)................................................................................................ 19

*Las Ams. Immigrant Advoc. Ctr. v. Biden*,
  571 F. Supp. 3d 1173 (D. Or. 2021)..................................................................................... 16

*Learning Res., Inc. v. Trump*,
  607 U.S. 229 (2026) ........................................................................................................ 8, 10

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
  591 U.S. 657 (2020) ............................................................................................................ 11

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .............................................................................................................. 7

*Mayfield v. U.S. DOL*,
  117 F.4th 611 (5th Cir. 2024)................................................................................................ 7

*Moore v. Bryant*,
  853 F.3d 245 (5th Cir. 2017)................................................................................................. 7

*Murthy v. Missouri*,
  603 U.S. 43 (2024) ................................................................................................................ 7

*N. Am. Butterfly Ass'n v. Nielsen*,
  368 F. Supp. 3d 1 (D.D.C. 2019),
  *aff'd in part, rev'd in part sub nom. N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244 (D.C. Cir.
  2020)...................................................................................................................................... 5

*Nat'l Infusion Ctr. Ass'n v. Kennedy*,
  798 F. Supp. 3d 748 (W.D. Tex. 2025),
  *appeal filed*, No. 25-50661 (5th Cir. Aug. 15, 2025).................................................... 11

*NFIB. v. OSHA*,
  595 U.S. 109 (2022) ............................................................................................................ 10

*Presidio Mun. Dev. Dist. v. DHS*,
  No. CV 26-2146 (RBW), 2026 WL 2213850 (D.D.C. Aug. 2, 2026) .................................... 5

*Republic of Iraq v. Beaty,*
   556 U.S. 848 (2009) ............................................................................................... 19

*Save Our Heritage Org. v. Gonzalez,*
   533 F. Supp. 2d 58 (D.D.C. 2008) ..................................................................... 5, 12

*Sierra Club v. Ashcroft,*
   No. 04-272, 2005 WL 8153059 (S.D. Cal. Dec. 13, 2005)............................. 5, 12, 15

*Sierra Club v. Trump,*
   379 F. Supp. 3d 883 (N.D. Cal. 2019),
   *aff'd*, 963 F.3d 874 (9th Cir. 2020), *vacated and remanded*, 142 S. Ct. 42 (2021) ................... 5

*Smith v. Fed. Rsrv. Bank of N.Y.,*
   280 F. Supp. 2d 314 (S.D.N.Y. 2003),
   *aff'd*, 346 F.3d 264 (2d Cir. 2003) ......................................................................... 20

*Tex. Tobacco Barn, L.L.C. v. U.S. Dep't of Health & Hum. Servs.,*
   180 F.4th 229 (5th Cir. 2026)..................................................................................... 9

*West Virginia v. EPA,*
   597 U.S. 697 (2022) ..................................................................................... 7, 8, 10

*Youngstown Sheet & Tube Co. v. Sawyer,*
   343 U.S. 579 (1952) ............................................................................................... 17

**U.S. Constitution**

U.S. Const. art. II, § 3 ............................................................................................... 16

**Statutes**

6 U.S.C. § 202(1) ....................................................................................................... 2

6 U.S.C. § 202(2) ....................................................................................................... 2

25 U.S.C. § 3406(d) ................................................................................................... 20

Deficit Reduction Act,
   Pub. L. No. 109-171, § 5107(a)(2), 120 Stat. 4, 42 (Feb. 6, 2006) .......................... 20
Illegal Immigration Reform and Immigrant Responsibility Act,
   Pub. L. No. 104-208, div. C, tit. I, § 102, 110 Stat. 3009-554 (Sept. 30, 1996) (codified 8
   U.S.C. § 1103 note)........................................................................................ *passim*

Pub. L. No. 109-13, div. B, tit. I, § 102(c)(1), 119 Stat. 231, 306 (2005) ...................................... 4

Pub. L. No. 110-161, div. E, tit. V, § 564, 121 Stat. 1844, 2090 (2007) .................................. 3, 9

Secure Fence Act of 2006,
Pub. L. No. 109-367, 120 Stat. 2638 (Oct. 26, 2006) ................................................. 2, 3, 11, 15

**Regulations**

70 Fed. Reg. 55622 (Sept. 22, 2005) ............................................................................................ 4

72 Fed. Reg. 60870 (Oct. 26, 2007) ............................................................................................. 4

73 Fed. Reg. 19078 (Apr. 8, 2008) ............................................................................................... 4

82 Fed. Reg. 35984 (Aug. 2, 2017) .............................................................................................. 4

84 Fed. Reg. 21798 (May 15, 2019) ............................................................................................ 4

90 Fed. Reg. 23946 (June 5, 2025) ............................................................................................... 4

91 Fed. Reg. 7297 (Feb. 17, 2026) .......................................................................................... 5, 14

91 Fed. Reg. 27969 (May 15, 2026) ............................................................................................ 6

91 Fed. Reg. 34831 (June 9, 2026) .............................................................................................. 6

91 Fed. Reg. 40550 (July 2, 2026) ............................................................................................... 5

**Other Authorities**

CBP, Nationwide Drug Seizures (last modified Jul. 16, 2026),
http://www.cbp.gov/document/stats/nationwide-drug-seizures ................................................. 14

Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant
Responsibility Act of 1996, as Amended, 91 Fed. Reg. 7297 (Feb. 17, 2026) ............................ 5

Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant
Responsibility Act of 1996, as Amended, 91 Fed. Reg. 27969 (May 15, 2026) ......................... 6

Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant
Responsibility Act of 1996, as Amended, 91 Fed. Reg. 34831 (June 9, 2026) ......................... 5

Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant
 Responsibility Act of 1996, as Amended, 91 Fed. Reg. 40550 (July 2, 2026) ........................... 5

H.R. Rep. No. 109-72 (May 3, 2005) ....................................................................................... 4, 9

**STATEMENT OF ISSUES**

1.  Whether, pursuant to §102(c) of the Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. No. 104-208, div. C, tit. I § 102, 110 Stat. 3009-554 (Sept. 30, 1996), codified at 8 U.S.C. § 1103 note, the Secretary of Homeland Security's issuance of two distinct Waivers and their amendments violates the Major Questions Doctrine.

