**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

FRIENDS OF THE RUIDOSA CHURCH, *et al.*,

*Plaintiffs*,

*v.*

MARKWAYNE MULLIN, *et al.*,

*Defendants*.

Civil Action No. 3:26-CV-01099-KC

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS


INTRODUCTION .......... 1

BACKGROUND .......... 2

I. Statutory Framework .......... 2

II. The Secretary's Exercise of Waiver Authority .......... 3

ARGUMENT .......... 5

I. Legal Standard .......... 5

II. Plaintiffs are not likely to succeed on the merits of their claim .......... 5

a. The Big Bend Waivers do not violate the Major Questions Doctrine. .......... 5

b. The Big Bend Waivers do not violate the Take Care Clause. .......... 8

c. The Big Bend Waivers do not violate the Non-Delegation Doctrine. .......... 9

d. The Big Bend Waivers do not violate the Presentment Clauses. .......... 13

III. Plaintiffs have failed to establish irreparable harm, and the balance of equities and public interest weigh against a preliminary injunction. .......... 15

a. An injunction will impose substantial and irreparable harms on the United States. 16

b. The United States' interests decisively outweigh Plaintiffs' speculative harms. . 18

CONCLUSION .......... 20

# TABLE OF AUTHORITIES

**Cases**

*Cnty. of El Paso v.Chertoff*,
557 U.S. 915 (2009) ........ 3

*Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
594 U.S. 758 (2021) ........ 7

*Am. Power & Light Co. v. SEC*,
329 U.S. 90 (1946) ........ 10

*Biden v. Nebraska*,
600 U.S. 477 (2023) ........ 6

*Biden v Texas*,
597 U.S. 785 (2022) ........ 17

*Clinton v. City of New York*,
524 U.S. 417 (1998) ........ 13

*Cnty. of El Paso v. Chertoff*,
No. 08-196, 2008 WL 4372693 (W.D. Tex. Aug. 29, 2008) ........ 3, 10, 13

*Concernedapte LLC v. P'ships*,
811 F.Supp. 3d 807 (W.D. Tex. 2025) ........ 5

*Ctr. for Biological Diversity v. McAleenan*,
404 F. Supp. 3d 218 (D.D.C. 2019) ........ *passim*

*Ctr. for Biological Diversity v. Noem*,
No. 25-00365-TUC-AMM, 2026 WL 836278 (D. Ariz. Mar. 26, 2026) ........ *passim*

*El Paso Cty., Texas v. Trump*,
407 F. Supp. 3d 655 (W.D. Tex. 2019) ........ 16

*Evans v. Garza*,
161 F.4th 315 (5th Cir. 2025) ........ 5

*FCC v. Consumers' Rsch.*,
606 U.S. 656 (2025) ........ 10

*Free Enter. Fund v. Pub. Co. Accounting Bd.*,
561 U.S. 477 (2010) ........ 8

*Future Proof Brands, LLC v. Molson Coors Bev. Co.*,
982 F.3d 280 (5th Cir. 2020) ........ 5, 15

*Hernandez v. Mesa*,
589 U.S. 93 (2020) .......... 17

*In re Border Infrastructure Env't Litig.*,
284 F. Supp. 3d 1092 (S.D. Cal. 2018) .......... *passim*

*In re NSA Telecomms. Recs. Litig. v. AT&T Corp.*,
671 F.3d 881 (9th Cir. 2011) .......... 14

*Jackson Women's Health Org. v. Currier*,
760 F.3d 448 (5th Cir. 2014) .......... 5

*La Posta Band of Diegueno Mission Indians v. Trump*,
2020 WL 14042584 (S.D. Cal. Sept. 9, 2020) .......... 15, 16

*Landon v. Plasencia*,
459 U.S. 21 (1982) .......... 16

*Las Ams. Immigrant Advoc. Ctr. v. Biden*,
571 F. Supp. 3d 1173 (D. Or. 2021) .......... 9

*Learning Res., Inc. v. Trump*,
607 U.S. 229 (2026) .......... 6, 7

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,*
591 U.S. 657 (2020) .......... 8

*Manzanita Band of Kumeyaay Nation v. Wolf*,
496 F. Supp. 3d 257 (D.D.C. 2020) .......... 16

*Mayfield v. U.S. DOL*,
117 F.4th 611 (5th Cir. 2024) .......... 5

*N. Am. Butterfly Ass'n v. Nielsen*,
368 F. Supp. 3d 1 (D.D.C. 2019) .......... 3

*Nat'l Infusion Ctr. Ass'n v. Kennedy*,
798 F. Supp. 3d 748 (W.D. Tex. 2025) .......... 10

*Nat'l Treasury Emps. Union v. Von Raab*,
489 U.S. 656 (1989) .......... 16

*NFIB. v. OSHA*,
595 U.S. 109 (2022) .......... 7

*Presidio Mun. Dev. Dist. v. DHS*,
No. CV 26-2146, 2026 WL 2213850 (D.D.C. Aug. 2, 2026) .......... 4

*Republic of Iraq v. Beaty,*
556 U.S. 848 (2009) .......... 14

*Save Our Heritage Org. v. Gonzalez*,
533 F. Supp. 2d 58 (D.D.C. 2008) .......... 3, 10

*Sierra Club v. Ashcroft*,
No. 04-272, 2005 WL 8153059 (S.D. Cal. Dec. 13, 2005) .......... 4, 10, 13

*Sierra Club v. Trump*,
379 F. Supp. 3d 883 (N.D. Cal. 2019) .......... 3

*Sierra Club v. Trump*,
142 S. Ct. 42 (2021) .......... 3

*Tex. Tobacco Barn, L.L.C. v. U.S. Dep't of Health & Hum. Servs.*,
180 F.4th 229 (5th Cir. 2026) .......... 6

*Trump v. Sierra Club*,
140 S. Ct. 1 (2019) .......... 15

*United States v. Merkt*,
794 F.2d 950 (5th Cir. 1986) .......... 16

*Valley v. Rapides Par. Sch. Bd.*,
118 F.3d 1047 (5th Cir. 1997) .......... 5

*West Virginia v. EPA*,
597 U.S. 697 (2022) .......... 6

*Whole Woman's Health v. Paxton*,
264 F. Supp. 3d 813 (W.D. Tex. 2017) .......... 5

