# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| FRIENDS OF RIUDOA CHURCH, et al.<br>*Plaintiffs,*<br>*v.*<br>MULLIN, et al.<br>*Defendants.* | Civil Action No. 3:26-cv-01099-KC |

**DECLARATION OF PAUL ENRIQUEZ**

I, Paul Enriquez, declare as follows:

1. I am the Director, Infrastructure Portfolio, U.S. Border Patrol Program Management Office Directorate ("PMOD"), U.S. Customs and Border Protection ("CBP"), an agency of the Department of Homeland Security ("DHS"). I have held this position since January 2023 and support the planning and execution of border infrastructure projects from construction to maintenance. From May 2021 to December 2022, I served as the Deputy Director for the Infrastructure Portfolio. From August 2018 to May 2021, I served as the Real Estate and Environmental Director for the Infrastructure Portfolio. From 2013 to August 2018, I was the Real Estate and Environmental Branch Chief for the Border Patrol and Air and Marine Program Management Office ("BPAM"), Facilities Management and Engineering, Office of Facilities and Asset Management. From 2011 to 2013, I was employed as an Environmental

Protection Specialist in the BPAM office. In that role, I performed environmental analyses for various border infrastructure projects. From 2008 to 2011, I was a contractor assigned to the BPAM office and provided environmental support on various border infrastructure projects.

2. CBP is the DHS component with primary responsibility for border security. CBP constructs, operates, and maintains border infrastructure necessary to deter and prevent illegal entry on the southern border.

3. Within CBP, PMOD has expertise in managing and executing border infrastructure projects. PMOD is tasked with managing the schedule, finances, real estate acquisition, environmental planning, and construction of the border infrastructure system along the U.S. border.

4. Based upon my current and past job duties, I am familiar with the funding appropriated to CBP for barrier system construction and CBP's planned and on-going border barrier construction on the southern border, including the border barrier construction at issue in this litigation.

5. This declaration is based on my personal knowledge and information made available to me in the course of my official duties.

6. Physical barriers are an essential component to the United States Border Patrol's ("USBP") layered border security approach and provide numerous benefits including: (1) barriers protect USBP agents, (2) barriers assist USBP in gaining and maintaining operational control of the border, and (3) barriers support a safe and secure border community. Border barriers allow USBP agents to gain more control and situational awareness in the area near the U.S.-Mexico border. Barriers deter and impede smugglers and aliens from entering the U.S. illegally and increase the effectiveness of USBP. There are over 750 miles of primary border barrier, over 125 miles of secondary barrier, and over 27 miles of water barrier along the United States – Mexico border. CBP also has over 40 barrier projects currently in various stages of planning and construction.

7. Among the projects currently being executed by CBP are multiple border barrier system

projects that will be executed in the USBP Big Bend Sector (the "Big Bend Sector"). These projects include the Big Bend 1, Big Bend 2, Big Bend 3, Big Bend 4, and Big Bend 5 projects.

**DESIGN AND CONSTRUCTION STATUS OF THE BIG BEND 4 PROJECT**

8. The Big Bend 4 project area includes portions of the Big Bend National Park. The project area for the Big Bend 4 project is shown on the map that is attached as Exhibit A. The contract for the Big Bend 4 project was awarded on May 11, 2026.

9. As part of the Big Bend 4 project, CBP planned to construct approximately 17 miles of non-contiguous vehicle barrier system in strategic locations within Big Bend National Park and east of the National Park. CBP also planned to construct a new patrol road, improve existing roads, and install technology within the National Park; however, the aspects of the project within the National Park are now subject to the Commissioner of CBP's review noted below. The Big Bend 4 project also includes construction or improvement of roads and installation of technology outside the National Park in Presidio and Brewster County, Texas, within the Big Bend Sector.

10. The vehicle barrier system that planned for the Big Bend National Park would be designed in coordination with the National Park Service and may include a "post and rail" vehicle barrier or other materials which will spaced about 4 feet apart, a patrol road, and barrier system attributes, including cameras and sensors. A depiction of a typical section of post and rail vehicle barrier is attached as Exhibit B.

11. A waiver covering the Big Bend 4 project was published in the Federal Register on May 15, 2026 (the "Big Bend 4 Waiver"). 91 Fed. Reg. 27969 (May 15, 2026). The Big Bend 4 waiver was executed by Secretary Mullin pursuant to § 102 of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, div. C, tit. I, § 102(c), 110 Stat. 3009-546, 3009-554 (1996) (codified as amended at 8 U.S.C. § 1103 note). On June 9, 2026, an amendment to the Big Bend 4 waiver, which was executed by Secretary Mullin, was published in the Federal Register. 91 Fed. Reg. 34831 (June 9, 2026). The amendment to the Big Bend 4 Waiver corrected the project area covered by the Big Bend 4 Waiver.

