**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

FRIENDS OF THE RUIDOSA CHURCH; DANNY WILLIAM MILLER JUNIOR; and CENTER FOR BIOLOGICAL DIVERSITY,

*Plaintiffs*,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; and U.S. CUSTOMS AND BORDER PROTECTION,

*Defendants.*

Case No. 3:26-cv-01099-KC

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR A TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**


STATEMENT OF ISSUES .......... ii

FACTUAL BACKGROUND .......... 1

ARGUMENT .......... 1

I. Plaintiffs have established a likelihood of success on the merits. .......... 1

- a. The Big Bend Waivers violate the Major Questions Doctrine. .......... 1
- b. The Big Bend Waivers violate the Executive's duty to faithfully execute the law. .......... 2
- c. IIRIRA §102(c) and the Big Bend Waivers violate the Nondelegation Doctrine. .......... 4
- d. The National Park and Lower Canyons Waivers violate the Presentment Clause. .......... 6

II. Plaintiffs have demonstrated irreparable harm. .......... 7

III. The balance of the equities and the public interest weigh in favor of an injunction. .......... 9

## STATEMENT OF ISSUES

1. Whether Plaintiffs are likely to succeed on the merits of their claim that the West Waiver (91 Fed. Reg. 7297–98 (Feb. 17, 2026), *as amended by* 91 Fed. Reg. 40550–51 (July 2, 2026)), National Park Waiver (91 Fed. Reg. 27969–70 (May 15, 2026), *as amended by* 91 Fed. Reg. 34831–33 (June 9, 2026)), and Lower Canyons Waiver (91 Fed. Reg. 46939–41 (July 27, 2026)) (collectively, the "Big Bend Waivers" or "Waivers"), issued by the Secretary of the U.S. Department of Homeland Security pursuant to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") violate the major questions doctrine.

2. Whether Plaintiffs are likely to succeed on the merits of their claim that the Big Bend Waivers violate the Take Care Clause.

3. If the Court does not resolve Plaintiffs' claims under the major questions doctrine or Take Care Clause, whether Plaintiffs are likely to succeed on the merits of their claim that IIRIRA Section 102(c) and the Big Bend Waivers violate the nondelegation doctrine.

4. Whether Plaintiffs are likely to succeed on the merits of their claim that the National Park and Lower Canyons Waivers violate the Presentment Clause.

5. Whether border barrier-related construction currently underway and planned within the Big Bend Waiver areas will likely cause Plaintiffs irreparable harm absent injunctive relief.

6. Whether the balance of equities and public interest favor preserving the status quo and preliminarily enjoining or restraining further border barrier-related construction pending resolution of this action.

## FACTUAL BACKGROUND

During the week of August 3, 2026, Defendants commenced construction and ground disturbing activities in Big Bend National Park. Pls.' Mot. (ECF No. 34) 4. On August 17, 2026, the same day as Plaintiffs moved for emergency injunctive relief, Defendants paused construction. *Id.* 5. Plaintiffs requested a hearing on their Motion on August 20, 2026 (ECF No. 37) and Defendants filed an Opposition to Plaintiffs' Motion on August 24, 2026 (ECF No. 38).

## ARGUMENT

### I. Plaintiffs have established a likelihood of success on the merits.

#### a. The Big Bend Waivers violate the Major Questions Doctrine.

This Court has jurisdiction to adjudicate Plaintiffs' Major Questions Doctrine claim. A majority of the Supreme Court agrees that the doctrine is a clear-statement rule, and nearly all—if not all—justices recognize the separation-of-powers principles that underlie it. *See* Pls.' Mot. (ECF No. 34) 7 n.7. Regardless of whether major questions must always address a constitutional violation—a question this Court need not answer—here, Defendants' actions amount to a violation of separation of powers and Article I's Vesting Clause, because they seek to deprive Congress of quintessential legislative power over a major policy decision: whether to build a Great Wall.[1] Plaintiffs' claim is a justiciable constitutional question squarely within this Court's jurisdiction.

