**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| FRIENDS OF THE RUIDOSA CHURCH; DANNY WILLIAMS MILLER JUNIOR; and CENTER FOR BIOLOGICAL DIVERSITY<br>*Plaintiffs*,<br>v.<br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; and U.S. CUSTOMS AND BORDER PROTECTION<br>*Defendants*. | Case No. 3:26-cv-01099-KC |

**BRIEF OF AMICI CURIAE**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........ iii
**INTEREST OF AMICI** ........ 1
**ARGUMENT** ........ 3
**I. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVORS AN INJUNCTION.** ........ 3
**II. BECAUSE THE WAIVERS VIOLATE THE PRESENTMENT CLAUSE, PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CONSTITUTIONAL CHALLENGE TO THE BIG BEND WAIVERS.** ........ 6
A. The Presentment Clause ........ 6
B. Changes to a Duly Enacted Statute Require Presentment. ........ 6
C. The Big Bend Waivers Violate the Presentment Clause. ........ 7
**CONCLUSION** ........ 10
**CERTIFICATE OF SERVICE** ........ 11

## TABLE OF AUTHORITIES

### Cases

*Clinton v. New York*, 524 U.S. 417 (1998) .......... 5, 6, 7, 9

*INS v. Chadha*, 462 U.S. 919 (1983).......... 6

*Nken v. Holder*, 556 U.S. 418 (2009).......... 3

*Price v. Tex. Tech Univ. Health & Scis. Ctr. El Paso,* 784 F.Supp.3d. 944 (W.D. Tex. 2025) .......... 3

*United States v. Texas*, 557 F.Supp.3d 810 (W.D. Tex. 2021).......... 3

### Statutes

16 U.S.C. § 1271 .......... 7, 8

16 U.S.C. § 1274(a)(17).......... 8

54 U.S.C. § 100101(a) .......... 4

Pub. L. No. 95-625, § 702, 92 Stat. 3467 (1978) .......... 8

### Other Authorities

NAT'L PARK SERV., DEP'T OF THE INTERIOR, MANAGEMENT POLICIES § 1.4.3 (2006).......... 4

NAT'L PARK SERV.: BIG BEND NAT'L PARK, *Archaeology in Big Bend*, https://www.nps.gov/bibe/learn/historyculture/archaeology-in-big-bend.htm (last visited Aug. 18, 2026) .......... 4

NAT'L PARK SERV.: BIG BEND NAT'L PARK, *Big Bend Biosphere Region*, https://www.nps.gov/bibe/learn/nature/mab.htm (last visited Aug. 18, 2026) .......... 4

NAT'L PARK SERV.: BIG BEND NAT'L PARK, *Wildlife*, https://www.nps.gov/bibe/learn/nature/wildlife.htm (last visited Aug. 18, 2026) .......... 5

NAT'L PARK SERV.: RIO GRANDE WILD & SCENIC RIVER, *Learn About the Park*, https://www.nps.gov//learn/index.htm (last visited Aug. 18, 2026) .......................................... 5

**Regulations**

91 Fed. Reg. 27969-70 (May 15, 2026)................................................................................ 2

91 Fed. Reg. 34831-33 (June 9, 2026)................................................................................ 2

91 Fed. Reg. 40550-51 (July 2, 2026) ................................................................................ 2

91 Fed. Reg. 7297-98 (Feb. 17, 2026) ................................................................................ 2

**Constitutional Provisions**

U.S. CONST. art. I, § 1 ................................................................................................ 6

U.S. CONST. art. I, § 7 ................................................................................................ 6

## INTEREST OF AMICI

National Parks Conservation Association (NPCA) and Sierra Club and its Lone Star Chapter (Sierra Club), together Amici Curiae *or* Amici, are non-profit organizations that share a common goal of protecting and conserving public lands, waters, and natural resources within the United States.

**NPCA** is a non-profit, nonpartisan organization with more than 1.9 million members and supporters throughout the United States. The organization and its members act to safeguard national parks within the United States. NPCA has advocated fiercely to protect national parks and comes now to extend that advocacy to the fragile and unique ecosystem of Big Bend National Park and its connected regions. NPCA's recent advocacy efforts include submitting comment letters to United States Customs and Border Protection (CBP) urging CBP to prioritize solutions that balance border security with environmental protection and cultural preservation needs to avoid harming the irreplaceable natural and cultural resources and fragile ecosystems that comprise the Big Bend region in Texas.

The **Sierra Club** is a national non-profit organization with 64 chapters and 599,549 members dedicated to exploring, enjoying, and protecting the wild places of the earth; to practicing and promoting the responsible use of the earth's ecosystems and resources; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives. Sierra Club's Lonestar Chapter is the oldest grassroots environmental organization in Texas. The Chapter represents over 19,000 members across Texas' diverse geographic regions. Through the Chapter's members and supporters, it works to protect Texas' natural resources, public health, and ecosystems, including those found in the Big Bend region.

