**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| People of the La Junta For Preservation; Far Flung Outdoor Center; Andrew Austin; and, Christina Hernandez, | § | |
| *Plaintiffs*, | § | |
| v. | § | |
| Department of Homeland Security; Markwayne Mullin, in his official capacity as the Secretary of the United States Department of Homeland Security; Customs and Border Protection; Rodney S. Scott, in his official capacity as the Commissioner of United States Customs and Border Protection; Lloyd M. Easterling, in his official capacity as the Chief Patrol Agent of the United States Border Patrol's Big Bend Sector; Department of the Interior; Doug Burgum, in his official capacity as the Secretary of the Interior; and, National Park Service, | § | CIVIL ACTION NO. 26-5245 |
| *Defendants.* | § | |

---

**PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

---

Plaintiffs respectfully move pursuant to Federal Rule of Civil Procedure 65 for a temporary restraining order preserving the existing physical condition of narrowly defined lands threatened by the challenged Big Bend border-wall project until the Court can conduct expedited proceedings on Plaintiffs' request for preliminary injunctive relief.

## I. INTRODUCTION

Defendants can resume construction if they ultimately prevail. Plaintiffs cannot restore an excavated burial or archaeological site if construction begins first. The Department of Homeland Security has committed more than $1.2 billion to the "Big Bend 2 Wall Project." The federal award is already identified as "In Progress" and construction has begun in some of the most sacred and popular portions of Big Bend National Park. The Secretary of Homeland Security has separately declared an "acute and immediate need" for construction in the Big Bend Sector and announced that DHS "will take immediate action." The work contemplated by the Secretary includes access routes, staging areas, earthwork, excavation, fill, site preparation, roads, physical barriers, lighting, cameras, and sensors.

Congress gave DHS broad authority to construct border infrastructure and extraordinary authority to waive legal requirements that the Secretary determines impede expeditious construction. The Secretary exercised that waiver authority here. Plaintiffs do **not** challenge that waiver determination. They do **not** ask this Court to reinstate any statute the Secretary expressly waived. They do **not** challenge ordinary Border Patrol operations, apprehensions, patrols, rescue operations, or enforcement of the international boundary. But the Secretary did not waive every federal law.

The June 9 determination expressly waives the National Park Service Organic Act and four statutes directed specifically at Big Bend National Park: 16 U.S.C. §§ 156, 157, 157c, and 157d. It does not waive 16 U.S.C. § 158, which provides that the "administration, protection, and development" of Big Bend National Park shall occur under the direction of the Secretary of the Interior through the National Park Service. Section 158 remains federal law. Nor did the

Secretary waive the Religious Freedom Restoration Act ("RFRA"). RFRA prohibits the Federal Government from substantially burdening a person's exercise of religion unless the Government demonstrates that application of the burden to that person furthers a compelling governmental interest through the least restrictive means. 42 U.S.C. § 2000bb-1. Those un-waived statutes protect concrete interests threatened here.

Plaintiff Christina Hernandez presently practices a Native religion tied to the Rio Grande, ancestral burial places, natural materials, access routes, and particular conditions of the surrounding landscape. Most importantly for emergency relief, she has identified a specifically anticipated reburial of ancestral remains at a traditional burial site located within the proposed border-wall corridor. The ceremony requires physical access to the burial site and surrounding land.

Plaintiff People of La Junta for Preservation ("PLJP") preserves Indigenous archaeological, cultural, ancestral, and religious places along the Rio Grande. Its evidence explains that excavation, grading, trenching, and road construction can permanently destroy archaeological sites before their existence or significance is even known. The relevant emergency is therefore not completion of a border wall. It is the first irreversible disturbance of the wrong ground.

Plaintiffs accordingly seek a short and narrow preservation order directed to two categories of land: (1) Big Bend National Park, where Congress's un-waived § 158 specifically allocates administration, protection, and development to Interior and the National Park Service; and (2) specifically identified religious locations used by Hernandez that would be affected by construction, including the traditional burial site identified in her declaration.

The requested order leaves ordinary border enforcement entirely intact.

## II. FACTUAL BACKGROUND

### A. Congress specifically assigned the administration, protection, and development of Big Bend National Park to Interior and the National Park Service.