2.  Whether Congress violated the Non-Delegation Doctrine by allowing the Secretary of Homeland Security to issue waivers of laws under the Illegal Immigration Reform and Immigrant Responsibility Act.

3.  Whether the Secretary of Homeland Security's waivers of certain laws under the Illegal Immigration Reform and Immigrant Responsibility Act violate the Take Care Clause.

4.  Whether the Secretary's waivers of certain laws under the Illegal Immigration Reform and Immigrant Responsibility Act violate the Presentment Clauses.

**INTRODUCTION**

Defendants Markwayne Mullin, in his official capacity as Secretary of Homeland Security, U.S. Department of Homeland Security, and U.S. Customs and Border Protection, hereby move for summary judgement on all counts brought by Plaintiffs Friends of Ruidosa Church, Danny William Miller Junior, and Center for Biological Diversity, and oppose Plaintiffs' motion for summary judgment. There is no genuine issue as to any material fact, and Defendants are entitled to judgment in their favor as a matter of law.

Congress has repeatedly articulated that the construction of border infrastructure is a significant, national priority. To effectuate that priority, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), which authorized the U.S. Department of Homeland Security to construct physical barriers and roads along the border. Congress determined that expeditious completion of such construction can outweigh compliance with other laws, including environmental laws that can lead to protracted litigation. One of the statutory tools that the Secretary of Homeland security may use in carrying out that task is waiving legal requirements; the IIRIRA authorizes the Secretary to waive any legal requirements to ensure expeditious construction of border barriers and roads. Although the IIRIRA has been amended several times, that waiver authority has been reiterated and strengthened through each amendment.

In this case, Plaintiffs challenge §102(c) of the IIRIRA and two recent waivers issued under its authority. Plaintiffs raise four claims: (1) that the Secretary of Homeland Security's issuance of these waivers violates the Major Questions Doctrine, (2) that Congress improperly delegated authority to waive laws to the Executive Branch, (3) that the Secretary's waivers of laws violate the Take Care Clause, (4) and that the Secretary's waivers of laws violate the bicameralism and presentment procedures in the Presentment Clauses. Such theories have no credible basis in constitutional jurisprudence. Other courts have unanimously rejected identical Non-Delegation,

1

Presentment, and Take Care challenges to DHS's waiver authority, and Plaintiffs provide no basis for this Court to reach a different conclusion. Plaintiffs' novel Major Questions Doctrine argument similarly fails. The Court lacks jurisdiction to consider this type of non-constitutional claim and, in any event, Congress has provided clear statutory authority for DHS to construct barriers along the southern border and waive all laws necessary to expedite such construction.

For these reasons, as set forth below, the Court should grant summary judgment to Defendants and deny Plaintiffs' motion for summary judgment.

## FACTUAL BACKGROUND

### I.    Statutory Framework

DHS is responsible for border security and the detection and prevention of illegal entry into the United States. *See, e.g.*, 6 U.S.C. § 202(1)-(2). Congress has ordered DHS to achieve and maintain operational control of the international land border. *See* Secure Fence Act of 2006, Pub. L. No. 109-367, § 2(a), 120 Stat. 2638 (Oct. 26, 2006) (8 U.S.C. § 1701 note). "Operational control" means "prevention of all unlawful entries into the United States, including entries by terrorists, other unlawful aliens, instruments of terrorism, narcotics, and other contraband." *Id.* § 2(b).

The Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") is one of the statutory authorities provided to DHS to carry out its border security mission. *See* Pub. L. No. 104-208, div. C, tit. I § 102, 110 Stat. 3009-554 (Sept. 30, 1996). IIRIRA requires the Secretary of Homeland Security to "take such actions as may be necessary to install additional physical barriers and roads (including the removal of obstacles to detection of illegal entrants) in the vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the United States." *Id.* § 102(a), codified at 8 U.S.C. § 1103 note.

In § 102(b), Congress provided certain requirements for implementing the broad mandate laid out in § 102(a). These requirements have varied over the years. For example, in 1996, Congress specified that, in "carrying out subsection (a), the [agency] shall provide for the construction . . . of second and third fences, in addition to the existing reinforced fence, and for roads between the fences" in a 14-mile section near San Diego. *Id.* § 102(b)(1). In 2006, Congress struck the reference to San Diego and required construction of  "[at] least 2 layers of reinforced fencing, [and] the installation of additional physical barriers, roads, lighting, cameras, and sensors" in five specified locations along the southern border, with deadlines for certain of the projects. Pub. L. No. 109-367, § 3(1)(A). In the most recent amendment, Congress removed the geographic specifications set out in 2006 and instead required "construct[ion of] reinforced fencing *along not less than 700 miles of the southwest border*" and further gave the Secretary discretion to determine "where fencing would be most practical and effective" with the goal "to gain operational control of the southwest border." Pub. L. No. 110-161, div. E, tit. V, § 564, 121 Stat. 1844, 2090 (2007) (emphasis added); *see also* IIRIRA § 102(b)(1)(D) (as amended) (stating that the Secretary is free to determine that the use or placement of "fencing, physical barriers, roads, lighting, cameras, and sensors in a particular location" is not "the most appropriate means to achieve and maintain operational control over the international border" at that location).