*Wildlife v. Chertoff*,
527 F. Supp. 2d 119(D.D.C. 2007) .......... *passim*

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .......... 15, 18

**Statutes**

6 U.S.C. § 202(1) .......... 3

6 U.S.C. § 202(2) .......... 3

8 U.S.C. § 1103 .......... 2

16 U.S.C. § 1274(a)(17) .......... 13

25 U.S.C. § 3406(d) .......... 14

Secure Fence Act of 2006,
Pub. L. No. 109-367, § 2(a), 120 Stat. 2638 (Oct. 26, 2006) .......... *passim*

Deficit Reduction Act,
Pub. L. No. 109-171, § 5107(a)(2), 120 Stat. 4 (Feb. 6, 2006) .......... 14

Improvement of Barriers at Border,
Pub. L. No. 110-161, div. E, tit. V, § 564, 121 Stat. 1844 (2007) .......... 2

**Regulations**

Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 as Amended, 70 Fed. Reg. 55622 (Sept. 22, 2005) .......... 3

Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 as Amended, 72 Fed. Reg. 60870 (Oct. 26, 2007) .......... 3

Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 as Amended, 73 Fed. Reg. 19078 (Apr. 8, 2008) .......... 3

Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 as Amended, 82 Fed. Reg. 35984 (Aug. 2, 2017) .......... 3

Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 as Amended, 84 Fed. Reg. 21798 (May 15, 2019) .......... 3

Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 as Amended, 90 Fed. Reg. 23946 (June 5, 2025) .......... 4

Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended, 91 Fed. Reg. 7297 (Feb. 17, 2026) .......... 4

Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, As Amended, 91 Fed. Reg. 27969 (May 15, 2026) .......... 4

Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, As Amended, 91 Fed. Reg. 34831 (June 9, 2026) .......... 4

Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended, 91 Fed. Reg. 40550 (July 2, 2026) .......... 4

Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, As Amended, 91 Fed. Reg. 46939 (July 27, 2026) .......... 4

Exec. Order No. 14,159, Protecting the American People Against Invasion,
90 Fed. Reg. 8443 (Jan. 20, 2025) .......... 17

Exec. Order No. 14,165, Securing Our Borders,
90 Fed. Reg. 8467 (Jan. 20, 2025) ........................................................................... 17, 18

Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. No. 104-208,
div. C, tit. I, 110 Stat. 3009 (Sept. 30, 1996) ........................................................... 2, 19

Proclamation 10,886, Declaring a National Emergency at the S. Border of the United States,
90 Fed. Reg. 8327 (Jan. 20, 2025) ................................................................................ 17

**Other Authorities**

CBP, Nationwide Drug Seizures (last modified Jul. 16, 2026),
http://www.cbp.gov/document/stats/nationwide-drug-seizures .......................................... 12, 18

Statement from CBP Commissioner Rodney S. Scott Correcting the Record on Big Bend Border Security Projects (Aug. 13, 2026), https://www.cbp.gov/newsroom/announcements/statement-cbp-commissioner-rodney-s-scott-correcting-record-big-bend .......................................... 19, 20

## STATEMENT OF ISSUES

1. Whether Plaintiffs are likely to succeed on the merits of their claim that, pursuant to §102(c) of the Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. No. 104-208, div. C, tit. I § 102, 110 Stat. 3009-554 (Sept. 30, 1996), codified at 8 U.S.C. § 1103 note, the Secretary of Homeland Security's issuance of three distinct Waivers and their amendments violates the Major Questions Doctrine.

2. Whether Plaintiffs are likely to succeed on the merits of their claim that Congress violated the Non-Delegation Doctrine by allowing the Secretary of Homeland Security to issue waivers of laws under the Illegal Immigration Reform and Immigrant Responsibility Act.

3. Whether Plaintiffs are likely to succeed on the merits of their claim that the Secretary of Homeland Security's waivers of certain laws under the Illegal Immigration Reform and Immigrant Responsibility Act violate the Take Care Clause.

4. Whether Plaintiffs are likely to succeed on the merits of their claim that the Secretary's waivers of certain laws under the Illegal Immigration Reform and Immigrant Responsibility Act violate the Presentment Clauses.

5. Whether Plaintiffs will suffer irreparable harm in the absence of a temporary restraining order or preliminary injunction.

6. Whether the public interest and balance of the equities favor temporarily restraining or preliminarily enjoining Defendants from pursuing border barrier construction projects pursuant to the waivers.

## INTRODUCTION

Defendants oppose Plaintiffs' emergency motion for a temporary restraining order or preliminary injunction. ("Mot"), ECF No. 34. Plaintiffs bring various claims alleging that the Secretary of Homeland Security's waivers of certain laws under the Illegal Immigration Reform and Immigrant Responsibility Act, and the statute itself, violate the Constitution. Those claims have no likelihood of success. Every court to hear such challenges has emphatically rejected them, including one in this district. This Court should reach the same conclusions and deny Plaintiffs' Motion because it stands no likelihood of success on the merits.

Plaintiffs' motion also fails on the remaining factors required for a preliminary injunction or temporary restraining order. The government has a compelling interest in vigorous border security and enforcement of the Nation's immigration laws. DHS identified the border wall projects at issue here because of the high rates of illegal entries and drug smuggling in the United States Border Patrol Big Bend Sector and Del Rio Sector in south Texas. An injunction preventing border barrier construction in this area would frustrate the government's ability to stop the flow of drugs and illegal border crossings and harm the public's interest. By contrast, Plaintiffs assert only speculative injuries that are insufficient to carry their heavy burden for preliminary relief. Current efforts are only pre-construction activities for preparation or design purposes. There is also no plan to install pedestrian barriers or stadium lighting in the Big Bend National Park. Further, CBP has extensive procedures in place to minimize the effects of construction on the environment.

For these reasons, as set forth below, Defendants respectfully request that the Court deny Plaintiff's Motion.