12. The Big Bend 4 project will be executed with funding provided by Congress as part of the One Big Beautiful Bill Act ("OBBBA"), Pub. L. No. 119-21, tit. IX, § 90001 (1)-(3), 139 Stat. 72, 357-58 (2025).

Current Activities.

13. CBP awarded a design-build contract for the Big Bend 4 project. As such, the contractor is responsible for designing the project as well as the construction activities. The contractor must complete and CBP must approve design before construction of the vehicle barrier, roads, and technology that are to be constructed as part of the Big Bend 4 project can begin. The contractor can, however, undertake other activities pending design. For example, the contractor can do field work for design, establish laydown yards for the project, clear and grub vegetation within the project alignment, procure materials, and engage in other preparatory work.
14. To this end, the contractor for the Big Bend 4 project has initiated design activities for the Big Bend 4 project. The design-related activities included actions within Big Bend National Park that began on the week of August 3, 2026. On August 18, 2026, however, the Commissioner of CBP ordered a pause of all activities related to the Big Bend 4 project within Big Bend National Park pending review of the planned construction in the National Park by the Commissioner The pause will last until at least August 31, 2026.
15. Prior to the pause, within Big Bend National Park the contractor had mobilized equipment and started some of the field work that is needed to facilitate geotechnical surveys. Geotechnical surveys are necessary for design of the project to assess soil, rock, and groundwater conditions.
16. To access the project alignment to perform geotechnical surveys, the contractor graded, repaired, and made limited improvements to existing roads within National Park to facilitate access to the project alignment for geotechnical surveys. The contractor also "pioneered" access routes that were necessary to facilitate access for geotechnical surveys. The pioneering involved removing vegetation and grading soils to create a limited but passable route to the

project alignment. The contractor was also clearing and grubbing vegetation within the project alignment in preparation for geotechnical surveys. CBP was also conducting biological and cultural surveys in the areas within the National Park where work related to geotechnical surveys would be performed. Geotechnical surveys were scheduled to begin within the next three weeks. All of this work has now been paused.

17. While the design work was on-going, the contractor was also planning for certain activities in support of construction within the National Park as part of the Big Bend 4 project. These preparatory activities were scheduled to begin in early-September. These activities included preparing laydown yards or staging areas, clearing and grubbing vegetation along the project alignment, and grading the project alignment. That work may now be pushed back as a result of the pause.

**DESIGN AND CONSTRUCTION STATUS OF THE BIG BEND 1 – 3 and 5 PROJECTS**

18. The Big Bend 1 project area is shown on the map that is attached as Exhibit C. As part of the Big Bend 1 project, CBP will construct approximately 47 miles of barrier system in Hudspeth County, Texas, within the Big Bend Sector. The elements of the barrier system include 30-foot bollard-style pedestrian barrier, a patrol road, and barrier system attributes, including, as appropriate to each area, cameras, lights, sensors, and other detection technology. The contract for the Big Bend 1 project was awarded on March 5, 2026.

19. A map of the Big Bend 2 project area is attached as Exhibit D. As part of the Big Bend 2 project, CBP will construct approximately 61 miles of barrier system in Presidio County, Texas, within the Big Bend Sector. The contract for the Big Bend 2 project was awarded on March 5, 2026.

20. A map of the Big Bend 3 project area is attached as Exhibit E. As part of the Big Bend 3 project, CBP will construct approximately 56 miles of barrier system in Hudspeth, Jeff Davis, and Presidio County, Texas, within the Big Bend Sector. The contract for the Big Bend 3 project was awarded on March 5, 2026.

21. On February 17, 2026, a waiver to facilitate the expeditious construction of barrier system and

roads in the Big Bend Sector covering the project areas for the Big Bend 1, 2, and 3 projects was published in the Federal Register (the "Big Bend 1-3 Waiver"). 91 Fed. Reg. 7297 (February 17, 2026). The Big Bend 1-3 Waiver was executed by then-Secretary Noem pursuant to § 102 of IIRIRA. An amendment to the Big Bend 1-3 Waiver was signed by Secretary Mullin and published in the Federal Register on July 2, 2026. 91 Fed. Red. 40550 (July 2, 2026).