Plaintiffs do not dispute that Congress has authorized DHS to construct border barriers, however, nowhere has Congress authorized DHS to waive laws to expeditiously construct the Great Wall or hundreds of miles of border barrier and roads in areas that cannot be construed as

---

[1] Recent Fifth Circuit precedent reinforces this understanding and confirms that, in this Circuit, the doctrine is properly understood as constitutional clear-statement rule. *See VDX Distro, Inc. v. United States FDA*, 179 F.4th 356, 363 (5th Cir. 2026) ("the major questions doctrine guards against unintentional, oblique, or otherwise unlikely delegations of legislative power" and requires "clear congressional authorization rather than a merely plausible textual basis") (cleaned up).

areas of high illegal entry.[2] The authority asserted in the Big Bend Waivers expands beyond the four corners of the Waivers. *See* Pls.' Mot. 8 (discussing evidence the Court considered to determine the scope of authority asserted in the Clean Power Plan). That authority is shaped by the President's and DHS Secretary's statements regarding the Great Wall, the recently issued Procurement Waivers that span the entire border, and the larger context in which the Waivers arise. Pls.' Proposed Undisputed Facts (ECF No. 19-1) ("PUF") ¶¶ 4, 5, 12–18. Defendants do not dispute that the government's overarching plan is to build a coast-to-coast Great Wall through serial IIRIRA waivers—and it is precisely this newfound, broad, and expansive power that Plaintiffs challenge. Because the power that Defendants seek is extraordinary and not clearly authorized by Congress, the Big Bend Waivers violate the major questions doctrine.

**b. The Big Bend Waivers violate the Executive's duty to faithfully execute the law.**

The Supreme Court has long recognized that the President fulfills his constitutional obligation to "take Care that the Laws be faithfully executed" through subordinate executive officers. *See* Pls.' Mot. 11 (citing cases). Defendants' contention that subordinate Executive Branch officials are beyond the reach of the Take Care Clause is therefore without support.

Defendants' assertion that the Take Care Clause provides no private right of action fares no better. The sole district court decision they cite suggests that the issue remains unsettled. *See Las Americas Immigrant Advocacy Ctr. v. Biden*, 571 F. Supp. 3d 1173, 1180 (D. Or. 2021). However, courts have nevertheless considered Take Care Clause claims on the merits. *See, e.g.*, *Ctr.*

---

[2] Defendants' reliance on IIRIRA Section 102(b) does not circumvent Section 102(a). IIRIRA Section 102(b)(1)(A) calls for "reinforced fencing along not less than 700 miles of the southwest border where fencing would be most practical and effective . . . to gain operational control of the southwest border." IIRIRA Section 102(b)(1)(D) further states "[n]otwithstanding subparagraph (A), nothing in this paragraph" requires the Secretary to install border barrier infrastructure "if the Secretary determines that the use or placement of such resources is not the most appropriate means to achieve and maintain operational control."

*for Biological Diversity v. Bernhardt*, 946 F.3d 553, 561–62 (9th Cir. 2019) (considering Plaintiff's Take Care Clause claim).[3] At a minimum, Defendants cite no binding authority foreclosing Plaintiffs' claim here.

Defendants are also mistaken that Plaintiffs' Take Care Clause claim merely repackages their nondelegation and Presentment Clause claims. Although related, those claims ask different constitutional questions. The nondelegation claim asks whether Congress constitutionally conferred Defendants' asserted authority in the first place. *See* Pls.' Mot. 12–13. The Presentment Clause claim asks whether the authority claimed by the Secretary to amend or repeal a duly enacted statute, specifically a section of the Wild and Scenic Rivers Act, 16 U.S.C. § 1274(a)(17), falls outside the Article I legislative process. *See* Pls.' Mot. 13–15. The Take Care Clause claim, by contrast, asks whether the Executive has asserted a dispensing power incompatible with Article II, that allows the Secretary to decide for himself when and where Congress's laws will and will not apply. *See* Pls.' Mot. 11–12.