As organizations dedicated to exploring, conserving, and protecting wild places within the United States - including the system of public lands that comprise the national parks and wild and scenic rivers - Amici share an interest in the issues this Court will consider.

## INTRODUCTION

This case presents a question of constitutional boundaries. Specifically, did the Secretary of Homeland Security (DHS) exceed well-established constitutional boundaries when he purported to waive[1] longstanding, geographically-specific laws that protect the Big Bend region? Amici believe the answer is yes. Accordingly, they offer this brief in support of Plaintiffs' Motion for a Temporary Restraining Order or Preliminary Injunction [Dkt. No. 34], Plaintiffs' Motion for Summary Judgment [Dkt. No. 19], Plaintiffs' Reply Brief [Dkt. No. 32], and Plaintiffs' Reply Brief in Support of Motion for a Temporary Restraining Order or Preliminary Injunction [Dkt. No. 39].

This brief addresses two points relevant to Plaintiffs' pending motions. First, the balance of harms, equities, and the public interest in continuing to preserve, protect, and enjoy Big Bend National Park (and the portion of the Rio Grande River that is designated wild and scenic) favors an injunction. Second, Plaintiffs are likely to succeed on the merits of their Constitutional claims for the reasons they identify in their motion papers. The Big Bend Waivers functionally repeal Congress' designation of the Rio Grande as a Wild and Scenic River without following the constitutionally required step of Presentment. For these reasons and those provided by Plaintiffs, the Court should grant Plaintiffs' Motion for a Preliminary Injunction [Dkt. No. 34].

---

[1] For consistency, Amici refer to the DHS Secretary's waivers at issue collectively as the Big Bend Waivers—just as Plaintiffs identify the waivers in their Motion for Summary Judgment: the "West Waiver" (91 Fed. Reg. 7297-98 (Feb. 17, 2026), as amended by 91 Fed. Reg. 40550-51 (July 2, 2026)) and the "National Park Waiver" (91 Fed. Reg. 27969-70 (May 15, 2026), as amended by 91 Fed. Reg. 34831-33 (June 9, 2026)).

## ARGUMENT

The requirements for granting a request for a preliminary injunction are well known to this Court. They include a party's likelihood of success on the merits, the irreparable harm that will occur without the requested relief, the balance of the equities, and the public interest. *Price v. Tex. Tech Univ. Health & Scis. Ctr. El Paso,* 784 F.Supp.3d. 944, 951 (W.D. Tex. 2025). Here, Plaintiffs aptly identify the irreparable harms that will occur should construction be allowed to resume. [Dkt. 34 pgs. 23-29]. Amici share in the identified harms and reiterate that an injunction should issue to prevent such drastic harms to public and protected lands that make up the Big Bend region. Additionally, as chronicled below, the balance of equities and the public interest tip the balance toward an injunction.

### I. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVORS AN INJUNCTION.

When the federal government is a party, the balance of equities and the public interest factors merge. *United States v. Texas*, 557 F.Supp.3d 810, 822 (W.D. Tex. 2021) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). In this case, the balance of equities and the public interest favors an injunction.

Plaintiffs identify irreparable harms they and others will suffer if construction resumes within Big Bend National Park and the park-adjacent region. Indeed, because Big Bend is a designated national park, these harms also affect the general public, whose continued use and enjoyment of the park will be irreparably affected. The Big Bend Waivers attempt to suspend the long history of protections afforded to Big Bend and the Congressionally mandated protections for the national park system as a whole.

These wise protections have endured well over 100 years, preserving bountiful opportunities for residents of this growing nation to benefit from closely protected outdoor spaces.

In 1916, Congress codified these intentions, creating the National Park Service (NPS) and empowering it to "promote and regulate the use of the National Park System" so that it could "conserve the scenery, natural and historic objects, and wild life" in these parks and "provide for the enjoyment of the scenery, natural and historic objects, and wild life" in a way that would "leave them unimpaired for the enjoyment of future generations." 54 U.S.C. § 100101(a); NAT'L PARK SERV., DEP'T OF THE INTERIOR, MANAGEMENT POLICIES § 1.4.3 (2006) ("The fundamental purpose of the [NPS] . . . begins with a mandate to conserve park resources and values. This mandate is independent of the separate prohibition on impairment and applies all the time with respect to all park resources and values . . . .").