Congress established Big Bend National Park for the benefit and enjoyment of the people. 16 U.S.C. § 156. Congress separately provided, “[t]he administration, protection, and development of the Big Bend National Park shall be exercised under the direction of the Secretary of the Interior by the National Park Service.” 16 U.S.C. § 158. Section 158 is part of the Big Bend-specific statutory scheme and remains in effect. The neighboring provisions include §§ 156 and 157, which govern establishment and acquisition of park lands.

### B. DHS has funded and commenced the Big Bend 2 project.

DHS awarded Delivery Order PIID 70B01C26F00000169 to Fisher Sand & Gravel Co. The official USAspending record identifies the project as the **“BORDER WALL CONSTRUCTION - VERTICAL BARRIER, BIG BEND TEXAS SECTOR (BBT-2).”** The award reflects:

- $1,223,124,000 currently obligated;
- a potential award amount of $1,371,800,000;
- $38,450,000 already outlaid; and
- an award status of “In Progress.”

The project therefore is not awaiting some future congressional appropriation or tentative contracting decision.

**C. DHS expressly characterizes the project as immediate.**

The June 9 determination states that the Big Bend Sector is an area of high illegal entry and that DHS "will take immediate action" to construct additional barriers and roads. The Secretary further found an "acute and immediate need" to construct barriers and roads in the identified project area. The anticipated work includes accessing construction areas, creation and use of staging areas, earthwork, excavation, fill, site preparation, physical barriers, roads, supporting elements, drainage, erosion controls, lighting, cameras, and sensors.

**D. The Secretary exercised broad waiver authority but left § 158 and RFRA untouched.**

The June 9 determination waives numerous environmental, historic-preservation, archaeological, public-land, and National Park Service statutes. Among other provisions, the Secretary expressly waived:

- the National Environmental Policy Act;
- the Endangered Species Act;
- the Clean Water Act;
- the National Historic Preservation Act;
- the Archaeological Resources Protection Act;
- the Native American Graves Protection and Repatriation Act;
- the Administrative Procedure Act;
- the Wilderness Act;

- the National Park Service Organic Act and General Authorities Act; and
- 16 U.S.C. §§ 156, 157, 157c, and 157d.

The determination does not identify § 158. It likewise does not identify RFRA.

**E. Hernandez presently engages in religious practices tied to specific places in the Rio Grande landscape.**

Hernandez is an enrolled member of the Lipan Apache Tribe. She explains that her relationship with the Rio Grande and the surrounding Big Bend and La Junta landscape is religious and part of her continuing religious practice. She prays beside the Rio Grande, gathers River water for religious and ceremonial purposes, gathers plants and other natural materials, visits ancestral resting places, travels to places of religious significance, and teaches younger generations about religious responsibilities toward the River, ancestors, and surrounding land.

Her religious exercise is place-specific. Hernandez explains that walls, restricted zones, construction areas, roads, surveillance infrastructure, excavation, and lighting can interfere with prayer, gathering, burial-related practices, religious travel, and access to sacred locations. Some of those locations are not publicly identified because disclosure could expose burial sites, ceremonial places, sacred objects, caves, and imagery to looting or desecration.

Hernandez has specifically identified one anticipated religious exercise of immediate concern: the reburial of ancestral remains at a traditional burial site within the proposed border-wall corridor. The ceremony requires physical access to the burial site and surrounding land.

She can provide more precise information concerning sensitive religious locations to the Court under appropriate protections if necessary.

**F. PLJP protects archaeological, ancestral, and religious places threatened by ground disturbance.**

PLJP is a Texas nonprofit organization whose purposes include land conservation, stewardship of sacred Indigenous sites, and advancement of Indigenous cultural knowledge and religious practices. PLJP has acquired interests in land along the Rio Grande. The record identifies a surveyed tract associated with PLJP that extends to or immediately adjoins the east bank of the River and identifies the El Polvo Archaeological Site and San José Church Archaeological Site in or immediately adjoining the surveyed area.