In addition to these guidelines, Congress provided two mechanisms to ensure expeditious barrier construction. First, Congress granted the Secretary "the authority to waive all legal requirements such Secretary, in such Secretary's sole discretion, determines necessary to ensure expeditious construction of the barriers and roads under this section." *Id*. § 102(c)(1). Congress originally limited this provision to the Endangered Species Act ("ESA") and the National Environmental Policy Act ("NEPA"), *see* Pub. L. No. 104-208, div. C, tit. I, § 102(c), but later

expanded it to include "all legal requirements," Pub. L. No. 109-13, div. B, tit. I, § 102(c)(1), 119 Stat. 231, 306 (2005); *see also* H.R. Rep. No. 109-72, at 171 (May 3, 2005) (Conf. Rep.) (explaining "Congress' intent that the . . . waiver authority extends to any local, state or federal statute, regulation, or administrative order that could impede expeditious construction of border security infrastructure").

Second, Congress created a streamlined system of judicial review for challenges to the Secretary's waiver authority. It gave federal courts "exclusive jurisdiction" over such challenges and limited those challenges to allegations of a constitutional violation. IIRIRA §102(c)(2)(A). Legal challenges must be brought within 60 days, and the only appellate review is a certiorari petition to the U.S. Supreme Court. *Id.* at § 102(c)(2)(B), (C). The conference report explained that the strictly limited review reflected the "Conferees' intent [] to ensure that judicial review of actions or decisions of the Secretary not delay the expeditious construction of border security infrastructure, thereby defeating the purpose of the Secretary's waiver." H.R. Rep. No. 109-72, at 172.

## II.   The Secretary's Exercise of Waiver Authority

Since 2005, the Secretary has repeatedly issued waiver determinations under the IIRIRA to ensure expeditious construction of barriers and roads along the border. *See, e.g.*, 90 Fed. Reg. 23946 (June 5, 2025); 84 Fed. Reg. 21798 (May 15, 2019); 82 Fed. Reg. 35984 (Aug. 2, 2017); 73 Fed. Reg. 19078 (Apr. 8, 2008); 72 Fed. Reg. 60870 (Oct. 26, 2007); 70 Fed. Reg. 55622 (Sept. 22, 2005). Every judicial challenge to these determinations has been dismissed. *See Ctr. for Biological Diversity v. Noem*, No. 25-00365-TUC-AMM, 2026 WL 836278 (D. Ariz. Mar. 26, 2026); *Ctr. for Biological Diversity v. McAleenan*, 404 F. Supp. 3d 218 (D.D.C. 2019), *cert. denied sub. nom. Ctr. for Biological Diversity v. Wolf*, 591 U.S. 1015 (2020); *In re Border Infrastructure*

4

*Env't Litig.*, 284 F. Supp. 3d 1092 (S.D. Cal. 2018), *aff'd*, 915 F.3d 1213 (9th Cir. 2019), *cert. denied sub. nom. Animal Legal Def. Fund. v. DHS*, 586 U.S. 1035 (Dec. 3, 2018); *Sierra Club v. Trump*, 379 F. Supp. 3d 883, 922-23 (N.D. Cal. 2019), *aff'd*, 963 F.3d 874 (9th Cir. 2020), *vacated and remanded*, 142 S. Ct. 42 (2021); *N. Am. Butterfly Ass'n v. Nielsen*, 368 F. Supp. 3d 1 (D.D.C. 2019), *aff'd in part, rev'd in part sub nom. N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244 (D.C. Cir. 2020); *Cnty. of El Paso v. Chertoff*, No. 08-196, 2008 WL 4372693 (W.D. Tex. Aug. 29, 2008), *cert. denied*, 557 U.S. 915 (2009); *Save Our Heritage Org. v. Gonzalez*, 533 F. Supp. 2d 58 (D.D.C. 2008); *Defs. of Wildlife v. Chertoff*, 527 F. Supp. 2d 119(D.D.C. 2007), *cert. denied*, 554 U.S. 918 (2008); *Sierra Club v. Ashcroft*, No. 04-272, 2005 WL 8153059 (S.D. Cal. Dec. 13, 2005); *see also Presidio Mun. Dev. Dist. v. DHS*, No. CV 26-2146 (RBW), 2026 WL 2213850 (D.D.C. Aug. 2, 2026) (denying motion for preliminary injunction).

Relevant to this lawsuit, the Secretary of Homeland Security has issued two additional waivers under the IIRIRA to expedite barrier construction in portions of the Big Bend Sector of south Texas ("Big Bend Waivers"). On February 17, 2026, then-Secretary Noem executed a waiver for a project area in the U.S. Border Patrol Big Bend Sector "[s]tarting at approximately GPS point 31.037623, −105.579877 and extending south and east to approximately GPS point 29.325866, −104.046466." *See* Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended, 91 Fed. Reg. 7297 (Feb. 17, 2026); *as amended by* Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended, 91 Fed. Reg. 40550 (July 2, 2026). On May 15, 2026, Secretary Mullin issued another waiver for a project in the U.S. Border Patrol Big Bend Sector "[s]tarting at approximately GPS point 29.325866, -104.046466 and extending east to approximately GPS point 29.728522, −102.683945." *See* Determination Pursuant to Section

5

102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, As Amended, 91 Fed. Reg. 34831 (June 9, 2026); *amending* Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, As Amended, 91 Fed. Reg. 27969 (May 15, 2026).