## BACKGROUND

### I. Statutory Framework

DHS is responsible for border security and the detection and prevention of illegal entry into the United States. *See, e.g.*, 6 U.S.C. § 202(1)-(2). Congress has ordered DHS to achieve and maintain operational control of the international land border. *See* Secure Fence Act of 2006, Pub. L. No. 109-367, § 2(a), 120 Stat. 2638 (Oct. 26, 2006) (8 U.S.C. § 1701 note). "Operational control" means "prevention of all unlawful entries into the United States, including entries by terrorists, other unlawful aliens, instruments of terrorism, narcotics, and other contraband." *Id.* § 2(b). The Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") is one of the statutory authorities provided to DHS to carry out its border security mission. *See* Pub. L. No. 104-208, div. C, tit. I § 102, 110 Stat. 3009-554 (Sept. 30, 1996). The IIRIRA requires the Secretary of Homeland Security to "take such actions as may be necessary to install additional physical barriers and roads (including the removal of obstacles to detection of illegal entrants) in the vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the United States." *Id.* § 102(a), codified at 8 U.S.C. § 1103 note. As part of that mandate, Congress required "construct[ion of] reinforced fencing *along not less than 700 miles of the southwest border*" and further gave the Secretary discretion to determine "where fencing would be most practical and effective" with the goal "to gain operational control of the southwest border." Pub. L. No. 110-161, div. E, tit. V, § 564, 121 Stat. 1844, 2090 (2007) (emphasis added); *see also* IIRIRA § 102(b)(1)(D) (as amended)

In addition to these guidelines, Congress provided two mechanisms to ensure expeditious border barrier construction. First, Congress granted the Secretary "the authority to waive all legal requirements such Secretary, in such Secretary's sole discretion, determines necessary to ensure

expeditious construction of the barriers and roads under this section." *Id.* § 102(c)(1). Second, Congress created a streamlined system of judicial review for challenges to the Secretary's waiver authority. It gave federal courts "exclusive jurisdiction" over such challenges, limited those challenges to allegations of a constitutional violation, and limited appellate review to a certiorari petition to the U.S. Supreme Court. IIRIRA §102(c)(2)(A), (C). This strictly limited review reflected the "Conferees' intent [] to ensure that judicial review of actions or decisions of the Secretary not delay the expeditious construction of border security infrastructure, thereby defeating the purpose of the Secretary's waiver." H.R. Rep. No. 109-72, at 172.

**II. The Secretary's Exercise of Waiver Authority**

Since 2005, the Secretary has repeatedly issued waiver determinations under the IIRIRA to ensure expeditious construction of barriers and roads along the border. *See, e.g.*, 90 Fed. Reg. 23946 (June 5, 2025); 84 Fed. Reg. 21798 (May 15, 2019); 82 Fed. Reg. 35984 (Aug. 2, 2017); 73 Fed. Reg. 19078 (Apr. 8, 2008); 72 Fed. Reg. 60870 (Oct. 26, 2007); 70 Fed. Reg. 55622 (Sept. 22, 2005). Every judicial challenge to these determinations has been dismissed. *See Ctr. for Biological Diversity v. Noem*, No. 25-00365-TUC-AMM, 2026 WL 836278 (D. Ariz. Mar. 26, 2026); *Ctr. for Biological Diversity v. McAleenan*, 404 F. Supp. 3d 218 (D.D.C. 2019), *cert. denied sub. nom. Ctr. for Biological Diversity v. Wolf*, 591 U.S. 1015 (2020); *In re Border Infrastructure Env't Litig.*, 284 F. Supp. 3d 1092 (S.D. Cal. 2018), *aff'd*, 915 F.3d 1213 (9th Cir. 2019), *cert. denied sub. nom. Animal Legal Def. Fund. v. DHS*, 586 U.S. 1035 (Dec. 3, 2018); *Sierra Club v. Trump*, 379 F. Supp. 3d 883, 922-23 (N.D. Cal. 2019), *aff'd*, 963 F.3d 874 (9th Cir. 2020), *vacated and remanded*, 142 S. Ct. 42 (2021); *N. Am. Butterfly Ass'n v. Nielsen*, 368 F. Supp. 3d 1 (D.D.C. 2019), *aff'd in part, rev'd in part sub nom. N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244 (D.C. Cir. 2020); *Cnty. of El Paso v. Chertoff*, No. 08-196, 2008 WL 4372693 (W.D. Tex. Aug. 29,

2008), *cert. denied*, 557 U.S. 915 (2009); *Save Our Heritage Org. v. Gonzalez*, 533 F. Supp. 2d 58 (D.D.C. 2008); *Defs. of Wildlife v. Chertoff*, 527 F. Supp. 2d 119(D.D.C. 2007), *cert. denied*, 554 U.S. 918 (2008); *Sierra Club v. Ashcroft*, No. 04-272, 2005 WL 8153059 (S.D. Cal. Dec. 13, 2005); *see also Presidio Mun. Dev. Dist. v. DHS*, No. CV 26-2146 (RBW), 2026 WL 2213850 (D.D.C. Aug. 2, 2026) (denying motion for preliminary injunction).

Relevant to this lawsuit, the Secretary of Homeland Security has issued three additional waivers under the IIRIRA to expedite barrier construction in portions of the Big Bend Sector of south Texas ("Big Bend Waivers"). On February 17, 2026, then-Secretary Noem executed a waiver for a project area in the U.S. Border Patrol Big Bend Sector "[s]tarting at approximately GPS point 31.037623, −105.579877 and extending south and east to approximately GPS point 29.325866, −104.046466." *See* Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended, 91 Fed. Reg. 7297 (Feb. 17, 2026); *as amended by* Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended, 91 Fed. Reg. 40550 (July 2, 2026). On May 15, 2026, Secretary Mullin issued another waiver for a project area in the U.S. Border Patrol Big Bend Sector "[s]tarting at approximately GPS point 29.325866, -104.046466 and extending east to approximately GPS point 29.728522, −102.683945." *See* Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, As Amended, 91 Fed. Reg. 27969 (May 15, 2026); *as amended by* Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, As Amended, 91 Fed. Reg. 34831 (June 9, 2026). Finally, on July 27, 2026, Secretary Mullin issued another waiver for the U.S. Border Patrol Big Bend Sector and Del Rio Sector "[s]tarting at approximately GPS point 29.728522, −102.683945 and extending east to approximately GPS point 29.449892,

−101.058017." *See*, Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, As Amended, 91 Fed. Reg. 46939 (July 27, 2026).