22. A map of the Big Bend 5 project area is attached as Exhibit F. As part of the Big Bend 5 project, CBP will construct approximately 160 miles of vehicle barrier system in Brewster, Terrell, and Val Verde County, Texas, within the Big Bend Sector and Del Rio Sectors. The contract for the Big Bend 5 project was awarded on June 2, 2026.

23. On July 27, 2026, a waiver to facilitate the expeditious construction of barrier system and roads in the Big Bend and Del Rio Sectors covering the project area for the Big Bend 5 project was published in the Federal Register (the "Big Bend 5 Waiver"). 91 Fed. Reg. 45939 (July 27, 2026). The Big Bend 5 Waiver was executed by Secretary Mullin pursuant to § 102 of IIRIRA.

24. The Big Bend 1 - 3 and 5 projects will be executed with funding provided by Congress as part of the OBBBA.

Current Activities

25. Like Big Bend 4, CBP awarded design-build contracts for the Big Bend 1-3 and 5 projects. The contractor is therefore responsible for designing the projects as well as the construction activities, and the contractor must complete and CBP must approve a design before starting construction on the barrier infrastructure that is planned for the Big Bend 1-3 and 5 projects. As noted above, the contractor can engage in other activities while design is pending.

26. The majority of the land within the alignments for the Big Bend 1-3, and 5 projects is private land. Prior to accessing private land for surveys or other pre-construction activity, CBP secures a right of access from the private landowner. Field work necessary for design

therefore requires that CBP secure real estate agreements or property acquisitions within the project alignment. Generally speaking, before constructing border infrastructure, CBP acquires a fee or easement interest in the property, thereby converting the land to federal property.

27. *Big Bend 1*. For the Big Bend 1 project, the contractor has started the field work necessary for design in those areas where CBP has secured access. These activities include clearing and grubbing where geotechnical work is occurring and clearing and grubbing access routes to the geotechnical sites. The contractor is also repairing roads needed for geotechnical or construction access. CBP does not have a precise timeline as to when real estate will be secured for the entire project alignment.

28. *Big Bend 2*. For the Big Bend 2 project, the contractor is currently using publicly available data and other information to initiate design for the Big Bend 2 project. The contractor has not started any of the field work necessary for design, including geotechnical surveys, clearing and grubbing for geotechnical surveys, or mobilization of equipment.

29. CBP expects that the contractor will begin field work for design in those locations where CBP has secured the necessary agreements in the coming weeks. CBP does not have a precise timeline as to when real estate will be secured for the entire project alignment.

30. *Big Bend 3*. Big Bend 3 is similar to Big Bend 1. The contractor has started field work necessary for design in those areas where CBP has secured access. These activities include clearing and grubbing where geotechnical work is occurring and clearing and grubbing access routes to the geotechnical. The contractor is also repairing roads needed for geotechnical or construction access. CBP does not have a precise timeline as to when real estate will be secured for the entire project alignment.

31. *Big Bend 5*. No field work necessary for design has started in the Big Bend 5 project area. CBP expects field work necessary for design will begin in the coming weeks.

**ALLEGED HARMS**

32. Plaintiffs state for a historic adobe structure like Sacred Heart Church, construction in the vicinity of the Church could cause it to collapse. *See* Mot. 17. These claims appear to be overstated. The Sacred Heart Church is situated near, but not within, the Big Bend 2 project area. As noted, there is currently no construction activity within the Big Bend 2 project area. The Sacred Heart Church is situated on the east side of FM 170 The planned barrier alignment is west of FM 170 between the highway and the Rio Grande River. Plaintiffs also express concerns about vibrations from construction; however, CBP has experience constructing barrier near historic structures, including historic churches in the USBP Rio Grande Valley Sector. In its twenty plus years of experience constructing barrier systems, CBP has never experienced a historic structure collapse from barrier system construction vibrations.

33. Plaintiffs state that, based on their review of the Big Bend waivers, the Big Bend projects will create thousands of acres of "restricted border lands," including over 11,000 acres within Big Bend National Park and over 140,000 acres east of Big Bend National Park in the Big Bend 5 project area, which Plaintiffs refer to as the "Lower Canyon." Phillips Decl. ¶ 8. Plaintiffs further express concerns about future access to the Rio Grande River. Jordahl Decl. ¶ 13. These allegations are overstated.