Defendants concede that the Big Bend Waivers "dispense with the application of certain laws that were duly enacted by Congress." Defs.' Opp'n (ECF No. 38) 9. Yet Defendants identify nothing in IIRIRA that authorizes the Secretary to invoke IIRIRA waiver authority in areas, like the Big Bend region, that are not "areas of high illegal entry." Their argument assumes the very constitutional question in dispute: that the Big Bend Waivers fall within the limits Congress imposed. Plaintiffs contend they do not. And because they do not, the Secretary is without authority

---

3 The Supreme Court in *United States v. Texas* likewise deemed a Take Care Clause challenge of sufficient significance to direct supplemental briefing and argument on that constitutional claim. 577 U.S. 1101 (2016) (granting certiorari in *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015) and, *sua sponte*, requesting briefing and argument on "Whether the [Secretary of DHS' actions establishing Deferred Action for Parents of Americans and Lawful Permanent Residents'] violate[d] the Take Care Clause of the Constitution, Art. II, § 3").

to dispense of dozens of statutes.

**c. IIRIRA §102(c) and the Big Bend Waivers violate the Nondelegation Doctrine.**

Defendants attempt to invoke prior decisions upholding IIRIRA Section 102(c) to support their assertion that courts have found policy statements as broad as "securing the United States border through installing barriers and roads" sufficient to defeat nondelegation challenges. Defs.' Opp'n 12. But that mischaracterizes both IIRIRA and the weight of prior authority. Plaintiffs do not dispute that courts have previously upheld Section 102(c)'s waiver authority. Those decisions, however, did not rest on an abstract policy of "border security" through the installation of barriers and roads. Rather, they relied on the premise that Congress had articulated a clearly delineated general policy: the expeditious construction of border barriers and roads to deter unlawful border crossings "in areas of high illegal entry." *See, e.g., Cnty. of El Paso v. Chertoff*, No. EP-08-CA-196-FM, 2008 WL 4372693, at *4 (W.D. Tex. Aug. 29, 2008); *Save Our Heritage Org. v. Gonzales,* 533 F. Supp. 2d 58, 63 (D.D.C. 2008) (same); *In re Border Infrastructure Envtl. Litig.*, 284 F. Supp. 3d 1092, 1132 (S.D. Cal. 2018) (same).[4] Far from endorsing a boundless waiver authority, those decisions assumed both a clearly delineated general policy and boundaries on the delegated authority to meaningfully constrain the Secretary's discretion.

That assumption can no longer be maintained. Through its recent border-wide Procurement Waivers, the DHS Secretary has designated the entire southern border to be an "area[] of high illegal entry." PUF ¶ 17–18. But if every border patrol sector qualifies, including every one of the 607 border miles at issue in the Big Bend Waivers, then the general policy ceases to perform any

4 *See also Sierra Club v. Ashcroft*, 2005 WL 8153059, *1, *5 (S.D. Cal. 2005) (finding the boundary of delegated waiver authority under a prior version of IIRIRA was "only for the narrow purpose of expeditious completion of the [14-mile] Triple Fence authorized by the IIRIRA" in the San Diego area).

function at all. Decl. of Connor Phillips (ECF No. 34-3) ¶ 6; *see Panama Refining Co. v. Ryan*, 293 U.S. 388, 415 (1935) (finding a nondelegation violation where "the President [maintained] an unlimited authority to determine the policy and to lay down the prohibition, or not to lay it down, as he may see fit").

The Big Bend Sector encompasses more territory than any other sector along the southern border, yet it experiences the lowest rate of apprehensions. PUF ¶¶ 34–35. Within Big Bend National Park—which encompasses 118 border miles—apprehensions average only 0.14 per border mile per month. *Id.* ¶ 36. Although low, those apprehension figures paint a misleading picture of border activity because they include, for example, individuals who lawfully seek admission at ports of entry and those pursuing asylum protections afforded under federal law. *See* § III, *infra.* The sector also accounts for just 0.1 percent of CBP's drug seizures other than marijuana, the vast majority of which arrives through ports of entry. Expert Rep. of Adam Isacson (ECF No. 19-2) ¶ 25. In other words, this expansive area is one with objectively low levels of unlawful entry and drug seizures—which are unlikely to be meaningfully deterred by border barriers.[5]