In fact, the NPS has been particularly avid in its efforts to conserve Big Bend, leave it unimpaired, and show-case its unique features.[2] Many of those efforts are documented on the public-facing pages of the National Park Service. For example:

> The Big Bend Biosphere Region (BBBR) was designated by UNESCO [the United Nations Educational, Scientific, and Cultural Organization] in 1976 and is special to many people in different ways.[3] The BBBR possesses extraordinary natural and cultural resources and contains the largest intact portion of the Chihuahuan Desert ecosystems in the U.S., which is one of the most biologically rich and diverse desert ecoregions in the world.[4]

> Big Bend National Park's varied habitats support an amazing variety of wildlife, including 11 species of amphibians, 56 species of reptiles, 40 species of fish, 75 species of mammals, more than 450 species of birds, and about 3,600 species of insects. The park boasts

---

[2] Archeological sites are also a critical feature of Big Bend National Park, as it is estimated that there are 26,000 archeological sites within the park boundaries. NAT'L PARK SERV.: BIG BEND NAT'L PARK, *Archaeology in Big Bend*, https://www.nps.gov/bibe/learn/historyculture/archaeology-in-big-bend.htm (last visited Aug. 18, 2026).

[3] Big Bend is one of only 28 UNESCO reserves in the United States.

[4] NAT'L PARK SERV.: BIG BEND NAT'L PARK, *Big Bend Biosphere Region*, https://www.nps.gov/bibe/learn/nature/mab.htm (last visited Aug. 18, 2026).

> more types of birds, bats, butterflies, ants, and scorpions than any other national park in the United States.[5]

> As part of the only river system in the Chihuahuan Desert, the Rio Grande serves as the lifeblood for numerous threatened species . . . The Wild and Scenic designation applies to 200 miles of the United States portion of the Rio Grande . . . [Combined with the Monumento Natural Rio Bravo del Norte], Big Bend National Park and the Rio Grande Wild and Scenic River protect 250 miles of river – one fifth of the section of the Rio Grande that is shared by the United States and Mexico.[6]

The Secretary of DHS' waivers would in effect lift protections in these identified areas and if construction were allowed to move forward, would irreparably and forever alter the described landscapes and ecosystems that make up the region.

Finally, the public has an interest in ensuring that large-scale federal infrastructure projects are implemented legally. As Justice Kennedy explained while concurring in *Clinton v. New York*, it is in the public's interest to ensure that each branch of government carries out its activities under the appropriate legal authority because "[t]he Constitution's structure requires a stability which transcends the convenience of the moment." *Clinton v. New York*, 524 U.S. 417, 449 (1998) (Kennedy, J., concurring). No interest could be stronger than that of the public, and as Congress' 1916 enactment demonstrates, the consistent public interest in conserving unimpaired parks endures to this day.

[5] NAT'L PARK SERV.: BIG BEND NAT'L PARK, *Wildlife*, https://www.nps.gov/bibe/learn/nature/wildlife.htm (last visited Aug. 18, 2026).
[6] NAT'L PARK SERV.: RIO GRANDE WILD & SCENIC RIVER, *Learn About the Park*, https://www.nps.gov//learn/index.htm (last visited Aug. 18, 2026).

## II. BECAUSE THE WAIVERS VIOLATE THE PRESENTMENT CLAUSE, PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CONSTITUTIONAL CHALLENGE TO THE BIG BEND WAIVERS.

Amici also agree that Plaintiffs are likely to succeed on the merits of their constitutional challenges to the Big Bend Waivers.[7] The Big Bend Waivers generally, and the National Park Waiver specifically, violate the Presentment Clause to the U.S. Constitution. They do so because they functionally repeal the Wild and Scenic River Act (WSRA) designation for the Texas Segment of the Rio Grande River, which the Secretary of DHS could never do since only Congress and the President acting together, and not he alone, are empowered to satisfy the constitutional obligation of presentment.

### A. The Presentment Clause

The Presentment Clause is a critical safeguard that the framers wisely built into the U.S. Constitution. Functionally, it ensures balance between powers exercised by the Executive Branch and those properly within Congress' authority. Yet the Big Bend Waivers violate it.

The Presentment Clause is fundamental to American law-making; it provides the basic steps that must be followed to enact a federal law. *See* U.S. CONST. art. I, § 7. And as the Supreme Court has held, "the power to enact statutes may only 'be exercised'" by following those basic steps. *Clinton*, 524 U.S. at 419, 439 (1998) (quoting *INS v. Chadha*, 462 U.S. 919, 951 (1983)). Relatedly, and as the first step, the Constitution vests the power to legislate exclusively in Congress. U.S. CONST. art. I, § 1.