PLJP explains that excavation, grading, trenching, road construction, and heavy equipment can destroy archaeological resources before they are identified. Even where an artifact physically survives, removal from its original location can permanently destroy information concerning its relationship to surrounding objects, features, and landscape. PLJP and its associated persons use Rio Grande lands for preservation, cultural education, religious practice, gathering, teaching, and relationships with ancestral places.

**G. Far Flung regularly uses and depends upon the affected landscape.**

Far Flung Outdoor Center has operated in the Big Bend region for approximately fifty years and provides lodging, river trips, guided recreation, and related outdoor services. Its operations depend upon the Rio Grande, Big Bend National Park, desert and canyon landscapes, wildlife, dark skies, and relative remoteness. Its owner regularly uses the Rio Grande, Big Bend

National Park, and surrounding areas for guiding, scouting, and business operations. Far Flung thus reinforces the concrete and ongoing use of the areas threatened by the project, although Plaintiffs principally rely on Hernandez's religious injury and PLJP's archaeological and preservation injuries for emergency relief.

## III. PLAINTIFFS HAVE STANDING TO SEEK THE LIMITED RELIEF REQUESTED

Hernandez faces a personal and concrete injury to present religious exercise. She presently uses places and resources threatened by the project, and she intends to participate in a specifically anticipated religious reburial at a traditional burial site located within the proposed corridor. Preventing excavation, material alteration, or loss of access to that location redresses that injury. PLJP has interests in Rio Grande property and engages in preservation, cultural, educational, and religious activities involving affected lands. Its members and associated persons presently use or intend to use areas within or immediately adjacent to the project corridor. Far Flung regularly uses Big Bend National Park and the Rio Grande in ongoing business operations. The alleged injuries are traceable to the challenged physical construction and would be redressed by an order preserving present physical conditions pending judicial review.

## IV. THIS MOTION DOES NOT ASK THE COURT TO INVALIDATE THE SECRETARY'S WAIVER

Congress has given the Secretary of Homeland Security exceptionally broad authority to waive legal requirements the Secretary determines necessary to ensure expeditious border-barrier construction. The REAL ID Act expanded § 102(c) to permit waiver of "all legal requirements"

the Secretary deems necessary and imposed special limits on judicial review of actions or decisions taken under that waiver authority.

Plaintiffs do not ask this Court to determine that the June 9 waiver was invalid. They do not ask the Court to restore NEPA, NHPA, the Organic Act, NAGPRA, ARPA, or any other statute the Secretary actually waived. Instead, Plaintiffs accept the June 9 determination according to its published terms. The Secretary chose to identify dozens of laws. Among them were several statutes addressed specifically to Big Bend National Park. But § 158 was not included. RFRA was not included.

The claims supporting this motion therefore concern legal obligations that the Secretary did not purport to eliminate. Plaintiffs' § 158 theory does not ask whether the Secretary properly exercised waiver authority. It asks what effect must be given to a Big Bend-specific statute that remains operative after that exercise.

Plaintiffs' RFRA claim is even more direct. RFRA itself creates a substantive restriction on federal governmental action and authorizes "appropriate relief against a government" for violations. 42 U.S.C. § 2000bb-1(c).

## V. STANDARD FOR TEMPORARY RESTRAINING RELIEF

A party seeking preliminary injunctive relief must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm absent relief; (3) that the threatened injury outweighs the harm resulting from the injunction; and (4) that the injunction serves the public interest. The Fifth Circuit applies those factors to preliminary injunctive relief. Plaintiffs satisfy each requirement.

## VI. PLAINTIFFS ARE SUBSTANTIALLY LIKELY TO SUCCEED ON THE MERITS

### A. RFRA prohibits Defendants from substantially burdening Hernandez's identified religious exercise unless Defendants satisfy strict scrutiny.

RFRA provides, "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," unless the Government demonstrates that application of that burden to the particular person: 1) furthers a compelling governmental interest; and 2), is the least restrictive means of furthering that interest. 42 U.S.C. § 2000bb-1(a)-(b). RFRA applies to the Federal Government and permits appropriate relief against the Government.