### III.    Procedural History

On April 16, 2026, Plaintiffs filed a complaint challenging these waivers. ECF No. 1. Plaintiffs subsequently amended their complaint on June 11, 2026, ECF No. 11, and supplemented their complaint on July 13, 2026, ECF No. 18. Pursuant to the parties' motion, on June 23, 2026, the Court set a briefing schedule for cross motions for summary judgment, ECF No. 16, and Plaintiffs filed their motion for summary judgment accordingly on July 17, 2026. ECF No. 19 ("Mot.).

## ARGUMENT

### I.    The Plaintiffs cannot, and do not, challenge the construction of a "Great Wall."

Much of Plaintiffs' arguments center on the contention that Defendants are building a "Great Wall . . . stretching 'from the Pacific to the Gulf of America . . . .'" Mot. 2–3. But Plaintiffs cannot, and do not, challenge such a broad and amorphous idea.

As an initial matter, Plaintiffs' complaint only challenges two waivers issued by the Secretary of Homeland Security and two amendments to those waivers. *See* Compl. ¶ 3. Despite mentioning waivers in other sectors, Mot. 3, they do not challenge such waivers in this suit. The only waivers at issue in this case are limited in geographic scope to distinct sections of the U.S. Border Patrol Big Bend Sector. As such, Plaintiffs' characterization of this lawsuit as a challenge to a "Great Wall," a "continental barrier from the Pacific Ocean to the Gulf of Mexico[,]" or a "massive project" is entirely irrelevant. *See* Compl. ¶¶ 43, 68, 76; Mot. 2-3.

6

Even if Plaintiffs were to challenge every waiver for barrier construction along the southern border, they would lack standing to do so. To have standing, a "plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[.]" *Moore v. Bryant*, 853 F.3d 245, 248 (5th Cir. 2017) (alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Standing "is not dispensed in gross[,]" and Plaintiffs must establish it "for each claim [] they press" and "for each form of relief." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (citation omitted). Here, however, Plaintiffs only allege injuries stemming from border barrier construction in the Big Bend Sector. *See* Compl. ¶¶ 14, 16; Mot. 19-20. Accordingly, they lack standing to challenge any other past, present, or future construction projects or waivers regarding a so-called "Great Wall." The Court should therefore cabin its ruling to the constitutionality of the two waivers and their amendments.

## II.    The Big Bend Waivers do not violate the Major Questions Doctrine.

Plaintiffs first claim that the Big Bend Waivers violate the Major Questions Doctrine. Compl. ¶¶ 71-80; Mot. at 4-9. As an initial matter, this Court lacks jurisdiction to hear Plaintiffs' Major Questions claim. The IIRIRA limits challenges to the waiver authority to claims "alleging a violation of the Constitution of the United States." IIRIRA § 102(c)(2)(A). The Major Questions Doctrine, however, is a tool or rule of statutory interpretation. *See Mayfield v. U.S. DOL*, 117 F.4th 611, 616 (5th Cir. 2024) (stating that the Major Questions Doctrine is either an "interpretive tool" or a "clear-statement rule"). While the Doctrine is animated by background constitutional principles, such as the Separation of Powers, *see*, *e.g.*, *West Virginia v. EPA*, 597 U.S. 697, 723 (2022), that does not transform it into a "violation of the Constitution" itself. Indeed, many interpretive canons are informed by constitutional values, *Biden v. Nebraska*, 600 U.S. 477, 508

7

(2023) (Barrett, J., concurring), but they ultimately remain rules of construction and interpretative tools to determine the best reading of a statute's text. *Id.* at 511 (explaining that "the doctrine serves as an interpretive tool"). *Nebraska* illustrates this point, as the Supreme Court held that the HEROES Act does not grant the Secretary of Education "the authority to cancel $430 billion of student loan principal." *Id.* at 494. The Court did not find that the HEROES Act was a violation of the Constitution; instead, it relied on the Major Questions Doctrine as an interpretive tool to determine the meaning of the statute. Here, to the extent Plaintiffs contend Congress's delegation of authority to DHS in the IIRIRA exceeds constitutional limits, the non-delegation and Presentment Clauses are the appropriate sources of law to address those claims. The Major Questions Doctrine, however, is not a "violation of the Constitution" within the meaning of the IIRIRA, thus the Court lacks jurisdiction to address this claim.

Even if the Court had jurisdiction, Plaintiffs' Major Questions claim fails on the merits. The major questions doctrine only applies in "extraordinary cases" involving assertions of "vast economic and political significance" or "extravagant statutory power over the national economy." *West Virginia*, 597 U.S. at 716, 722-24 (citations omitted). In such cases, "the Government claimed broad, expansive power on an uncertain statutory basis[]" where "the statutory text might '[a]s a matter of definitional possibilities' have been read to delegate the asserted power." *Learning Res., Inc. v. Trump*, 607 U.S. 229, 242-43 (2026) (second alteration in original) (quoting *West Virginia*, 597 U.S. at 732). A hallmark of the Major Questions Doctrine is the assertion of "an unheralded power representing a transformative expansion . . . [in an agency's] regulatory authority" by means of "a radical or fundamental change to a statutory scheme." *West Virginia*, 597 U.S. at 700, 722-25 (citation omitted) (agency "located [a] newfound power in the vague language of an ancillary provision of the Act" (citation modified)); *see also Nebraska,* 600 U.S. at 501-02 (agency

8

exercised "never previously claimed powers"). As recently summarized by the Fifth Circuit, the "major-questions doctrine bars agencies from exploiting ambiguous statutes to grant themselves broad new powers." *Tex. Tobacco Barn, L.L.C. v. U.S. Dep't of Health & Hum. Servs.*, 180 F.4th 229, 233 (5th Cir. 2026).