## ARGUMENT

### I. Legal Standard

Both temporary restraining orders and preliminary injunctions are "extraordinary remed[ies]." *Concernedapte LLC v. P'ships*, 811 F.Supp. 3d 807, 810 (W.D. Tex. 2025) (citing *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997)); *Whole Woman's Health v. Paxton*, 264 F.Supp.3d 813, 818 (W.D. Tex. 2017). To succeed on a motion for either relief, a Plaintiff must establish four factors: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the temporary restraining order is denied; (3) that the threatened injury outweighs any damage that the temporary restraining order might cause the defendant; and (4) that the temporary restraining order will not disserve the public interest. *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 452 (5th Cir. 2014) (citation omitted). The plaintiff must "clearly carr[y] the burden of persuasion" on all four elements. *Evans v. Garza*, 161 F.4th 315, 323 (5th Cir. 2025). If a Plaintiff "fails on the first factor," the Court need "not address the other three." *Future Proof Brands, LLC v. Molson Coors Bev. Co.*, 982 F.3d 280, 289 (5th Cir. 2020).

### II. Plaintiffs are not likely to succeed on the merits of their claim.

#### a) The Big Bend Waivers do not violate the Major Questions Doctrine.

Plaintiffs' first claim is that the Big Bend Waivers violate the Major Questions Doctrine. Mot. 7. As an initial matter, this Court lacks jurisdiction to hear Plaintiffs' Major Questions claim. The IIRIRA limits challenges to the waiver authority to claims "alleging a violation of the Constitution of the United States." IIRIRA § 102(c)(2)(A). The Major Questions Doctrine,

however, is a "tool" or "rule" of statutory interpretation. *See Mayfield v. U.S. DOL*, 117 F.4th 611, 616 (5th Cir. 2024). While the Doctrine is animated by background constitutional principles, such as the Separation of Powers, *see*, *e.g.*, *West Virginia v. EPA*, 597 U.S. 697, 723 (2022), that does not transform it into a "violation of the Constitution" itself. Indeed, many interpretative canons are informed by constitutional values, *see, e.g.*, *Biden v. Nebraska*, 600 U.S. 477, 508 (2023) (Barrett, J., concurring), but they ultimately remain rules of construction and interpretative tools to determine the best reading of a statute's text. *Id.* at 511.

Even if the Court had jurisdiction, Plaintiffs' Major Questions claim fails on the merits. The major questions doctrine only applies in "extraordinary cases" involving assertions of "vast economic and political significance" or "extravagant statutory power over the national economy." *West Virginia*, 597 U.S. at 716, 722-24 (citations omitted). In such cases, "the Government claimed broad, expansive power on an uncertain statutory basis[]" where "the statutory text might '[a]s a matter of definitional possibilities' have been read to delegate the asserted power." *Learning Res., Inc. v. Trump*, 607 U.S. 229, 242-43 (2026) (second alteration in original) (quoting *West Virginia*, 597 U.S. at 732); *see also Nebraska,* 600 U.S. at 501-02 (agency exercised "never previously claimed powers"). As recently summarized by the Fifth Circuit, the "major-questions doctrine bars agencies from exploiting ambiguous statutes to grant themselves broad new powers." *Tex. Tobacco Barn, L.L.C. v. U.S. Dep't of Health & Hum. Servs.*, 180 F.4th 229, 233 (5th Cir. 2026).

Here, the Major Questions Doctrine does not apply because Congress has unequivocally authorized DHS to construct barriers along the southern border and waive laws in furtherance thereof. IIRIRA § 102(a) directs DHS to "take such actions as may be necessary to install additional physical barriers and roads . . . in the vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the United States[,]" and 102(b) mandates that DHS

"construct reinforced fencing along not less than 700 miles of the southwest border." *Id.* § 102(b)(1)(A). Further, Section 102(c) expressly provides that the Secretary of Homeland Security "shall have the authority to waive all legal requirements such Secretary, in such Secretary's sole discretion, determines necessary to ensure expeditious construction of the barriers and roads under this section."

Accordingly, this is not a situation where DHS recently discovered "unintentional" or "oblique" statutory language to authorize a major policy change, *NFIB. v. OSHA*, 595 U.S. 109, 125 (2022) (Gorsuch, J., concurring), nor is DHS claiming "broad, expansive power on an uncertain statutory basis." *Learning Res., Inc.*, 607 U.S. at 242. The Secretary of Homeland Security has exercised authority under the IIRIRA for over two decades without a single court ever declaring it illegal. *See supra* 2-3. This long history of transparent agency action within the DHS's field of expertise contrasts sharply with cases where the Supreme Court has rejected novel claims of agency authority under the Major Questions Doctrine, such as the CDC imposing an eviction moratorium or OSHA imposing COVID vaccine test requirements. *See Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758 (2021) (per curiam); *NFIB*, 595 U.S. at 113 (per curiam).

Plaintiffs attempt to evade this crystal-clear text by reframing the issue as an overall border barrier construction issue. *See* Mot. 7-8. But Plaintiffs' claims are cabined to the single issue of whether the Secretary's three recent waivers pursuant to the IIRIRA are constitutional. Despite Plaintiffs' contentions to the contrary, the Big Bend Waivers focus on discrete, local geographic sections. Plaintiffs attempt to reframe the waivers as part of a larger multi-decade project conflicts with their clearly confined geographic scope.

Plaintiffs' only other argument attacks the statutory requirement that construction occur in "'areas' that see 'high illegal entry'" *See id*. 10. As an initial matter, the Big Bend Sector is an area of high illegal entry given the rates of illegal crossings and drug smuggling. *See infra* 12. Nevertheless, there is nothing novel or unlawfully expansive about interpreting the IIRIRA to allow Defendants to build border wall in the Big Bend and Del Rio Sectors. The IIRIRA clearly permits, and even commands, border barrier construction "to achieve and maintain operational control" of the border, § 102(b)(1)(D), which Congress has expansively defined as "the prevention of *all unlawful entries* into the United States, including . . . unlawful aliens, . . . narcotics, and other contraband." Pub. L. No. 109-367, § 2(b) (emphasis added). Plaintiffs cannot "impos[e] limits on an agency's discretion that are not supported by the text." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,* 591 U.S. 657, 677 (2020). Congress clearly directed the Secretary to build barriers and waive laws to expedite that construction, and nothing in the text, structure, or history of the IIRIRA is enough to make DHS's use of that authority a "major question."