34. As noted above, as part of the Big Bend 4 project, CBP planned to construct approximately 17 miles of non-contiguous vehicle barrier system within and to the east of the National Park. CBP also planned to construct a new patrol road, improve existing roads, and install technology within the National Park. CBP will also construct vehicle barrier system, construct or improve roads and install technology outside the National Park in Presidio and Brewster County, Texas, within the Big Bend Sector. No bollard-style pedestrian barrier is planned as part of the Big Bend 4 project. Thus, while there may be some temporary closures during construction, after the project is complete the Big Bend 4 project should have little to no impact on Plaintiffs' or any other member of the public's ability to access areas within Big

Bend National Park or other publicly accessible portions of the Big Bend 4 project area, including the Rio Grande River. The same is true of the Big Bend 5 project area. As noted, within the Big Bend 5 project area, or what plaintiffs refer to as Lower Canyons, CBP will construct approximately 160 miles of vehicle barrier system. While there may be temporary restrictions during construction, once it is complete, vehicle barrier system will not restrict access to any publicly accessible portions of the Big Bend 5 project area.

35. Regarding the Big Bend 1-3 project areas where CBP will construct barrier system, as a part of both planning border barrier system projects and consulting with landowners as part of the real estate acquisition process, CBP has a long history of incorporating gates into barrier system to facilitate access for various activities. Gates have been added throughout the southwest border to allow access to facilitate access to border monuments and to address other concerns. For example, in the United States Border Patrol Rio Grande Valley Sector, where barrier is constructed off the border to address treaty and floodplain issues, gates have been added to ensure access for emergency medical services, to accommodate access for farm machinery/equipment, and other purposes. For the Big Bend 1-3 projects, CBP will consult with impacted landowners and other stakeholders about the installation of gates and other access-related issues as the project moves forward.

36. Plaintiff also express concern about lighting that may degrade dark skies. *See* Mot. 17. However, no new stadium or LED lighting is planned in Big Bend National Park as part of the Big Bend 4 project. Infrared illuminators will be used in place of any LED lighting for cameras that will need to operate at night. In the Big Bend 1, 2, 3, and 5 project areas, and those parts of the Big Bend 4 project area that are outside the National Park, infrared illuminators will also be used in place of LED or stadium lighting in rural areas. In urban areas where LED lighting may be installed, CBP will implement measures such as light shielding to minimize lighting spillage. At this time, because the Big Bend projects are still in the planning phase, no final decisions have been made regarding the precise location of LED lighting or infrared illuminators that may be installed in the project areas.

37. Plaintiffs also express concerns about impacts from the design-related field work that has occurred in Big Bend National Park as part of the Big Bend 4 project. *E.g.,* Devine Decl. ¶ 10-15; Jordahl Decl. ¶ 13; Miller Junior Decl. ¶¶ 10-13.

38. As part of every barrier infrastructure project, however, including Big Bend 1-5 projects, CBP conducts biological and cultural surveys of the project area to identify cultural or biological resources, including plant and animal species, artifacts, or historic or cultural sites, that may be within the project footprint. The results of those surveys are used in conjunction with the results of prior surveys, other existing data and literature, and any information provided by stakeholders and federal resource managers. Where there are identified resources, CBP develops means to avoid or minimize impacts where it is possible, which includes consultation with federal or state resource agencies and affected stakeholders.

39. For the Big Bend projects, CBP also did targeted outreach to affected stakeholders, posted information about the projects on cbp.gov, and solicited input from the general public regarding potential impacts from the Big Bend projects. *See*, *e.g.*, Vehicle Barrier System Construction– Brewster, Terrell, and Val Verde Counties, Texas – July 2026 | U.S. Customs and Border Protection, available at https://www.cbp.gov/document/environmental-assessments/vehicle-barrier-system-construction-brewster-terrell-and-val (last accessed Aug. 24, 2026); Vehicle Barrier System and Road Construction– Brewster County, Texas – June 2026 | U.S. Customs and Border Protection, available at https://www.cbp.gov/document/environmental-assessments/vehicle-barrier-system-and-road-construction-brewster-county (last accessed Aug. 24, 2026); Border Barrier System– Hudspeth, Jeff Davis, and Presidio Counties, Texas – January 2026 | U.S. Customs and Border Protection, available at https://www.cbp.gov/document/environmental-assessments/border-barrier-system-hudspeth-jeff-davis-and-presidio-counties (last accessed Aug. 24, 2026). As planning and execution of the Big Bend projects move forward, CBP has and will continue to coordinate with local officials, federal and state land managers, and other stakeholders.