Today, the Court is no longer reviewing the delegation that prior courts upheld. It is reviewing a delegation that, as interpreted by Defendants, authorizes the Secretary to waive any law across the entire southern border to expedite construction of a Great Wall. Even though the Big Bend Waivers do not encompass the entirety of the southern border,[6] so long as the Procurement Waivers remain in force, IIRIRA waivers will continue to espouse an interpretation of the statute

[5] In any event, drug seizure is not relevant. Congress's general policy constraining delegated authority is the expeditious construction of border barriers and roads to "deter illegal crossings in areas of high illegal entry." Accordingly, evidence regarding drug trafficking does not cure the constitutional defects of the Big Bend Waivers or Section 102(c).

[6] To Plaintiffs' knowledge, the Procurement Waivers were never challenged and are now outside IIRIRA's statute of limitations. Defendants may nevertheless voluntarily rescind those waivers or Congress may void or clearly affirm them.

that cannot pass nondelegation muster. If the major questions doctrine or Take Care Clause do not foreclose that result, the nondelegation doctrine must. Otherwise, the phrase "areas of high illegal entry" becomes an empty vessel through which Congress has transferred legislative authority without any meaningful limiting principle. The Constitution demands more.

**d. The National Park and Lower Canyons Waivers violate the Presentment Clause.**

Contrary to Defendants' assertion, the issue presented by Plaintiffs' Presentment Clause claim has not been litigated before. Plaintiffs do not contend that IIRIRA Section 102(c) is unconstitutional whenever the Secretary waives the application of any legal requirement. Nor do Plaintiffs challenge an exercise of waiver authority that merely excuses compliance with a generally applicable statute in a particular context. Rather, Plaintiffs challenge the Secretary's use of Section 102(c) to amend or nullify Congress's site-specific legislative judgment protecting a geographically identified segment of the Rio Grande under the Wild and Scenic Rivers Act ("WSRA"), 16 U.S.C. § 1274(a)(17).

As an initial matter, the IIRIRA waiver cases on which Defendants rely rejected broad Presentment Clause challenges to Section 102(c)'s waiver authority. *See* Defs.' Opp'n 13. None addressed whether Section 102(c) may be used to deprive Congress's protection of a specifically designated geographic area of its intended legal and practical effect. Nor did any involve a statute comparable to the WSRA section at issue, where Congress made a place-specific legislative judgment regarding a segment of the Rio Grande. Plaintiffs therefore present this Court with a distinct constitutional question that the cases cited by Defendants never considered.

Defendants' reliance on *Republic of Iraq v. Beaty*, 556 U.S. 848 (2009), is misplaced. *Beaty* did not address a Presentment Clause challenge to the constitutionality of the underlying waiver authority and instead resolved a question of statutory interpretation. *See id.* at 861. Defendants'

reliance on *In re National Security Agency Telecommunications Records Litigation v. AT&T Corp.*, 671 F.3d 881 (9th Cir. 2011), is similarly unavailing. There, the challenged statute authorized the Attorney General to confer immunity upon specific telecommunications providers that assisted government intelligence activities. *Id.* at 891, 895.

This case presents a fundamentally different question. Through Section 1274(a)(17), Congress made a legislative judgment that a particular segment of the Rio Grande would be protected and enhanced as part of the National Wild and Scenic Rivers System. The Secretary then invoked IIRIRA Section 102(c) to authorize activities that will permanently degrade the very values that qualified the segment for protection under the National Wild and Scenic Rivers System. In doing so, the Waivers accomplish more than temporary suspension of statutory requirements during construction. They strip Congress's designation of its intended legal and practical effect.

**II. Plaintiffs have demonstrated irreparable harm.**

This lawsuit challenges the Big Bend Waivers—which span approximately one third of the southern border and authorize full border wall construction along the entirety of those areas—as unconstitutional. Defendants attempt to diminish Plaintiffs' harms by curtailing their constantly changing construction plans and artificially narrowing the scope of their claimed waiver authority.