### B. Changes to a Duly Enacted Statute Require Presentment.

For reasons good and bad, partisan and not, federal agencies often prefer to change

[7] Amici primarily focus on the Presentment Clause infirmity. This focus is not intended to minimize the additional, genuine constitutional concerns Plaintiffs raise in their Motion for a Summary Judgment.

how an existing law is implemented. Fortunately, they can often do so lawfully, as the law affords them certain devices they can use to do so. For instance, federal agencies can issue sub regulatory, or interpretive, guidance. They can issue nonbinding policy statements, or press releases. They can even adjust their agency's staffing levels or, if the law permits them, reallocate agency resources.

But what federal agencies cannot do is void an existing law by themselves. Because of the Presentment Clause and Article I, § 1 of the Constitution, that fundamental privilege is vested in Congress and, in certain, exceptional situations, the courts. This is exactly what the Supreme Court in *Clinton* warned against when it invalidated the Line Item Veto Act based upon presentment concerns. *Clinton*, 524 U.S. at 448-49.

C. The Big Bend Waivers Violate the Presentment Clause.

The WSRA and the legislated addition of the Texas Rio Grande segment followed the presentment obligations – the basic, constitutionally required steps to become federal law. Because those statutes continue to exist, it is axiomatic that they can be changed only through presentment, not by the Secretary of DHS.

Congress passed the WSRA in 1968. 16 U.S.C. § 1271. Like the Constitution, this act was wise, visionary, and measured: it intended to balance national policy on dam construction and river development with a complementary policy of selective preservation and protection. *Id.* In enacting it, Congress recognized that, at a time of tremendous federal infrastructure investment and development in the country's waterways, it should not enact unrealistically broad and inefficient restrictions, but instead should legislate very selective, place-specific protections.

Those selective and place-specific guidelines established a system of rivers that "possess outstandingly remarkable scenic, recreational, geologic, fish and wildlife, historic, cultural, or other similar values" designed to "preserve[]" designated rivers "in free-flowing condition." *Id.*

Also, Congress looked demonstrably into the future and indeed, into eternity, declaring that the rivers' "immediate environments shall be protected for the benefit and enjoyment of present and future generations." *Id.*

Against that careful, selective, place-specific mandate, in 1978, Congress designated the Rio Grande Texas or Big Bend National Park segment as a "wild and scenic river." Pub. L. No. 95-625, § 702, 92 Stat. 3467 (1978). In fact, that segment's designation bore specific mile markers: "the segment on the United States side of the river from river mile 842.3 above Mariscal Canyon downstream to river mile 651.1 at the Terrell-Val Verde County line." Pub. L. No. 95-625 § 702; 16 U.S.C. § 1274(a)(17). This geographically-specific designation meant Congress found this river segment to meet all the selective criteria required by the WSRA, by exhibiting "outstandingly remarkable scenic, recreational, geologic, fish and wildlife, historic, and cultural" features. Most importantly, Congress' designation afforded it all protections specified in the WSRA.

Ignoring those protections and the requirements of presentment, the Big Bend Waivers completely encompass the area designated in 16 U.S.C. § 1274(a)(17). If allowed to remain effective, those waivers eviscerate Paragraph 17 of § 1274(a), effectively re-writing it to say that, because of border infrastructure desires, the Rio Grande segment is no longer designated for protection under Congress' criteria.

There is a simple and important problem with this approach: Congress has not authorized it. Congress alone made - and makes - that legislative determination; a cabinet secretary does not and cannot. Moreover, Congress has never removed that designation from the Rio Grande segment. And as the concurrence in *Clinton* explains, a member of the executive branch cannot void any law, in whole or in part, unless Congress passes a law that amends or repeals that law and presents

it to the President. *Clinton,* 524 U.S. at 449. Based upon that constitutional infirmity alone, an injunction should issue.

## CONCLUSION

For these reasons, National Parks Conservation Association and the Sierra Club and its Lone Star Chapter (Amici) urge this Court to grant Plaintiffs' Motion for a Preliminary Injunction, and to halt any further construction activities or deployment of physical barriers and roads within the Big Bend National Park and surrounding region while it considers the merits of DHS' unconstitutional Big Bend Waivers.

Dated: August 27, 2026

Respectfully Submitted,

EARTHJUSTICE

By: /s/ Meghan L. Riley
**Meghan L. Riley, Lead Attorney**
Texas Bar No. 24049373
Email: mriley@earthjustice.org
Tel: (512) 720-5354
Earthjustice, Gulf Regional Office
845 Texas Avenue, Suite 200
Houston, Texas 77002

*Counsel for Amici Curiae National Parks Conservation Association and Sierra Club and its Lonestar Chapter*

**CERTIFICATE OF SERVICE**

I certify that on August 27, 2026, a copy of the foregoing document was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on all attorneys in this case.