#### 1. Hernandez engages in sincere, present religious exercise.

The present record establishes religious exercise without requiring speculation about future beliefs or hypothetical use. Hernandez presently prays beside the Rio Grande, gathers River water for ceremonial use, gathers natural materials, visits ancestral resting places, travels to religiously significant locations, and teaches those practices to younger generations. Her religious relationship is not interchangeable among locations. Her declaration explains that particular burial places, caves, springs, materials, access routes, and natural conditions possess religious significance that cannot simply be relocated elsewhere.

#### 2. The challenged construction threatens to substantially burden that exercise.

Most importantly, Hernandez intends to participate in the reburial of ancestral remains at a traditional burial site within the proposed border-wall corridor. The ceremony requires physical

access to the burial site and surrounding land. Excavating that site, materially altering the surrounding land, physically separating Hernandez from it, or closing it for construction would do more than make the ceremony inconvenient. It could prevent the religious exercise from occurring at the place where Hernandez's beliefs require it to occur.

The same is true of other identified practices. A wall may leave a religious location physically intact while making it inaccessible. Construction lighting may alter conditions necessary for nighttime religious practice. Roads, restricted zones, excavation, and surveillance infrastructure may interfere with religious travel, gathering, prayer, and burial obligations. That is sufficient at this stage to demonstrate a substantial likelihood that the challenged construction will substantially burden Hernandez's religious exercise.

**3. Defendants bear RFRA's strict-scrutiny burden.**

Plaintiffs do not dispute that border security is an important governmental interest and, for purposes of this motion, the Court may assume that the interest is compelling. But RFRA requires more. The statute requires the Government to demonstrate that application of the substantial burden to Hernandez herself is the least restrictive means of furthering that interest. The June 9 determination does not make that individualized showing.

It relies upon apprehension and narcotics-seizure figures for the Big Bend Sector as a whole and concludes from those sector-wide figures that additional barriers and roads are necessary. Nothing in the present record shows that Defendants considered Hernandez's burial site, her religious access to the site, or less restrictive ways of accomplishing the Government's security objectives at that location. The present record likewise does not establish that

accommodations such as rerouting, buffers, continued religious access, construction sequencing, alternative infrastructure, or other site-specific measures would fail to accomplish the Government's interest. RFRA requires the Government—not Hernandez—to carry that burden. On the present record, it has not done so.

**B. Congress's un-waived, Big Bend-specific allocation of authority governs development within Big Bend National Park.**

Plaintiffs do not contend that DHS lacks general statutory authority to construct barriers near the international border. Congress supplied such authority in IIRIRA. But Congress also enacted legislation addressed specifically to this particular national park.

Section 158 provides that "[t]he administration, protection, and development of the Big Bend National Park shall be exercised under the direction of the Secretary of the Interior by the National Park Service." That direction is specific as to both the place—Big Bend National Park—and the responsible federal actors—Interior and NPS. The Court should reconcile that Big Bend-specific command with DHS's general border-construction authority rather than treat § 158 as silently erased. Congress gave the Secretary a mechanism to remove legal obstacles that the Secretary determines impede border construction: § 102(c). The Secretary exercised that authority extensively here.

He expressly waived the National Park Service Organic Act. He then specifically waived four provisions from the Big Bend statutory scheme: 16 U.S.C. §§ 156, 157, 157c, and 157d. But he did not waive § 158. The omission is significant not because the Court should second-guess what the Secretary *could* have waived, but because the Court must give effect to what the

Secretary actually did. Giving effect to § 158 therefore does not narrow the June 9 waiver by implication. It enforces the boundary of the waiver the Secretary published. Within Big Bend National Park, Plaintiffs are substantially likely to establish that Defendants may not simply treat Congress's specific and un-waived allocation of authority over the Park's administration, protection, and development as nonexistent.

## VII. PLAINTIFFS FACE AN IMMINENT THREAT OF IRREPARABLE HARM

The evidence of imminence should be considered cumulatively. First, DHS has already entered an award exceeding $1.2 billion, and the project is marked "In Progress." Second, the Secretary has declared an "acute and immediate need" for construction and announced that DHS "will take immediate action." Third, the anticipated work begins with the kinds of physical activity that can itself cause permanent injury: access routes, staging, earthwork, excavation, fill, and site preparation. Fourth, the Secretary has waived many of the historic-preservation and archaeological-review statutes that would ordinarily operate before or during construction. The emergency therefore arises before completion of any wall. It arises when heavy equipment first disturbs land that cannot later be restored.