Here, the Major Questions Doctrine does not apply because Congress has unequivocally authorized DHS to construct barriers along the southern border. IIRIRA § 102(a) directs DHS to "take such actions as may be necessary to install additional physical barriers and roads . . . in the vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the United States." Further, § 102(b) mandates that DHS "construct reinforced fencing along not less than 700 miles of the southwest border." *Id.* § 102(b)(1)(A). As discussed above, Congress previously authorized border barrier construction in specific geographic areas, but Congress amended the statute in 2006 to remove those limitations. Congress therefore expanded DHS's authority to build barriers where they "would be most practical and effective" with the goal "to gain operational control of the southwest border." Pub. L. No. 110-161, div. E, tit. V § 564.

Similarly, Congress unambiguously gave the DHS Secretary statutory authority to waive any legal requirement necessary to ensure expeditious construction of border barriers. Section 102(c) expressly provides that the DHS Secretary "shall have the authority to waive all legal requirements such Secretary, in such Secretary's sole discretion, determines necessary to ensure expeditious construction of the barriers and roads under this section." Congress initially limited this authority to cover only the ESA and NEPA, but the REAL ID Act expanded it to its current breadth in 2006 after Congress grew frustrated by "[c]ontinued delays caused by litigation" preventing barrier construction. *See* H.R. Rep. No. 109-72, at 171 (May 3, 2005).

9

Accordingly, this is not a situation where DHS recently discovered "unintentional" or "oblique" statutory language to authorize a major policy change, *NFIB. v. OSHA*, 595 U.S. 109, 125 (2022) (Gorsuch, J., concurring), nor is DHS claiming "broad, expansive power on an uncertain statutory basis." *Learning Res., Inc.*, 607 U.S. at 242. The clear statutory authorization to build border barriers and waive laws to expedite such construction bears little resemblance to the cases where the Supreme Court has limited the reach of statutory authority under the Major Questions Doctrine. *See id.* (summarizing cases).

Further, this case is not remotely close to other contexts where courts have determined that the agency is acting "outside its wheelhouse[,]" *Nebraska,* 600 U.S. at 518 (Barrett, J., concurring), or lacks "comparative expertise in making [the relevant] policy judgments," *West Virginia,* 597 U.S. at 729 (citation omitted). There is nothing novel or extraordinary about the Big Bend Waivers. They waive certain laws exclusively for the purpose of expediting construction along the border. Such waiver authority has been exercised for over two decades without a single court ever declaring it illegal. *See supra* 2-3. This long history of transparent agency action within the DHS's field of expertise contrasts sharply with cases where the Supreme Court has rejected novel claims of agency authority under the Major Questions Doctrine, such as the CDC imposing an eviction moratorium or OSHA imposing COVID vaccine test requirements. *See Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758 (2021) (per curiam); *NFIB*, 595 U.S. at 113 (per curiam).

Plaintiffs attempt to evade this crystal-clear text by reframing the issue as an overall border barrier construction issue. In essence, they claim that the extraordinary issue is not an individual waiver but a wall spanning the entirety of the U.S. Southern border. *See* Mot. 8. But, as explained above, Plaintiffs cannot and do not challenge border construction as a whole. Their claims are

cabined to the single issue of whether the Secretary's two waivers pursuant to the IIRIRA are constitutional. Despite Plaintiffs' contentions to the contrary, the Big Bend Waivers are "discrete [,] localized infrastructure decision[s,]" Mot. 7, because each waiver focuses on discrete, local geographic sections. Rewriting the waivers as part of a larger project conflicts with their clearly confined geographic scope.

Plaintiffs' only other argument attacks the statutory requirement that construction occur in "areas of high illegal entry[.]" *See Id*. 8–9 (citation omitted). As an initial matter, the Big Bend Sector is an area of high illegal entry given the rates of illegal crossings and drug smuggling. *See infra* at 11. Nevertheless, there is nothing novel or unlawfully expansive about interpreting the IIRIRA to allow Defendants to build border wall in the Big Bend Sector. The IIRIRA clearly permits, and even commands, border barrier construction "to achieve and maintain operational control" of the border, § 102(b)(1)(D), which Congress has expansively defined as "the prevention of *all unlawful entries* into the United States, including . . . unlawful aliens, . . . narcotics, and other contraband." Pub. L. No. 109-367, § 2(b) (emphasis added). Plaintiffs cannot "impos[e] limits on an agency's discretion that are not supported by the text." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,* 591 U.S. 657, 677 (2020). Congress clearly meant for the Secretary to build barriers and waive laws to expedite that construction, and nothing in the text, structure, or history of the IIRIRA is enough to make DHS's use of that authority a "major question."

**III.    The Big Bend Waivers do not violate the Non-Delegation Doctrine.**

The Non-Delegation Doctrine is rooted in the separation of powers, but few laws violate it. "The Supreme Court has only twice in its history struck down federal laws under the nondelegation doctrine[,]" both of which occurred in 1935. *Nat'l Infusion Ctr. Ass'n v. Kennedy,* 798 F. Supp. 3d 748, 757 (W.D. Tex. 2025), *appeal filed*, No. 25-50661 (5th Cir. Aug. 15, 2025).

11

As the Supreme Court recently emphasized in denying a non-delegation challenge, the "[l]egislative power . . . belongs to the legislative branch, and to no other." *FCC v. Consumers' Rsch.*, 606 U.S. 656, 672 (2025). However, "Congress may 'seek[] assistance' from its coordinate branches to secure the 'effect intended by its acts of legislation.'" *Id.* (alteration in original) (citation omitted). In seeking assistance from other branches of government, Congress may "vest discretion" in Executive Branch "agencies to implement and apply the laws it has enacted." *Id.* (citation modified). So long as Congress sets forth an "intelligible principle" to guide an agency's actions, it effects a lawful grant of discretion rather than an unlawful delegation of legislative power. *See id.* at 673 (citation modified) ("To distinguish between the permissible and the impermissible in this sphere, we have long asked whether Congress has set out an 'intelligible principle' to guide what it has given the agency to do." (citation omitted)).