**b) The Big Bend Waivers do not violate the Take Care Clause.**

The Constitution requires that the President "shall take Care that the Laws be faithfully executed[.]" U.S. Const. art. II, § 3. But Plaintiffs have not sued the President, and the Take Care Clause provides no basis to review the actions of subordinate Executive Branch officials. *See Free Enter. Fund v. Pub. Co. Accounting Bd.*, 561 U.S. 477, 492-93 (2010). Further, the Take Care Clause does not provide Plaintiffs with a private right of action. *See, e.g.*, *Las Ams. Immigrant Advoc. Ctr. v. Biden*, 571 F. Supp. 3d 1173, 1180 (D. Or. 2021).

On the merits, it is unclear how Plaintiffs' claim differs from their Non-Delegation or Presentment Clauses claims, which assert similar claims of legislating outside of Congressional bounds. *See* Mot. 14 (arguing that in issuing the Big Bend Waivers, the Secretary violated the Take

Care Clause by "purporting to be a lawmaker"). Indeed, another court has rejected a similar Take Care Clause claim for this very reason. *See Ctr. For Biological Diversity*, 404 F. Supp. 3d at 250 ("Plaintiffs have offered no basis for treating or viewing their Take Care Clause claim as anything other than a rehashing of the same concern that animates Plaintiffs' Presentment and non-delegation claims—*i.e.*, that Congress has delegated to DHS unlimited authority to exercise, in essence, legislative power, in a manner that the U.S. Constitution does not permit."). Thus, for the same reasons the Court should deny Plaintiffs' non-delegation claim, *supra*, and their Presentment Clause claim, *infra*, the Court should deny their Take Care Clause claim.

Without a doubt, the Secretary's waivers do dispense with the application of certain laws that were duly enacted by Congress for the limited purpose of constructing barriers and roads under the authority of the IIRIRA. But by waiving such laws, the Secretary is using an authority that was expressly granted by Congress and faithfully executing the mandate of the IIRIRA to expeditiously construct barriers and roads along the U.S. border. Put another way, "the challenged steps taken by the Secretary are ones that are plausibly called for by an act of Congress[.]" *In re Border Infrastructure Env't Litig.*, 284 F. Supp. 3d at 1139. Thus, the Executive obeying a Congressional mandate by exercising waiver authority expressly granted under a statute is fully in line with its obligation to faithfully execute the laws.

**c) The Big Bend Waivers do not violate the Non-Delegation Doctrine.**

The Non-Delegation Doctrine is rooted in the separation of powers, but few laws violate it. "The Supreme Court has only twice in its history struck down federal laws under the nondelegation doctrine[,]" both of which occurred in 1935. *Nat'l Infusion Ctr. Ass'n v. Kennedy*, 798 F. Supp. 3d 748, 757 (W.D. Tex. 2025), *appeal filed*, No. 25-50661 (5th Cir. Aug. 15, 2025). Congress may "vest discretion" in Executive Branch "agencies to implement and apply the laws it

has enacted," *FCC v. Consumers' Rsch.*, 606 U.S. 656, 672 (2025) (citation modified), so long as it sets forth an "intelligible principle" to guide an agency's actions. *See id.* at 673 (citation modified). To provide a constitutionally permissible "intelligible principle," Congress need only delineate "both 'the general policy' that the agency must pursue and 'the boundaries of [its] delegated authority.'" *Id.* (alteration in original) (quoting *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946)).

Plaintiffs' Non-Delegation claim fails because Congress' intelligible principle in the IIRIRA is well within the bounds provided by existing precedent, as repeatedly recognized by every other court that has addressed this same issue. *See Ctr. for Biological Diversity v. Noem*, 2026 WL 836278, at *4–5; *Ctr. for Biological Diversity*, 404 F. Supp. 3d at 244-49; *In re Border Infrastructure Env't Litig.*, 284 F. Supp. 3d at 1130-37; *Cnty. of El Paso*, 2008 WL 4372693, at *2-4; *Save Our Heritage*, 533 F. Supp. 2d at 63-64; *Defs. of Wildlife*, 527 F. Supp. 2d at 126-29; *Sierra Club*, 2005 WL 8153059, at *4-7.

Congress established a general policy in the IIRIRA. Section 102(a) delineates a general policy of "install[ing] additional physical barriers and roads" to "deter illegal crossings in areas of high illegal entry into the United States[,]" which § 102(c) incorporates by tying the waiver authority to "expeditious construction of the barriers and roads under this section." This establishes a policy to guide the Secretary: that improving border protection by expediting the construction of necessary barriers and roads is a critical Congressional priority. *See, e.g.*, *Ctr. for Biological Diversity*, 2026 WL 836278, at *4 (finding that "§ 102(c) is sufficiently guided by the general policy outlined in the §102(a)"); *Defs. of Wildlife*, 527 F. Supp. 2d at 127 (finding a policy "to expeditiously 'install additional physical barriers and roads . . . to deter illegal crossings in areas of high illegal entry'" (citation omitted)).

Congress also set meaningful boundaries on the Secretary's delegated authority: a geographic one and a temporal one. Waivers may only be issued in connection with construction "in the vicinity of the United States border." IIRIRA § 102(a) (incorporated by the "under this section" cross-reference). Waivers also may only be issued when "necessary to ensure expeditious construction" at those locations. *Id.* § 102(c); *see Defs. of Wildlife*, 527 F. Supp. 2d at 127 (citation omitted) (concluding that Congress provided a sufficient boundary by instructing that "the Secretary may waive only those laws that he determines 'necessary to ensure expeditious construction'" (citation omitted)); *Ctr for Biological Diversity*, 404 F. Supp. 3d at 248 (finding a guiding principle in the "narrow purpose" of "expeditious completion of [] border fences" (citation omitted)). As then-Judge Jackson concluded, "from the standpoint of what suffices as guidance from Congress regarding how the Executive Branch is to exercise the authority granted in the statute for constitutional purposes, what is set forth in subsections 102(a) and 102(c) is enough." *Ctr. for Biological Diversity*, 404 F. Supp. 3d at 249.