40. Additionally, CBP has environmental monitors that observe construction activities, and every

construction contract includes Best Management Practices ("BMPs") that must be adhered to by the construction contract. For example, the BMPs for the Big Bend 4 contract are attached as Exhibit G. The BMPs include, among other things:

- Minimizing the number of roads needed for the project and restoring roads used solely for access to natural surface and topography when they are no longer needed (BMP No. 12);
- Ensuring that disturbed soils not paved or otherwise permanently stabilized for construction have topsoil set aside to be used with species native to the project vicinity (BMP No. 15);
- Utilizing measures to prevent invasive species (BMP No. 16-18, 26);
- Minimizing tree and brush removal in threatened or endangered species habitat (BMP No. 30);
- Conducting pre-construction surveys for migratory birds (BMP No. 33);
- Implementing species-specific BMPs for state or federally-listed species (BMP Nos. 36-39: and
- Following protocols for inadvertent discoveries of cultural or historic resources (BMP Nos. 27-28.)

**HARMS TO THE GOVERNMENT**

41. If the Court were to issue an injunction, it could result in substantial harms to the government. A court-ordered pause could result in CBP becoming liable for contractor delay claims or other increased costs from the contractors.

42. In addition to harming the government, enjoining CBP from further construction of border infrastructure will harm the general public. As stated in the IIRIRA waivers that were issued for the Big Bend border barrier system projects, the Big Bend and Del Rio Sectors are areas of high illegal entry. Between fiscal year 2021 and fiscal year 2025, Border Patrol apprehended over 89,000 illegal aliens attempting to enter the United States between border crossings in the Big Bend Sector. In that same time period Border Patrol seized over 87,574

pounds of marijuana, over 867 pounds of cocaine, over 1,156 pounds of methamphetamine, over 12 pounds of heroin, and over 94 pounds of fentanyl. 91 Fed. Reg. 7297. In that same time period, Border Patrol apprehended over 1,410,330 illegal aliens attempting to enter the United States between border crossings in the Del Rio Sector. Border Patrol also seized over 277 pounds of marijuana, over 198 pounds of cocaine, over 353 pounds of methamphetamine, and over five pounds of fentanyl. Though apprehension numbers in the Big Bend and Del Rio Sectors may have declined recently, as also stated in the IIRIRA waivers, the statistics cited above show that illegal aliens and drug smugglers regularly try to exploit the Big Bend and Del Rio Sectors. The lack of border barrier infrastructure within the Big Bend and Del Rio Sectors makes it harder for Border Patrol to achieve operational control of the border. Thus, if CBP is unable to construct additional border infrastructure in the Big Bend and Del Rio Sector, it will remain an area that can be exploited by illegal aliens and drug smugglers.

***

This declaration is made pursuant to 28 U.S.C. § 1746. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 24 day of August, 2026.

Paul Enriquez
Infrastructure Portfolio Director
Program Management Office Directorate
U.S. Border Patrol

# EXHIBIT A

# Big Bend Wall Projects

*BBT-4: Alpine Station*




## LEGEND

- County Boundaries
- Patrol Road
- International Boundary
- Sector

**Proposed Alignment**

- Vehicle Barrier System

**State Land**

- State Land

**Federal Land**

- National Park Service Land

**If sheet measures less than 11x17" it is a reduced print. Reduce scale accordingly.*

1:400,000 1:400,000




**WARNING:** This document is **FOR OFFICIAL USE ONLY (FOUO)**. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. 552). It is to be controlled, stored, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to FOUO information and is not be released to the public or other personnel who do not have a valid "need-to-know" without prior approval of an authorized DHS official.

Map Request 1257

August 21, 2026

# EXHIBIT B



# EXHIBIT C

# Big Bend Wall Projects

*BBT-1: Sierra Blanca Station*




## LEGEND

- County Boundaries
- International Boundary
- Sector

**Proposed Alignment**

- Primary Vertical Wall System

**If sheet measures less than 11x17" it is a reduced print. Reduce scale accordingly.*

1:208,000 1:208,000




**WARNING:** This document is **FOR OFFICIAL USE ONLY (FOUO)**. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. 552). It is to be controlled, stored, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to FOUO information and is not be released to the public or other personnel who do not have a valid "need-to-know" without prior approval of an authorized DHS official.

# EXHIBIT D

# Big Bend Wall Projects

*BBT-2: Presidio Station*




## LEGEND

Ports of Entry
International Boundary
Sector

**Proposed Alignment**

Primary Vertical Wall System

**State Land**

State Land

**If sheet measures less than 11x17" it is a reduced print. Reduce scale accordingly.*

1:374,000 1:374,000




**WARNING:** This document is **FOR OFFICIAL USE ONLY (FOUO)**. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. 552). It is to be controlled, stored, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to FOUO information and is not be released to the public or other personnel who do not have a valid "need-to-know" without prior approval of an authorized DHS official.