First, any contention that construction in Big Bend will be limited finds no support in the text of the Waivers themselves. *See* Defs.' Opp'n 19–20 (insisting that construction in the National Park will not include walls, and instead will entail "1 new patrol road . . . 17 miles of non-contiguous vehicle barrier . . . adding detection technology"). However, Plaintiffs do not challenge the government's latest iteration of construction plans—which have changed repeatedly. Plaintiffs challenge the Waivers.

The Big Bend Waivers contain no expiration dates or limitations regarding the types of border infrastructure authorized pursuant to them. If Defendants intended to limit the Waivers to patrol roads or other discrete infrastructure, they could have done so,[7] but instead they chose to authorize the full cavalry of border infrastructure along the entirety of the Waiver areas, including 30-foot-tall steel bollard walls. Even if Defendants presently intend to construct only limited infrastructure in some areas, nothing constrains them from expanding those activities in the future. Plaintiffs therefore challenge Defendants' sweeping authorization to build border wall across one third of the U.S.-Mexico border. As discussed in Plaintiffs' Motion, the surface-disturbing actions taken pursuant to the Waivers causes Plaintiffs irreparable harm. Pls.' Mot. 16–18.

Second, Defendants seek to minimize the scale of destruction that has ensued. *Compare* Pls.' Mot. 16–18 *with* Defs.' Opp'n 19 ("Defendants are not mowing down every tree or shrub . . . [this is] only pre-construction, design work."). But their descriptions of this work are marred in deception, stating that the contractor merely "'pioneered' access routes that were necessary to facilitate access for geotechnical surveys." Decl. of Paul Enriquez (ECF No. 38-1) ¶ 16. Videos and photographs submitted in support of Plaintiffs' Motion depict those purportedly "pioneered" geotechnical survey routes. *See, e.g.,* Decl. of Laiken Jordahl (ECF No. 34-5) ¶¶ 9 (Video 1), 11. Federal Defendants cannot rewrite history.

The harm that Plaintiffs experience when construction and ground disturbing activities occur pursuant to the Big Bend Waivers is profound. *See* Pls.' Mot. 16–18. Plaintiffs and their members are witnessing the irreparable, ad hoc, and unnecessary bulldozing of one of America's most wild wilderness corridors and public places.

---

7 *See, e.g.*, Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended, 85 Fed. Reg. 43593–43595 ("construction of roads" only).

### III. The balance of the equities and the public interest weigh in favor of an injunction.

Nothing in Defendants' Opposition indicates that their interests outweigh Plaintiffs' harms. To begin, the cases cited by Defendants do not sustain the position that the government's interests in border security here should be afforded any outsized weight. First, in *Landon v. Plasencia*, the Supreme Court noted the "government's interest in efficient administration of the immigration laws at the border" as being "weighty"—but ultimately those interests were not sufficient for the Court to find that the government afforded a permanent resident due process in her exclusion hearing. 459 U.S. 21, 34, 37 (1982) (reversing and remanding the case for further proceedings on the sufficiency of process afforded to the respondent). *National Treasury Employees Union v. Von Raab*, fares no better: there, the Court found that the government's "compelling interests" in drug testing employees before promoting them "to positions directly involving the interdiction of illegal drugs, or to positions that require the incumbent to carry a firearm" outweigh the privacy interests of government employees. 489 U.S. 656, 679 (1989). Finally, the Fifth Circuit's statement regarding a "compelling state interest in the government's *uniform* enforcement of border control laws," was made during the Court's assessment of a free exercise claim, not as part of any balancing-of-equities analysis. *United States v. Merkt*, 794 F.2d 950, 956 (5th Cir. 1986) (emphasis added). Nevertheless, it bears emphasizing that *Merkt* did not establish that the government's interest in border security outweighs religious interests, rather that uniform application of those laws did not unduly burden religious exercise. *Id.* at 955.