### A. Archaeological context cannot be reconstructed after destruction.

PLJP explains that unidentified archaeological resources may be destroyed through excavation or grading before their existence is known. Even where artifacts themselves survive, their original location and relationship to surrounding features can be permanently lost. A later judgment cannot replace that context.

### B. Religious exercise lost at the required time and place cannot be recreated with money.

Hernandez's anticipated reburial requires access to a traditional burial site and surrounding land. If excavation disturbs the site or construction prevents access when the ceremony is to occur, no damages award can permit her to perform the same obligation at the time and place required by her religion. Her declaration expressly explains that excavation, access restrictions, and artificial lighting can cause injuries that cannot later be repaired.

**C. Far Flung's injuries reinforce the need to preserve existing conditions.**

Far Flung regularly relies upon the Rio Grande and Big Bend National Park for commercial river and outdoor operations. Its owner explains that material alteration of the landscape cannot later be restored by Far Flung and that lost goodwill and customer relationships cannot necessarily be recreated through monetary relief. Although Plaintiffs principally rely upon the physical, archaeological, and religious injuries described above, Far Flung's evidence further demonstrates the immediacy and practical consequences of permanent alteration.

## VIII. THE BALANCE OF EQUITIES FAVORS TEMPORARY PRESERVATION

The equities are strongly asymmetric. If the TRO is denied and Defendants excavate an ancestral burial site or archaeological location, the Court cannot later restore the original land. If access to a religious site is prevented at the time a religious obligation arises, the Court cannot later recreate that opportunity. If Defendants prevail after temporary relief, however, construction can resume. And, the requested relief is narrow.

Plaintiffs do not ask the Court to enjoin:

- ordinary Border Patrol patrols;

- apprehensions or detention;
- rescue operations;
- emergency responses;
- ordinary law-enforcement activity;
- use of existing roads;
- use of existing facilities;
- existing cameras or sensors;
- existing communications equipment; or
- maintenance of existing infrastructure.

The order would preserve only the existing physical condition of specified lands long enough for the Court to determine whether construction there may lawfully proceed.

**IX. THE PUBLIC INTEREST FAVORS A NARROW STATUS-QUO ORDER**

Border security serves an important public interest. So does compliance with federal law. The requested order accommodates both. It permits all ordinary border-enforcement activities to continue while preventing irreversible new physical construction at narrowly defined locations until the Court determines what two un-waived federal statutes require. RFRA itself reflects Congress's judgment that even compelling federal interests must be pursued through the least restrictive means when the Government substantially burdens religious exercise. Likewise, giving effect to § 158 respects Congress's specific allocation of authority over Big Bend National Park rather than frustrating DHS's broader border mission. The public interest does not require the Court to choose between border enforcement and meaningful judicial review where a short preservation order permits both.

**X. SECURITY**

Plaintiffs respectfully request that the Court waive security or require only nominal security under Rule 65(c). The requested order preserves existing conditions, does not prevent ordinary border-enforcement operations, and protects injuries for which monetary relief would be inadequate.

**XI. REQUESTED TEMPORARY RESTRAINING ORDER**

Plaintiffs respectfully request that the Court temporarily restrain Defendants, their officers, agents, servants, employees, contractors, and all persons in active concert or participation with them who receive actual notice of the Court's Order from:

**A. Big Bend National Park**

Commencing, authorizing, directing, or continuing new construction associated with the Big Bend 2 Wall Project within Big Bend National Park that materially alters the existing physical condition of the land, including:

1. vegetation clearing or removal;
2. grading, excavation, trenching, drilling, blasting, or earthmoving;
3. construction or widening of roads or access routes;
4. creation or expansion of staging areas, laydown areas, material-storage areas, or similar construction sites;
5. placement of fill, concrete, foundations, bollards, fencing, gates, or other physical barriers;

6. installation of new permanent or construction lighting;
7. installation of new towers, cameras, sensors, communications equipment, utilities, electrical infrastructure, or similar permanent project infrastructure; and
8. other material ground disturbance or permanent alteration associated with the Big Bend 2 Wall Project.