Plaintiffs' Non-Delegation Doctrine claim fails because the intelligible principle that Congress provided to guide DHS's exercise of delegated discretion in the IIRIRA is well within the bounds provided by existing precedent. This conclusion has been repeatedly recognized by every other court that has addressed this same issue, including in this jurisdiction. *See Ctr. for Biological Diversity v. Noem*, 2026 WL 836278, at *4–5; *Ctr. for Biological Diversity*, 404 F. Supp. 3d at 244-49; *In re Border Infrastructure Env't Litig.*, 284 F. Supp. 3d at 1130-37; *Cnty. of El Paso*, 2008 WL 4372693, at *2-4; *Save Our Heritage*, 533 F. Supp. 2d at 63-64; *Defs. of Wildlife*, 527 F. Supp. 2d at 126-29; *Sierra Club*, 2005 WL 8153059, at *4-7. This Court should reach the same conclusion and grant summary judgment in favor of Defendants.

To provide a constitutionally permissible "intelligible principle," Congress need only delineate "both 'the general policy' that the agency must pursue and 'the boundaries of [its]

12

delegated authority.'" *Consumers' Rsch.*, 606 U.S. at 673 (alteration in original) (quoting *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946)). That standard is easily met here.

Congress established a general policy in the IIRIRA. Section 102(a) delineates a general policy of "install[ing] additional physical barriers and roads" to "deter illegal crossings in areas of high illegal entry into the United States[,]" which § 102(c) incorporates by tying the waiver authority to "expeditious construction of the barriers and roads under this section." This establishes a policy to guide the Secretary: that improving border protection by expediting the construction of necessary barriers and roads is a critical Congressional priority. *See, e.g.*, *Ctr. for Biological Diversity*, 2026 WL 836278, at *4 (finding that "§ 102(c) is sufficiently guided by the general policy outlined in the §102(a)"); *Defs. of Wildlife*, 527 F. Supp. 2d at 127 (finding a clearly delineated general policy "to expeditiously 'install additional physical barriers and roads . . . to deter illegal crossings in areas of high illegal entry'" (citation omitted)).

Congress also set meaningful boundaries on the Secretary's delegated authority. The IIRIRA sets two boundaries on the Secretary's authority: a geographic one and a temporal one. Waivers may only be issued in connection with construction "in the vicinity of the United States border." *Id.* at § 102(a) (incorporated by the "under this section" cross-reference). The second boundary is temporal necessity. Waivers may only be issued when "necessary to ensure expeditious construction" at those locations. *Id.* § 102(c). *See Defs. of Wildlife*, 527 F. Supp. 2d at 127 (citation omitted) (concluding that Congress provided a sufficient boundary by instructing that "the Secretary may waive only those laws that he determines 'necessary to ensure expeditious construction'" (citation omitted)); *Ctr for Biological Diversity*, 404 F. Supp. 3d at 248 (finding a guiding principle in the "narrow purpose" of "expeditious completion of [] border fences" (citation omitted)). As then-Judge Jackson concluded, "from the standpoint of what suffices as guidance

13

from Congress regarding how the Executive Branch is to exercise the authority granted in the statute for constitutional purposes, what is set forth in subsections 102(a) and 102(c) is enough." *Ctr. for Biological Diversity*, 404 F. Supp. 3d at 249.

Plaintiffs' description of the Secretary's power under the IIRIRA is blown out of proportion. Plaintiffs claim the IIRIRA "grants the Secretary *carte blanche* power to (1) unilaterally suspend the application of *any and all laws*, (2) in order to pursue *any kind* of border construction, (3) at *any* time and *in perpetuity* (without any sunset date), (4) *anywhere* within the border's 'vicinity.'" Mot. 11. In fact, the Secretary's power is far more limited. As described *supra*, the IIRIRA's authorization for the Secretary to build only in the border's "vicinity" is a limitation to a specific area of the country, not a "*carte blanche*" grant of power to build anywhere. Moreover, the Secretary may not build "*any kind* of border construction," only "physical barriers and roads" with associated "lighting, cameras, and sensors," IIRIRA § 102(a), (b).

Plaintiffs attempt to differentiate the multitude of cases finding an intelligible principle by arguing that the term "areas of high illegal entry" has been stretched beyond recognition. Mot. 11–12. To begin, Plaintiffs argue that "under any metric" the Big Bend Sector is not an area of high illegal entry, *id.* 12, but this could not be further from the truth. Between fiscal years 2021 and 2025, the Big Bend Sector saw over 89,000 individuals attempt to enter the country illegally. *See, e.g.*, 91 Fed. Reg. at 7298. During the same period, Border Patrol seized over 89,703 pounds of drugs that individuals attempted to smuggle into the country illegally. *Id*. Just this year alone, Border Patrol has seized over 13,000 pounds of illegal drugs, surpassing the annual totals for each of the previous three fiscal years. *See* CBP, Nationwide Drug Seizures (last modified Jul. 16, 2026), http://www.cbp.gov/document/stats/nationwide-drug-seizures.