Plaintiffs attempt to differentiate the multitude of cases finding an intelligible principle by arguing that the term "areas of high illegal entry" has been stretched beyond recognition. Mot. 13. To begin, the Big Bend and Del Rio Sectors are areas of high illegal entry. Between fiscal years 2021 and 2025, the Big Bend Sector saw over 89,000 individuals attempt to enter the country illegally. *See, e.g.*, 91 Fed. Reg. at 7298. Border Patrol also seized over 89,703 pounds of drugs that individuals attempted to smuggle into the country illegally. *Id*. In that same time period, Border Patrol apprehended over 1,410,330 illegal aliens attempting to enter the United States between border crossings in the Del Rio Sector. Border Patrol also seized over 277 pounds of marijuana, over 198 pounds of cocaine, over 353 pounds of methamphetamine, and over five pounds of fentanyl. Just this year alone, Border Patrol has seized over 13,000 pounds of

illegal drugs, surpassing the annual totals for each of the previous three fiscal years. *See* CBP, Nationwide Drug Seizures (last modified Jul. 16, 2026), http://www.cbp.gov/document/stats/nationwide-drug-seizures. Even so, it is within the Secretary's discretionary authority to determine what constitutes an "area of high illegal entry." *See, e.g.*, *In re Border Infrastructure Env't Litig.*, 284 F. Supp. 3d at 1121 ("the Court cannot conclude the Secretaries violated their mandate to deter crossings in areas of 'high illegal entry'" by adopting one interpretation over another (citation omitted)).

Congress also set no specific threshold for "high illegal entry." In the most recent amendment to § 102, however, Congress did make clear that one of the Act's purposes is "to achieve and maintain operational control over the international border." § 102(b)(1)(D); *see also id.* § 102(b)(1)(A) ("to gain operational control of the southwest border"). And Congress has expansively defined "operational control" of the border as "the prevention of *all unlawful entries* into the United States, including . . . unlawful aliens, . . . narcotics, and other contraband." Pub. L. No. 109-367, § 2(b) (emphasis added).

Plaintiffs lose sight of the broader picture. "[A]reas of high illegal entry" is only part, if that, of Congress' policy statement in the IIRIRA. Section 102(a) indicates a policy of securing the United States border through installing barriers and roads. Indeed, multiple courts have found similar policy statements sufficient to reject Non-Delegation claims. *See, e.g.*, *In re Border Infrastructure Env't Litig.*, 284 F. Supp. 3d at 1133 (finding a "clearly delineated" policy of "deterrence of illegal crossings through construction of additional physical barriers to improve U.S. border protection"); *Cnty. of El Paso*, 2008 WL 4372693, at *3 (finding a "general policy" of "construction of a border fence"); *Sierra Club*, 2005 WL 8153059, at *6 ("the Court finds that improvement of U.S. border protection is the 'clearly delineated general policy'").

**d) The Big Bend Waivers do not violate the Presentment Clauses.**

Finally, Plaintiffs raise a Presentment Clauses claim. *Id.* at 16. This issue has been litigated extensively over the past two decades, and every Court to hear such a claim has found the IIRIRA constitutional. *See Cnty. of El Paso*, 2008 WL 4372693, at *6-7; *see also*, *Ctr. For Biological Diversity*, 2026 WL 836278, at *5-6; *Ctr. For Biological Diversity*, 404 F. Supp. 3d at 246-47; *Defs. of Wildlife*, 527 F. Supp. 2d at 123-26.

Clauses 2 and 3 of Article I, § 7 of the U.S. Constitution ("the Presentment Clauses") require that "any federal statute must pass both houses of Congress" and be presented to the President to either sign it into law or reject it. *Id*. The Presentment Clauses require a specific process, prohibiting legislative action that does not conform to it. Thus, the Constitution does not authorize the President "to enact, to amend, or to repeal statutes." *Clinton v. City of New York*, 524 U.S. 417, 438 (1998).

Plaintiffs claim that the IIRIRA §102(c) violates the Presentment Clauses because it allows the Secretary to "strip[] . . . 16 U.S.C. Section 1274(a)(17). . . of the legal and practical effect Congress conferred upon it." Mot. 14. But waiver of a legal requirement for a specific purpose is not "amending" of a statute or stripping it of its legal effect. *Id*. As then-Judge Jackson found in *Center for Biological Diversity*:

> "under the IIRIRA's waiver provision, '[t]he Secretary has no authority to alter the text of any statute, repeal any law, or cancel any statutory provision, in whole or in part.' . . . [T]o assert otherwise would effectively transform *any* Executive Branch waiver (the U.S. Code contains 'myriad examples' of such) into a violation of Article I, 'no matter how limited in scope.'"

404 F. Supp. 3d at 246 (quoting *Defs. of Wildlife* 527 F. Supp. 2d at 124-25). Under a §102(c) waiver, the waived statute is inapplicable only with respect to the construction of barriers and roads along the relevant portion of the border. The statute retains its general legal force and effect because

the Secretary's waiver extends to only a tiny fraction of the universe of cases to which the waived law applies.

Other courts have rejected similar arguments against waiver provisions. *See Republic of Iraq v. Beaty,* 556 U.S. 848, 861 (2009) ("The [statutory] proviso *expressly* allow[ing] the President to render certain statutes inapplicable . . . did not repeal anything, but merely granted the President authority to waive the application of particular statutes to a single foreign nation."); *In re NSA Telecomms. Recs. Litig. v. AT&T Corp.*, 671 F.3d 881, 895 (9th Cir. 2011) (rejecting Presentment Clause challenge to an "executive grant of immunity or waiver of claim," on the ground that it "has never been recognized as a form of legislative repeal").