Map Request 1257

August 21, 2026

# EXHIBIT E

# Big Bend Wall Projects

*BBT-3: Van Horn & Marfa Station*




## LEGEND

County Boundaries
International Boundary
Sector

**Proposed Alignment**

Primary Vertical Wall System

**State Land**

State Land

**If sheet measures less than 11x17" it is a reduced print. Reduce scale accordingly.*

1:350,000 1:350,000




**WARNING:** This document is **FOR OFFICIAL USE ONLY (FOUO)**. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. 552). It is to be controlled, stored, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to FOUO information and is not be released to the public or other personnel who do not have a valid "need-to-know" without prior approval of an authorized DHS official.

Map Request 1257

August 21, 2026

# EXHIBIT F

# Big Bend Wall Projects

*BBT-5: Alpine, Sanderson, Comstock, & Del Rio Station*




## LEGEND

- County Boundaries
- Patrol Road
- International Boundary
- Sector

**Proposed Alignment**

- Vehicle Barrier System

**State Land**

- State Land

**Federal Land**

- National Park Service Land

*"If sheet measures less than 11x17" it is a reduced print. Reduce scale accordingly.*

1:521,000




**WARNING:** This document is **FOR OFFICIAL USE ONLY (FOUO)**. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. 552). It is to be controlled, stored, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to FOUO information and is not be released to the public or other personnel who do not have a valid "need-to-know" without prior approval of an authorized DHS official.

Map Request 1257

August 21, 2026

# EXHIBIT G

# ATTACHMENT B

**BEST MANAGEMENT PRACTICES**

## BBT-4 Vertical Barrier and Attributes Design Build Construction Project

Brewster County, TX

US CUSTOMS and BORDER PROTECTION (CBP) BORDER PATROL PROGRAM MANAGEMENT OFFICE DIRECTORATE (PMOD)

**Best Management Practices – BBT-4 Vertical Barrier & Attributes (Alpine Station)**
**November 2025**

## Best Management Practices (BMPs) for General Terrestrial Construction Activities

1. Implement Customs and Border Protection (CBP) BMPs during all construction activities including proper handling, storage, and disposal of hazardous or regulated materials.
2. Collect and store all fuels, waste oils, and solvents in tanks or drums within a secondary containment system that consists of an impervious floor and earthen dike capable of containing 125 percent of the volume of the containers stored therein. These materials will be removed from the site during demobilization.
3. Refuel machinery following accepted guidelines, including refueling and storage shall take place away from the aquatic habitat; (not within 100 feet of a drainage channel, wetland, or other surface waters). A designated refueling area with spill protections readily available shall be reviewed by CBP prior to implementation. A contingency plan to control petroleum products accidentally spilled during the project shall be developed as part of all aquatic/in-water projects.
4. A CBP-approved Spill Protection Plan (SPPP) must be prepared and implemented by the contractor at the construction site to ensure that toxic substances are properly handled, stored, and disposed of. Contain spills immediately and use an absorbent (e.g., granular, pillow, sock) to absorb and contain the spill. Immediately report any spill of a hazardous or regulated substance to the CBP Project Manager and on-site environmental monitor. Drip pans will be used beneath equipment, and containment zones will be used when equipment is not being used, or when refueling vehicles and equipment.
5. Collect non-hazardous solid waste (trash and waste construction materials) and deposit in on-site receptacles. Maintain solid waste receptacles and dispose as required.
6. Only authorized contractors and government personnel are allowed within the construction site. With the exception of service dogs, no pets including emotional support pets, owned or under the care of any and all construction workers will be permitted inside the project's construction boundaries, adjacent native habitats, or other associated work areas. Service animals shall have formal official documentation from a licensed physician for CBP approval prior to being allowed onsite.
7. If construction or maintenance work activities occur during nighttime hours, all lights will be shielded to direct light only onto the work site, the minimum wattage needed will be used, and the number of lights will be minimized. If birds are roosting on temporary light poles and other pole-like structures used for construction activities, then anti- perch devices would be used to discourage roosting by birds. Light poles will be designed to prevent hunting perches for ravens and raptors. Unnecessary lights will be turned off to avoid attracting wildlife.
8. A Stormwater Pollution Prevention Plan (SWPPP) will be prepared prior to construction activities. Additional site-specific BMPs will be implemented as described in the SWPPP to reduce erosion and the impact of non-point source pollution during construction activities, giving special consideration to areas with highly erodible soils. Address highly erodible soils in the SWPPP. BMPs include such things as buffers around washes to reduce the risk of siltation and installation of water bars to slow the flow of water downhill.
9. Vehicular traffic associated with the construction activities must remain on established roads to the maximum extent practicable. No off-road vehicle activity will occur outside of the project footprint. Vehicle parking will be confined to the project footprint. Vehicles will not exceed 25 mph within the project area.