Rather than imposing "significant harms on the general public," or amounting to an "unprecedented flood of illegal immigration," unlawful entries have decreased significantly. *See* Defs.' Opp'n 16–18 ("encounters have decreased in recent years"). In the Big Bend Sector there have been approximately 0.4 apprehensions per border mile per month since the start of President

Trump's administration. PUF ¶ 35. In the National Park, just 0.14 apprehensions per border mile per month in the past decade. *Id.* ¶ 36.

Moreover, these figures, alongside the "historical" figures provided by Defendants, significantly overstate the number of individuals attempting to cross the border unlawfully between ports of entry. No amount of border wall infrastructure will deter people from seeking asylum or otherwise presenting themselves at ports of entry to request lawful admission, yet CBP's border apprehension figures combine those figures into its overall totals. Border Security Status Report: Fourth Quarter, Fiscal Year 2023 (ECF No. 38-2) at 47. "Title 8 apprehensions" and "Title 42 expulsions" were added to CBP's overall apprehensions in fiscal years 2021 and 2022, accounting for the vast majority of CBP apprehensions. *Id.*[8]

Expedited border barrier construction through IIRIRA's waiver authority is just one of many border-security tools at Defendants' disposal. *See, e.g.,* 8 U.S.C. § 1103(a)(5). For decades, border patrol agents have relied on other methods that keep unlawful entries low in Big Bend, aided in no small part by the natural barriers that also make this place so special.

* * * *

For the foregoing reasons, and as put forth in Plaintiffs' Motion, Plaintiffs respectfully request that this Court preliminarily enjoin or restrain Defendants from border barrier construction pursuant to the challenged Waivers.

---

[8] "Title 8 Enforcement Actions refers to apprehensions or inadmissibles . . . Inadmissibles refers to individuals encountered at ports of entry who are seeking lawful admission into the United States but are determined to be inadmissible, individuals presenting themselves to seek humanitarian protection under our laws, and individuals who withdraw an application for admission and return to their countries of origin. . . Title 42 Expulsions refers to individuals . . . expelled to the country of last transit or home country in the interest of public health under Title 42 U.S.C. 265." CBP, Nationwide Enforcement Encounters: Title 8 Enforcement Actions and Title 42 Expulsions, available at https://www.cbp.gov/newsroom/stats/cbp-enforcement-statistics/title-8-and-title-42-statistics (last accessed Aug. 24, 2026).

DATED: August 25, 2026

Respectfully submitted,

*/s/* Zeynep J. Graves

Zeynep J. Graves (CA Bar No. 298533)*
Center for Biological Diversity
2100 Franklin St., Ste 375
Oakland, CA 94612
Tel: (510) 844-7160
Fax: (520) 623-9797
zgraves@biologicaldiversity.org

Emma Yip (CA Bar No. 352446)*
Shannon Eva Labuschagne (CA Bar No. 365633)
Center for Biological Diversity
2100 Franklin St., Ste 375
Oakland, CA 94612
Tel: (206) 858-2297
Fax: (520) 623-9797
eyip@biologicaldiversity.org
slabuschagne@biologicaldiversity.org

Dustin Rynders (TX Bar No. 24048005)
TEXAS CIVIL RIGHTS PROJECT
P. O. Box 1108
Houston, TX 77251
Tel: (832) 767-3630 ext. 196
dustin@texascivilrightsproject.org

Kate Gibson Kumar (TX Bar No. 2413588)
Alana Park (TX Bar No. 24150568)
TEXAS CIVIL RIGHTS PROJECT
P. O. Box 17757
Austin, TX 78760
Tel: (512) 474-5073 ext. 225
kate@texascivilrightsproject.org
alana@texascivilrightsproject.org

* *Admitted Pro Hac Vice*

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed electronically through the CM/ECF system, which causes all parties or counsel to be served by electronic means.

DATED: August 25, 2026

Respectfully submitted,

*/s/* Zeynep J. Graves

Zeynep J. Graves (CA Bar No. 298533)*
Center for Biological Diversity
2100 Franklin St., Ste 375
Oakland, CA 94612
Tel: (510) 844-7160
Fax: (520) 623-9797
zgraves@biologicaldiversity.org

*Admitted Pro Hac Vice