**B. Hernandez's Specifically Identified Religious Locations**

Excavating, grading, constructing upon, materially altering, or materially restricting Plaintiff Christina Hernandez's access to the traditional burial site identified in her declaration, and any other specifically identified religious location used by Hernandez that Plaintiffs establish to the Court would be affected by the challenged construction, pending further order of the Court. Plaintiffs are prepared to identify culturally or religiously sensitive locations to the Court and Defendants through an appropriate protective procedure rather than publicly disclosing those locations.

**C. Activities Not Restrained**

Nothing in the temporary restraining order should prohibit:

1. ordinary Border Patrol patrols or law-enforcement operations;
2. apprehension or detention of persons;
3. rescue, medical, or emergency operations;
4. actions immediately necessary to protect human life or safety;
5. ordinary use of existing roads and facilities in their present configuration;

6. continued use of existing cameras, sensors, communications facilities, or other existing equipment;
7. routine maintenance that does not materially expand the physical footprint of the challenged project; or
8. securing an existing worksite without new ground disturbance or expansion of the construction footprint.

**XII. REQUEST FOR EXPEDITED PROCEEDINGS**

Plaintiffs further request that the Court set an expedited hearing on preliminary injunctive relief and direct Defendants to provide, sufficiently in advance of that hearing, available information identifying:

1. the locations at which Big Bend 2 construction or ground disturbance has begun or is scheduled to begin;
2. the anticipated construction schedule within Big Bend National Park;
3. the location of staging areas, roads, barriers, lighting, and associated infrastructure within the Park; and
4. information sufficient to permit the parties and Court to determine whether construction will affect the religious locations identified by Hernandez.

Such expedited information would permit the Court to determine whether continued or modified relief is warranted without requiring a broader temporary order than presently necessary.

**XIII. PRAYER**

Plaintiffs respectfully request that the Court:

1. enter the narrowly tailored temporary restraining order described above;
2. waive security or require only nominal security;
3. set an expedited preliminary-injunction hearing;
4. order the limited expedited disclosure necessary to identify impending construction locations; and
5. grant such other and further relief as the Court deems appropriate.

**DATE**: August 16, 2026

Respectfully submitted,

*/s/ Roland Gutierrez*
Roland Gutierrez
The Law Office of Roland Gutierrez
SBN #: 24007291
104 Babcock Ste. 107
San Antonio, Texas 78201
(210) 225-7114

Martin Golando
State Bar No. 24059153
The Law Office of
Martin Golando, PLLC
2326 W. Magnolia
San Antonio, Texas 78201
Martin.Golando@gmail.com
210.471.1185

Dick DeGuerin
DeGuerin and Dickson 1018 Preston
Houston, Texas, 77002
SBN #: 05638000
713-223-5959

ATTORNEYS FOR PLAINTIFFS

**COUNSEL'S CERTIFICATION REGARDING NOTICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 65(b)(1)(B)**

Pursuant to Federal Rule of Civil Procedure 65(b)(1)(B), undersigned counsel certifies as follows:

On August 16, 2026, at approximately 3:15 PM on August 16, 2026, undersigned counsel sent written notice by electronic mail to Mary Kruger and Christine Martinez, counsel for Defendants, advising counsel that Plaintiffs have filed this action and are seeking immediate temporary injunctive relief.

The email provided counsel with copies of Plaintiffs' Complaint, Motion for Temporary Restraining Order and Preliminary Injunction, supporting declarations and exhibits, and proposed order. The email further advised counsel that Plaintiffs are requesting prompt consideration of their request for temporary injunctive relief and requested confirmation of receipt.

Plaintiffs have therefore undertaken reasonable efforts to provide Defendants with actual notice of the request for temporary injunctive relief. To the extent the Court determines that additional notice or an opportunity to respond is required before acting upon Plaintiffs' request, Plaintiffs respectfully request that the Court establish an expedited schedule appropriate to the imminent injury described in Plaintiffs' Motion and supporting declarations.

I certify that the foregoing accurately describes the efforts undertaken by undersigned counsel to provide notice of Plaintiffs' request for temporary injunctive relief.

Respectfully submitted,

*/s/Martin Golando*

Martin Golando