Congress set no specific threshold for "high illegal entry." In the most recent amendment to § 102, however, Congress did make clear that one of the Act's purposes is "to achieve and maintain operational control over the international border." § 102(b)(1)(D); *see also id.* § 102(b)(1)(A) ("to gain operational control of the southwest border"). And Congress has expansively defined "operational control" of the border—"the prevention of *all unlawful entries* into the United States, including . . . unlawful aliens, . . . narcotics, and other contraband." Pub. L. No. 109-367, § 2(b) (emphasis added). Plaintiffs' statistical arguments cannot be reconciled to these Congressional goals. *See, e.g.*, *In re Border Infrastructure Env't Litig.*, 284 F. Supp. 3d at 1121 ("the Court cannot conclude the Secretaries violated their mandate to deter crossings in areas of 'high illegal entry'" by adopting one interpretation over another (citation omitted)).

Even so, Plaintiffs lose sight of the broader picture. "[A]reas of high illegal entry" is only part, if that, of Congress' policy statement in the IIRIRA. §102(a) indicates a policy of securing the United States border through installing barriers and roads. Indeed, multiple courts have found similar policy statements sufficient to reject nondelegation claims. *See, e.g.*, *In re Border Infrastructure Env't Litig.*, 284 F. Supp. 3d at 1133 (finding a "clearly delineated" policy of "deterrence of illegal crossings through construction of additional physical barriers to improve U.S. border protection"); *Cnty. of El Paso*, 2008 WL 4372693, at *3 (finding a "general policy" of "construction of a border fence"); *Sierra Club*, 2005 WL 8153059, at *6 ("the Court finds that improvement of U.S. border protection is the 'clearly delineated general policy'"). This policy, along with the statutory boundaries noted above, constitutes a proper delegation by Congress to the Executive.

15

#### IV.     The Big Bend Waivers do not violate the Take Care Clause.

The Constitution requires that the President "shall take Care that the Laws be faithfully executed[.]" U.S. Const. art. II, § 3. But Plaintiffs have not sued the President, and the Take Care Clause provides no basis to review the actions of subordinate Executive Branch officials. The Clause speaks only to the President, not to his subordinates, and ensures that the President is principally responsible for the actions of the Executive Branch and directly accountable to the people through the political process. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492-93 (2010) ("It is *his* responsibility to take care that the laws be faithfully executed."). Further, the Take Care Clause does not provide Plaintiffs with a private right of action. *See, e.g.*, *Florida v. United States*, 660 F. Supp. 3d 1239, 1283 (N.D. Fla. 2023); *Las Ams. Immigrant Advoc. Ctr. v. Biden*, 571 F. Supp. 3d 1173, 1180 (D. Or. 2021) (collecting cases); *Brnovich v. Biden*, 630 F. Supp. 3d 1157, 1178 (D. Ariz. 2022).

Even if Plaintiffs could surmount these threshold issues, it is unclear how such a claim differs from Plaintiffs' Non-Delegation Doctrine or Presentment Clauses claims, which assert similar claims of legislating outside of Congressional bounds. *See* Mot. 14 (arguing that in issuing the Big Bend Waivers, the Secretary violated the Take Care Clause by "purporting to be a lawmaker"). Indeed, another court has rejected a similar Take Care Clause claim for this very reason. In *Ctr. For Biological Diversity v. McAleenan*, then-Judge Jackson found that Plaintiffs' Take Care Clause claim that "'[the DHS Secretary] is purporting to be a lawmaker. . .' echoes, almost verbatim, their argument in support of the Presentment Clause claim." 404 F. Supp. 3d at 249 (first alteration in original). "Plaintiffs have offered no basis for treating or viewing their Take Care Clause claim as anything other than a rehashing of the same concern that animates Plaintiffs' Presentment and non-delegation claims—*i.e.*, that Congress has delegated to DHS unlimited

16

authority to exercise, in essence, legislative power, in a manner that the U.S. Constitution does not permit." *Id*. at 250. Thus, for the same reasons the Court should deny Plaintiffs' non-delegation claim, *supra*, and their Presentment Clause claim, *infra*, the Court should deny their Take Care Clause claim.

Without a doubt, the Secretary's waivers do dispense with the application of certain laws that were duly enacted by Congress for the limited purpose of constructing barriers and roads under the authority of the IIRIRA. But by waiving such laws, the Secretary is using an authority that was expressly granted by Congress and faithfully executing the mandate of the IIRIRA to expeditiously construct barriers and roads along the U.S. border.

Put another way, "the challenged steps taken by the Secretary are ones that are plausibly called for by an act of Congress[.]" *In re Border Infrastructure Env't Litig.*, 284 F. Supp. 3d at 1139. It is well settled that "[w]hen the President acts pursuant to an express or implied authorization of Congress, his authority is at its maximum[] . . . ." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952). Thus, the Executive obeying a Congressional mandate by exercising waiver authority expressly granted under a statute is fully in line with its obligation to faithfully execute the laws.

Plaintiffs appear to concede the point, admitting that the Executive could "decide whether Congress's statutory directives will be carried out" under a "constitutionally valid exercise of IIRIRA's waiver authority[.]" Mot. 15. Plaintiffs provide no explanation for this otherwise surprising admission, even though this is precisely what the Secretary has done. As such, the Court should find that the Secretary of Homeland Security did not violate the Take Care Clause and grant summary judgement to the Defendants.

17

## V.    The Big Bend Waivers do not violate the Presentment Clauses.

Finally, Plaintiffs raise a Presentment Clauses claim. *Id.* 16. This issue has been litigated extensively over the past two decades, but every Court to hear such a claim has found the IIRIRA constitutional.