Here, similarly, the § 102(c) authority in one statute granting authority to waive application of one or more other statutes is not uncommon. *See Defs. of Wildlife*, 527 F. Supp. 2d at 125 & n.5 (collecting some of the "myriad examples of waiver provisions in federal statutes"); *see also, e.g.*, 25 U.S.C. § 3406(d) (authorizing Secretary of each Federal agency providing funds for program to waive "any [] statutory . . . requirement, regulation, policy, or procedure promulgated by [that] agency"); Deficit Reduction Act, Pub. L. No. 109-171, § 5107(a)(2), 120 Stat. 4, 42 (Feb. 6, 2006) (providing for waiver of "such provisions of law . . . as are necessary to implement [specified statutory provision] on a timely basis"). Nor does § 102(c) raise the same separation of powers concerns that were at issue *Clinton*, the line-item veto case. In sharp contrast to *Clinton*, there is no question that the Secretary is executing (rather than rejecting) the will of Congress by waiving laws to expedite border barrier construction.

***

Because Plaintiffs have failed to establish a likelihood of success on the merits of their claims, the Court should deny the motion on this basis alone without consideration of the other factors. *See Future Proof Brands, LLC*, 982 F.3d at 289.

**III. Plaintiffs have failed to establish irreparable harm, and the balance of equities and public interest weigh against a preliminary injunction.**

The Court should also deny Plaintiffs' request for a preliminary injunction because Plaintiffs have failed to establish irreparable harm, and the balance of equities and public interest favor Defendants. Longstanding principles of equity dictate that the Court should deny Plaintiffs' motion for extraordinary relief because the compelling interests of the federal government in securing the southwest border greatly outweigh the speculative harm that the projects may cause Plaintiffs, especially when the government's mitigation efforts are considered. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (reversing injunction prohibiting the Navy from using sonar technology when balanced against alleged environmental injury).

The Supreme Court applied these principles to border barrier construction in *Trump v. Sierra Club*, 140 S. Ct. 1 (2019). There, the Supreme Court stayed an injunction prohibiting construction of various border barrier construction projects. In issuing the stay, the Supreme Court necessarily determined that the harm to the government from an injunction prohibiting border barrier construction outweighed the environmental interests advanced by the plaintiffs. *See id.* at 1 ("Among the reasons [for the stay] is that the government has made a sufficient showing . . . that the plaintiffs have no cause of action.") (emphasis added); s*ee La Posta Band of Diegueno Mission Indians v. Trump*, 2020 WL 14042584, at *20 (S.D. Cal. Sept. 9, 2020) (stating that "the Supreme Court has already balanced the harm to the Government from an injunction prohibiting border barrier construction against the irreparable environmental interest of the Sierra Club"). Indeed, since the Supreme Court issued this decision, courts in this Circuit have either denied or stayed

injunctions prohibiting construction of border barrier projects. *See El Paso County v. Trump*, No. 19-51144 (5th Cir. Jan. 8, 2020); *El Paso Cty., Texas v. Trump*, 407 F. Supp. 3d 655, 665 (W.D. Tex. 2019).

The environmental, cultural, religious, and property interests that Plaintiffs assert in this case are similar to those advanced by the plaintiffs in *Winter* and *Sierra Club*, and the balance of equities similarly favors Defendants here. Taken as a whole, Plaintiffs' allegations of harm are speculative and cannot support the issuance of a preliminary injunction, particularly when weighed against the federal government's acute need to secure the Southwest border. *See Manzanita Band of Kumeyaay Nation v. Wolf*, 496 F. Supp. 3d 257, 263 (D.D.C. 2020) (denying motion for emergency injunction to stop border wall construction because Indian Tribe failed "to make out a certain, great, and imminent injury in the absence of a preliminary injunction"); *La Posta*, 2020 WL 14042584, at *19-20 (finding equitable factors did not favor issuing an injunction stopping border wall construction).

**a. An injunction will impose substantial and irreparable harms on the United States.**

Enjoining the projects in the Big Bend Sector would compromise the government's "weighty" interests in border security, enforcing the immigration laws, and preventing the influx of narcotics into the interior. *See Landon v. Plasencia*, 459 U.S. 21, 34 (1982) ("The government's interest in efficient administration of the immigration laws at the border . . . is weighty."); *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 672 (1989) (recognizing that the government has "compelling interests in safety and in the integrity of our borders"). *United States v. Merkt*, 794 F.2d 950, 956 (5th Cir. 1986) ("[T]here is a compelling state interest in the government's uniform enforcement of border control laws."). The government's compelling interest is even stronger in the current context because of the "unprecedented flood of illegal immigration" that

has occurred over the past several years. Exec. Order No. 14159, Protecting the American People Against Invasion, 90 Fed. Reg. 8443 (Jan. 20, 2025). As the President has recognized, "[m]illions of illegal aliens crossed our borders . . . and allowed to settle in American communities, in violation of longstanding Federal laws." *Id.*

This massive increase in illegal immigration has imposed significant harms on the general public. The recent influx has "cost taxpayers billions of dollars at the Federal, State, and local levels." Exec. Order No. 14159, 90 Fed. Reg. at 8443. "Deadly narcotics and other illicit materials have flowed across the border[.]" Exec. Order No. 14165, Securing Our Borders, 90 Fed. Reg. 8467 (Jan. 20, 2025); see also *Hernandez v. Mesa*, 589 U.S. 93, 107 (2020) ("During the last fiscal year, approximately 850,000 persons were apprehended attempting to enter the United States illegally from Mexico, and large quantities of drugs were smuggled across the border"). "Foreign criminal gangs and cartels" have extended their influence beyond the southern border into American cities. Proclamation 10886, Declaring a National Emergency at the S. Border of the United States, 90 Fed. Reg. 8327 (Jan. 20, 2025). "Many of these aliens unlawfully within the United States present significant threats to national security and public safety," thus the government must take appropriate action to "protect[] the American people by faithfully executing the immigration laws of the United States." Exec. Order No. 14159, 90 Fed. Reg. at 8443; see also Exec. Order No. 14165, 90 Fed. Reg. at 8467; Proclamation No. 10866, 90 Fed. Reg. at 8327.