10. The project site will be accessed exclusively via designated access roads. Any new or improved access roads will include road construction and maintenance BMPs in their design and plan.

11. Maintain existing roads during construction and return the existing roads and staging areas to pre-construction conditions, if requested by the Government, once construction is complete. The widening of existing or created roadbed beyond the design parameters due to improper maintenance and use will be avoided or minimized. The width of all roads that are created or maintained by CBP should be measured and recorded using GPS coordinates and provided to the Government. Photo document and provide GPS coordinates where correction is needed. The government is to acquire GIS shape files from construction contractor at end of project.

12. The minimum number of roads needed for proposed actions must be constructed and maintained to proper standards. Roads constructed for project access must be closed and restored to natural surface and topography using appropriate techniques once no longer needed for the project. The GPS coordinates of roads that are thus closed must be recorded and provided to the Government. A record of acreage or miles of roads taken out of use must be maintained. Photo document efforts if they occur prior to completion of project. GIS files from the Contractor must be provided to CBP.

13. Areas disturbed by past activities must be used for staging, parking, and equipment storage. All staging, parking, equipment storage areas, and access roads, with their requested uses, will be approved by CBP. Prior to beginning any construction activity (including equipment mobilization, tree- trimming, clearing and grubbing, and road grading), contractor must stake and flag the perimeter of the work area, access routes, laydown yards, staging areas, turnarounds, and other areas approved for use. Recommend flagging and staking occur every 25-linear feet to prevent unauthorized impacts outside of the approved work area. Photo document and provide GPS coordinates of these areas to CBP.

14. If soil-binding agents are utilized, they must be applied during the late summer/early fall months to avoid impacts on federally listed species. Soil-binding agents must not be used in or near surface (within 100 feet) of waters (e.g., wetlands, perennial streams, intermittent streams, washes). Only apply soil-binding agents to areas that lack any vegetation.

15. All disturbed soils not paved that will not be landscaped or otherwise permanently stabilized by construction must have topsoil set aside to be used with species native to the project vicinity. CBP will provide a list of seed mix for each project area.

16. To prevent invasive species seeds, all hauling and construction equipment, including work and personal vehicles, must be washed at the identified facility prior to mobilization to the project area. All vehicles and equipment must be free of all attached soil, mud, vegetation, and other debris prior to mobilization to the construction site.

17. Invasive plants on any work area or shoreline must be treated through chemical or mechanical means. Herbicides must be used according to label directions. Herbicide application must be conducted by a licensed applicator, and daily report of chemical application rate mut be reported to CBP Construction PM or Environmental. Mechanical removal must be done in ways that eliminate the entire plant and remove all plant parts to a disposal area, with the exception of root mass left in-place for bank stabilization.

18. Any off-site materials (e.g., fill and gravel, straw bales, wattles, fiber rolls) must be weed-free to prevent the introduction of non-native species.

19. Preventative measures will be implemented to avoid the introduction of invasive plant species, including soil sourcing, topsoil oversight, and material inspection.

20. Dust control measures will be implemented to prevent hazardous conditions in terrestrial land associated

with the project (staging areas, access roads).