Clauses 2 and 3 of Article I, § 7 of the U.S. Constitution are called the Presentment Clauses. *See Cnty. of El Paso*, 2008 WL 4372693, at *6. These clauses require that "any federal statute must pass both houses of Congress" and be presented to the President to either sign it into law or reject it. *Id*. The Presentment Clauses require a specific process, prohibiting legislative action that does not conform to it. Thus, the Constitution does not authorize the President "to enact, to amend, or to repeal statutes." *Clinton v. City of New York*, 524 U.S. 417, 438 (1998). In *Clinton*, the Supreme Court struck down the Line Item Veto Act, which gave the President the authority to "cancel[]" certain appropriated spending items that had been passed by Congress. *Id.* That statute failed because cancellation prevented the items "from having legal force or effect" and thus in "both legal and practical effect, the President has amended two Acts of Congress by repealing a portion of each." *Id*. at 437–38 (citation omitted); *see also id.* at 447 (holding it improper to give the President "unilateral power to change the text of duly enacted statutes").

Plaintiffs claim that the IIRIRA §102(c) violates the Presentment Clauses because it allows the Secretary to "dispose of any and all legal requirements" without "bicameralism and presentment procedures." Mot. 16. Plaintiffs' claim is meritless, and every court to consider such a challenge has rejected it, including in this jurisdiction. *See Cnty. of El Paso*, 2008 WL 4372693, at *6-7; *see also*, *Ctr. For Biological Diversity*, 2026 WL 836278, at *5-6; *Ctr. For Biological Diversity*, 404 F. Supp. 3d at 246-47; *Defs. of Wildlife*, 527 F. Supp. 2d at 123-26.

18

Plaintiffs' claim fails because waiver of a legal requirement for a specific purpose is not amendment or repeal of a statute. As then-Judge Jackson found in *Center for Biological Diversity*:

> "under the IIRIRA's waiver provision, '[t]he Secretary has no authority to alter the text of any statute, repeal any law, or cancel any statutory provision, in whole or in part.' . . . [T]o assert otherwise would effectively transform *any* Executive Branch waiver (the U.S. Code contains 'myriad examples' of such) into a violation of Article I, 'no matter how limited in scope.'"

404 F. Supp. 3d at 246 (quoting *Defs. of Wildlife* 527 F. Supp. 2d at 124-25). Under a §102(c) waiver, the waived statutes are inapplicable only with respect to the construction of barriers and roads along the relevant portion of the border. The statutes retain their general legal force and effect because the Secretary's waiver extends to only a tiny fraction of the universe of cases to which any waived laws apply.

Other courts have rejected similar arguments against waiver provisions. *See Republic of Iraq v. Beaty,* 556 U.S. 848, 861 (2009) ("The [statutory] proviso *expressly* allow[ing] the President to render certain statutes inapplicable . . . did not repeal anything, but merely granted the President authority to waive the application of particular statutes to a single foreign nation."); *Acree v. Republic of Iraq*, 370 F.3d 41, 64 & n.3 (D.C. Cir. 2004) (Roberts, J., concurring) (dismissing constitutional challenge to statute permitting President to make inapplicable to Iraq "any other provision of law that applies to countries that have supported terrorism" because the authorized actions "are a far cry from the line-item veto at issue in *Clinton*, and are instead akin to the waivers that the President is routinely empowered to make in other areas, particularly in the realm of foreign [policy]"); *In re NSA Telecomms. Recs. Litig. v. AT&T Corp.*, 671 F.3d 881, 895 (9th Cir. 2011) (rejecting Presentment Clause challenge to an "executive grant of immunity or waiver of claim," on the ground that it "has never been recognized as a form of legislative repeal").

19

Here, similarly, the § 102(c) authority in one statute granting authority to waive application of one or more other statutes is not uncommon. *See Defs. of Wildlife*, 527 F. Supp. 2d at 125 & n.5 (collecting some of the "myriad examples of waiver provisions in federal statutes"); *see also, e.g.*, 25 U.S.C. § 3406(d) (authorizing Secretary of each Federal agency providing funds for program to waive "any [] statutory . . . requirement, regulation, policy, or procedure promulgated by [that] agency"); Deficit Reduction Act, Pub. L. No. 109-171, § 5107(a)(2), 120 Stat. 4, 42 (Feb. 6, 2006) (providing for waiver of "such provisions of law . . . as are necessary to implement [specified statutory provision] on a timely basis").

Nor does § 102(c) raise the same separation of powers concerns that were at issue in *Clinton*. There, the Supreme Court was concerned that the President's line-item veto was "rejecting the policy judgment made by Congress and relying on his own policy judgment." 524 U.S. at 444. But here, Congress unmistakably expressed its policy judgment that construction of the barriers and roads along the border was of such importance that it justified waiving application of environmental and other laws to the extent those laws threaten expeditious construction. *See* IIRIRA § 102(c)(1). Thus, in sharp contrast to *Clinton*, there is no question that the Secretary is executing (rather than rejecting) the will of Congress. *Cf. Smith v. Fed. Rsrv. Bank of N.Y.*, 280 F. Supp. 2d 314, 324 (S.D.N.Y. 2003) (upholding waiver where "[u]nlike in *Clinton*" the President "is carrying out, not rejecting, a policy made by Congress"), *aff'd*, 346 F.3d 264 (2d Cir. 2003).

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment to Defendants on all counts and deny Plaintiffs' motions for summary judgment on all counts.

20

Dated: August 7, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ANDREW I. WARDEN
Assistant Branch Director

/s/ Alexander J. Yun
ALEXANDER J. YUN
(D.C. Bar No. 90028923)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
202-674-0255
Alex.Yun@usdoj.gov

*Counsel for Defendants*

21

## CERIFICATE OF SERVICE

I hereby certify that this document and its attachments were filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: August 7, 2026                                    */s/ Alexander J. Yun*
                                                          ALEXANDER J. YUN
                                                          Counsel for Defendants

22