Border barriers are an extremely effective tool for deterring and impeding illegal crossings into the United States and protecting Border Patrol officers. Physical barriers are an essential component to the CBP's layered border security approach and provide numerous benefits including: (1) protecting Border Patrol agents, (2) assisting Border Patrol in gaining and maintaining operational control of the border, and (3) supporting a safe and secure border

community. Declaration of Paul Enriquez Decl. ¶ 6 (attached as Exhibit 1). Border barriers also allow USBP agents to gain more control and situational awareness in the area near the U.S.-Mexico border. In short, barriers deter and impede smugglers and aliens from entering the U.S. illegally and increase the effectiveness of Border Patrol agents. *Id.* Accordingly, an injunction thwarting the border barrier system projects would cause irreparable harm to the United States.

Plaintiffs retort that the Big Bend Sector "experiences the lowest rates of unlawful entry along the southern border[]" and so "the government has failed to demonstrate any urgent need for expedited barrier construction in the Big Bend region." Mot. 19. But this argument ignores the historical need for border security in this Sector. *See* 91 Fed. Reg. at 7298. Indeed, during fiscal years 2021 and 2022, unlawful entries spiked to record highs of over 30,000 annual encounters. *See* DHS Border Security Report - Fourth Quarter, Fiscal Year 2023 (January 9, 2025) (page 46, Appendix C, Table B1) (attached as Exhibit 2). And while such encounters have decreased in recent years, such decreases do not negate Congress's mandate for DHS to achieve *and maintain* operational control of the international land border, which Congress defined as the prevention of all unlawful entries into the United States. *See* Secure Fence Act of 2006, Public Law 109-367, section 2, 120 Stat. 2638 (Oct. 26, 2006) (8 U.S.C. 1701 note) (emphasis added). Additionally, while unlawful entries have decreased, drug apprehension have actually increased in recent months. *See* U.S. Customs and Border Protection, Nationwide Drug Seizures. https://www.cbp.gov/document/stats/nationwide-drug-seizures (last visited August 21, 2026).

**b. The United States' interests decisively outweigh Plaintiffs' speculative harms.**

Defendants' compelling interests "plainly outweigh[]" Plaintiffs' asserted injuries. *Winter*, 555 U.S. at 26, 33. As an initial matter, any environmental harms claimed by Plaintiffs have been overruled by Congress. In enacting IIRIRA, Congress stated an explicit preference for

"expeditious construction" of border infrastructure over the very environmental interests that Plaintiffs assert. *See* IIRIRA § 102(c)(1), *see also* Pub. L. No. 104-208, div. C, tit. I, § 102(c) (waiving the Endangered Species Act and the National Environmental Policy Act).

Even so, Plaintiffs' harms are minimal compared to the government's. *See* Enriquez Decl. ¶¶ 32-40. First, Plaintiffs' claim that current "vegetation clearing, habitat destruction, earthmoving, roadbuilding, and other ground disturbing activities[]" are "irreversibly alter[ing]" the Big Bend region is speculative at best. Mot. 16. Defendants are not mowing down every tree or shrub in the Big Bend region. The work that occurred in Big Bend National Park prior to the pause was limited to, for example, clearing of vegetation to "create a limited but passable route" for "geotechnical surveys" and to access the project alignment. *See* Enriquez Decl. ¶ 16. Such efforts are only pre-construction, design work. "What people are seeing right now is survey and design work—NOT construction of a wall through the park. We are working to preserve the landscape and protect the access visitors and local businesses depend on." Statement from CBP Commissioner Rodney S. Scott Correcting the Record on Big Bend Border Security Projects. https://www.cbp.gov/newsroom/announcements/statement-cbp-commissioner-rodney-s-scott-correcting-record-big-bend. (last visited August 21, 2026) (Scott Statement). Any work currently occurring outside the National Park is limited to the same kinds of field work necessary for design of the projects. Enriquez Decl. ¶¶ 24 – 31.

The proposed construction will not "irreversibly alter[]" the landscape. Mot. 16. The planned construction within the National Park as part of the Big Bend 4 project, which is currently being reviewed by the Commissioner of CBP, includes construction of 1 new patrol road, construction of 17 miles of non-contiguous vehicle barrier in strategic locations, improving existing roads, and adding detection technology. Enriquez Decl. ¶ 9. Plans for the Big Bend 1-3

projects include 30-foot pedestrian barriers, but none in national or state parks. *Id*. at ¶¶ 18-20 and Exhibits C, D, E. Finally, the Big Bend 5 project will only construct vehicle barrier system, and none in national or state parks. *Id*. at ¶ 22 and Exhibit F. Notably, Plaintiffs' claims of massive "steel bollards" and "lights" in the parks are patently false. Mot. 16. As CBP Commissioner Rodney Scott recently stated:

> CBP is building one new access road, improving existing roads, installing detection technology, and placing vehicle barriers in limited, strategic locations. We are NOT building a 30-foot wall or stadium lighting through Big Bend National Park, Big Bend Ranch State Park, or the Black Gap Wildlife Management Area.

*See* Scott Statement. Additionally, for every barrier infrastructure project, CBP conducts biological and cultural surveys, employs environmental monitors, consults with local stakeholders, and follows their Best Management Practices, all of which are designed to minimize harms similar to what Plaintiffs allege. Enriquez Decl. ¶¶ 38-40.

Finally, Plaintiffs' claim that construction near the Ruidosa Church could cause harm to the structure is equally speculative. As an initial matter, construction has not begun in the Church's vicinity and is not expected to for the foreseeable future. *See* Enriquez Decl. ¶ 32. Even so, Plaintiffs' concerns about construction vibrations harming the Church are unfounded. The planned barrier construction is on the *opposite side* of the highway from where the Church is located. *Id.* Further, In its twenty plus years of experience constructing barrier systems, CBP has never experienced a historic structure collapse from barrier system construction vibrations. *Id.*

**CONCLUSION**

For the reasons explained above, the motion for a temporary restraining order or preliminary injunction should be denied.

Dated: August 24, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ANDREW I. WARDEN
Assistant Branch Director

*/s/ Alexander J. Yun*
ALEXANDER J. YUN (D.C. Bar No. 90028923)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
202-674-0255
Alex.Yun@usdoj.gov

*Counsel for Defendants*

**CERIFICATE OF SERVICE**

I hereby certify that this document and its attachments were filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: August 24, 2026

*/s/ Alexander J. Yun*
ALEXANDER J. YUN

*Counsel for Defendants*