21. Concrete wash water will be collected in an area with an impervious floor and removed off-site for proper disposal to prevent toxicity to aquatic life.
22. A CBP-approved Fire Prevention and Suppression Plan (FPSP) must be developed and implemented for all activities that require welding or otherwise have a risk of starting a fire.
23. Groundwater extraction can occur with written approval by CBP. Groundwater wells shall be metered daily and meter readings provided to the onsite environmental monitor and CBP Project Manager daily.
24. Activities will pause during heavy rain or hazardous weather conditions, including avoiding traversing vehicles or equipment across flowing or standing watercourses.
25. Spray painting bollards shall be performed using equipment designed to minimize overspray. Spray painting bollards should not be conducted in high winds to prevent over spraying into adjacent vegetation.
26. Areas that are hydro-seeded for temporary erosion-control measures must use only native plant species appropriate to surrounding habitat types. Seed list must be approved by CBP environmental prior to application.
27. If cultural resources (artifacts, features, sites, structures) are encountered work shall stop in the immediate area (50 ft radius) until the environmental monitor can assess the significance of the find.
28. If human remains are encountered, work will stop within 100 feet of the find. Appropriate Federal and State agencies will be consulted for a path forward.
29. Areas around and beneath equipment in terrestrial and aquatic settings must be checked for listed species and wildlife to avoid "take" situations.
30. Tree and brush removal in threatened and endangered (T&E) species habitats will be minimized and will not interfere with active nesting as per the Migratory Bird Treaty Act.
31. Ground disturbing activities (e.g. vehicular travel, grubbing, vegetation removal, grading, storage of materials, installation of aerial targets, excavation, scraping, removal of large boulders etc) shall not be undertaken outside the approved project area.
32. Prior to ground disturbing activities, vegetation removal or trimming, a government biologist will present an environmental awareness program to all personnel who will be onsite, including but not limited to Government employees, contractors, contractor employees, supervisors, inspectors, and subcontractors. Included also will be general identification of the species, description of habitat, sensitivity of the species to human activity and describe measures for avoidance and protection of the species during construction. Following the education program, the photograph of the species will be posted in the office of the Contractor and resident engineer, where they must remain through the duration of the project. The Contractor will be responsible for ensuring that all their employees are aware of these species and that they may be present within the project area.
33. If construction or clearing activities are scheduled during the nesting season (typically March 1-September 15) the government will perform a preconstruction survey for migratory bird species to identify active nests prior to the start of any construction or clearing activity. If construction activities will result in the disturbance or harm of a migratory bird, then CBP may coordinate with the U.S. Fish and Wildlife Service (USFWS). Establish buffer zones around active nests until nestlings have fledged and abandoned the nest.
34. When an individual of a federally listed species is found within the project limits, notify the PM or CBP Construction Site Manager. Work may resume when the Government biologist safely removes the individual, or it moves away on its own. Individuals of federally listed species found in the project area and requiring relocation will be relocated by the Government biologist.

35. To prevent entrapment of wildlife species during construction, all excavated, steep walled holes or trenches more than 2-feet deep will either be entirely covered at the close of each working day with plywood or trench cover plates or provided with one or more escape ramps constructed of earth fill or wooden planks. The ramps will be located at no greater than 1,000-foot intervals and will be sloped less than 45 degrees. Each morning before the start of construction and before such holes or trenches are filled, they will be thoroughly inspected for trapped animals. Any animals discovered will be allowed to escape voluntarily (by escape ramps or temporary structures), without harassment, before construction activities resume, or removed from the trench or hole by a qualified biologist and allowed to escape unimpeded.

## Species Specific

36. **Hinckley Oak (*Quercus hinckleyi*):** Endangered plant species are known to occur in this project area. Government monitors will survey and mark plant populations for avoidance.

37. **Bunched Cory Cactus (*Coryphantha ramillosa*) and Lloyd's Mariposa Cactus (*Sclerocactus mariposensis*):** Avoidance of impacts to federally and state listed plant species is the preferred conservation measure. However, if it is determined that federally endangered and threatened cacti and other protected species cannot be avoided in place, salvage and translocation of plants to an area adjacent to the project area will be required. The contractor's qualified biologist shall prepare a plant salvage and translocation plan identifying plant species of concern that will be impacted by construction operations within the project area prior to scheduled construction activities. The plan shall include the following information:

    - A qualified biologist will be on site to oversee all translocation of plants.
    - Method of removal and placement.
    - Procedures for feeding & watering, if applicable.
    - Marking provisions for relocated plants identifiable during establishment period.
    - Establishment period (minimum 12 months) measures to be employed.
    - A monitoring plan for relocated species.
    - Relocate affected plants north of the project area.
    - Species should be relocated to a minimum of 10' away from proposed lighting & electrical features.
    - The north face of cacti will be marked so that the species are translocated in the same position.

38. **Salina Mucket (*Potamilus metnecktayi*) and Texas Hornshell (*Popenaias popeii*)**: The project area overlaps with Salina mucket and Texas hornshell designated critical habitat. No fill material shall be placed into or removed from any potential Salina mucket and Texas hornshell habitat without CBP review and approval. Erosion control measures will be put in place near waterways to avoid habitat impact. In-stream work during high flow periods will be avoided to minimize mollusk habitat impacts. If temporary stream crossings are necessary, use bridges or culverts instead of driving through the water. In addition, a biological monitor familiar with the species will be present during construction activities.

39. **Big Bend Gambusia (*Gambusia gaigei*):** Endangered and sensitive aquatic and riparian species are known to occur in this project area. Prior to construction activities, a CBP biologist would survey the project footprint and mark areas for avoidance. If construction is to occur in an intermittent or perennial waterway, species relocation may be required.