# EXHIBIT 1

Graves Declaration

CENTER for BIOLOGICAL DIVERSITY Because life is good.

August 7, 2026

***Sent via email***

Alex Yun
Trial Attorney
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005

**RE: Friends of Ruidosa Church v. Mullin (3:26-cv-1099)**

Dear Alex,

After conferring via teleconference and email in June, the parties agreed to conduct limited fact discovery, with Defendants responding to Plaintiffs' discovery requests within 20 days to align with a mutually agreed-upon summary judgment briefing schedule. On June 23, 2026, Plaintiff Center for Biological Diversity (the "Center") served its First Set of Interrogatories ("Interrogatories") and First Set of Requests for Production of Documents ("Requests for Production" or "RFPs") on Secretary Markwayne Mullin, U.S. Department of Homeland Security, and U.S. Customs and Border Protection (collectively "Defendants"). On July 14, 2026, Defendants responded to the Center's Interrogatories and RFPs, and on July 15, 2026, Defendants produced a single page in response to RFP No. 3.

A review of Defendants' responses to the Center's Interrogatories and RFPs and associated single page production reveals significant deficiencies, for reasons set forth below. Plaintiffs are substantially prejudiced by Defendants' withholdings. To avoid further prejudice to Plaintiffs, each deficiency must be adequately addressed by Defendants no later than Friday, August 21, 2026. If Defendants fail to rectify these deficiencies and if this case is not resolved on the parties' cross summary judgment motions, Plaintiffs intend to file a motion to compel. Plaintiffs' counsel is available to meet and confer to further discuss the outstanding discovery.

## I. <u>Deficiencies in Defendants' Response to the Center's Interrogatories</u>

### Interrogatory No. 1

Interrogatory No. 1 asked Defendants to "[i]dentify, by calendar year or fiscal year, the total number of apprehensions for each CBP station and substation along the U.S.-Mexico Border. If total annual figures for a calendar or fiscal year have not yet been compiled, please provide those figures by month."

Defendants' response to this Interrogatory is deficient. First, the information sought is relevant and proportional to the needs of the case because it directly bears on the factual and legal basis for the challenged waiver determinations. In issuing the Big Bend waivers, Defendant Secretary determined that approximately one-third of the entire U.S.-Mexico border is an area of

"high illegal entry."[1] Defendants' understanding of what qualifies as an area of "high illegal entry" is directly relevant to Plaintiffs' Major Questions Doctrine, Nondelegation Doctrine, and Take Care Clause claims. The Interrogatory's geographic scope is necessary to evaluate the factual basis for Defendants' determination because the concept of "high" illegal entry is inherently comparative to other areas of illegal entry. Apprehension data from stations and substations across the U.S.-Mexico border is therefore essential to evaluate what, if any, objective and discernible standard Defendants applied in making their determination. Even if "high illegal entry" is not interpreted as a comparative concept, the requested data remains relevant because it bears directly on the factual and legal basis for the Secretary's determination that the approximately 600 miles of border covered by waivers issued in the Big Bend region qualify as areas of "high illegal entry." In either case, the requested data goes directly to the factual predicates underlying Defendants' exercise of IIRIRA Section 102 Waiver authority and the legality of that exercise, and is therefore highly relevant to the merits of Plaintiffs' Major Questions Doctrine, Nondelegation Doctrine, and Take Care Clause claims.

Second, Defendants' assertion of the law enforcement privilege is unsupported. The Fifth Circuit recognizes a narrow and qualified law enforcement privilege that only protects government information relating to ongoing criminal investigations where disclosure would reveal investigative techniques, confidential sources, witness identities, undercover personnel, or other sensitive investigative information. *In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 568−70 (5th Cir. 2006). The privilege is not absolute and may only be invoked upon a particularized showing that disclosure would harm legitimate law enforcement interests specifically related to ongoing investigations. *Id.* at 570. Here, Interrogatory No. 1 does not seek investigative files, confidential sources, law enforcement techniques, or other information tied to any ongoing criminal investigation. Instead, it seeks only aggregate historical apprehension statistics. Defendants' conclusory assertion that station- and substation-level apprehension data "could be exploited by potential illegal entrants" and reveal "potential weak points," is insufficient to satisfy the Fifth Circuit's requirement of a particularized showing. Defendants do not explain how disclosure of historical apprehension figures would interfere with any ongoing criminal investigation, reveal protected law enforcement techniques, or otherwise implicate the interests the privilege is designed to protect. Accordingly, Defendants have failed to establish that the requested information falls within the scope of the law enforcement privilege.

Moreover, even if Defendants could articulate a cognizable law enforcement concern, that concern would not justify withholding the information outright. Any legitimate confidentiality interests could be adequately addressed through a confidentiality and protective order or other appropriate safeguards, rather than by refusing to provide the responsive data.

Third, the publicly available documents listed in Defendants' response fail to provide the information requested in Interrogatory No. 1. Defendants direct Plaintiffs to CBP's online webpage "Nationwide Encounters", but that resource does not provide station and substation apprehension data. Likewise, Defendants direct Plaintiffs to DHS's "Border Security Status Report: Fourth Quarter Fiscal Year 2023", which also does not provide station and substation apprehension data. Nor does the Report include any data beyond Fiscal Year 2023, which is of limited utility to understanding the basis for Waiver determinations issued in 2026.

[1] 91 Fed. Reg. 7297–98 (Feb. 17, 2026), *as amended* by 91 Fed. Reg. 40550–51 (July 2, 2026); 91 Fed. Reg. 27969–70 (May 15, 2026), *as amended* by 91 Fed. Reg. 34831–33 (June 9, 2026); 91 Fed. Reg. 46939 (July 27, 2026).

To assist Defendants in meeting their disclosure obligations and to advance discovery as efficiently as possible, Plaintiffs are willing to narrow the scope of the information sought in Interrogatory No. 1. Plaintiffs will accept station and substation-level data in the Big Bend and Del Rio Sectors. For the remaining seven CBP Sectors along the U.S.-Mexico border, Plaintiffs will accept station-level data.

**Interrogatory No. 2**

Interrogatory No. 2 asked Defendants to "[i]dentify, by calendar year or fiscal year, the total number of individuals who self-surrendered to law enforcement for each CBP station and substation. If total annual figures for a calendar or fiscal year have not yet been compiled, please provide those figures by month."

As a preliminary matter, Defendants object to the Center's definition of the term "self-surrendered" as vague and indistinguishable from the Center's definition of the term "apprehensions." Individuals who "self-surrendered" are a subset of individuals who were "apprehended." For the purposes of this Interrogatory, the term refers to individuals who voluntarily present themselves to law enforcement or otherwise affirmatively make himself or herself known to law enforcement shortly after crossing the border for the purposes of seeking asylum. By comparison, other apprehensions are comprised of individuals apprehended through enforcement actions initiated by law enforcement personnel. Plaintiffs are willing to work with Defendants and provide further clarification on this point, if needed.

Defendants' response to this Interrogatory is deficient. First, the information sought is relevant and proportional to the needs of the case for the same reasons set forth above regarding Interrogatory No. 1. In issuing the challenged waivers, Defendant Secretary determined that the Big Bend Sector constitutes an area of "high illegal entry," and noted that Border Patrol apprehended "over 89,000 illegal aliens attempting to enter the United States between border crossings in the Big Bend Sector." Evaluating this determination requires understanding not only the volume of border encounters in the Big Bend Sector, but also the extent to which those encounters involved individuals who voluntarily presented themselves to law enforcement for the purposes of seeking asylum. Information regarding the number of individuals who voluntarily present themselves to Border Patrol is directly relevant to the factual basis for the Big Bend Sector's designation as an area of "high illegal entry." The requested information therefore goes directly to the factual predicates underlying Defendants' exercise of IIRIRA Section 102 Waiver authority and the legality of that exercise, and is therefore highly relevant to Plaintiffs' Major Questions Doctrine, Nondelegation Doctrine, and Take Care Clause claims.

Second, Defendants' reliance on the law enforcement privilege is unsupported by Fifth Circuit case law. *See In re U.S. Dep't of Homeland Sec.*, 459 F.3d at 568–70. As with Interrogatory No. 1, Plaintiffs seek aggregate statistics. Here, the statistics pertain to the number of individuals voluntarily presenting themselves to law enforcement and seeking asylum after illegally crossing the border. The requested information does not implicate individual investigative files, confidential sources, law enforcement techniques, or other information tied to any ongoing criminal investigation. The conclusory assertion that station- and substation-level data "could be exploited by potential illegal entrants" and reveal "potential weak points," does not establish how disclosure of historical self-surrender data would interfere with any ongoing criminal investigation or otherwise implicate the interests the privilege is intended to protect. *See id.*

Moreover, as explained above, even if Defendants could articulate a cognizable law enforcement concern, that concern would not justify withholding the information outright. Any legitimate confidentiality interests could be adequately addressed through a confidentiality and protective order or other appropriate safeguards, rather than by refusing to provide the responsive data.

Third, Defendants' statement that they do not maintain "'self-surrender' numbers as an official statistic" is unresponsive to the substance of Interrogatory No. 2. The Interrogatory seeks information regarding encounters involving individuals who voluntarily presented themselves to law enforcement for the purposes of seeking asylum. If Defendants track encounter data using different terminology or processing categories, Defendants should identify those categories and provide responsive information.

To assist Defendants in meeting their disclosure obligations and to advance discovery as efficiently as possible, Plaintiffs are willing to narrow the scope of the information sought in Interrogatory No. 2. Plaintiffs will accept station and substation-level data in the Big Bend and Del Rio Sectors. For the remaining seven CBP Sectors along the U.S.-Mexico border, Plaintiffs will accept station-level data.

**Interrogatory No. 3**

Interrogatory No. 3 asked Defendants to "[i]dentify, by calendar year or fiscal year, the total number of individuals who are believed to have illegally crossed the U.S.-Mexico border and avoided apprehension for each CBP station and substation. If total annual figures for a calendar or fiscal year have not yet been compiled, please provide those figures by month."

Defendants' response to this Interrogatory is deficient. First, the information sought is relevant and proportional to the needs of the case because it directly bears on the factual and legal basis for the challenged waiver determinations. In issuing the challenged waivers at the heart of this case, Defendants determined that the Big Bend Sector is an area of "high illegal entry." Defendants' understanding of what qualifies as an area of "high illegal entry" is directly relevant to Plaintiffs' Major Questions Doctrine, Nondelegation Doctrine, and Take Care Clause claims. Distinguishing between individuals who are apprehended and those who evade apprehension is crucial for understanding the total number of individuals known or believed to have illegally crossed the U.S.-Mexico border.

To evaluate the factual basis for Defendants' determination, the geographic scope of the Interrogatory is necessary because the concept of "high" illegal entry is inherently comparative to other areas of illegal entry. Thus, data from stations and substations across the U.S.-Mexico border is necessary to assess whether Defendants applied any objective standard in determining that the Big Bend Sector constitutes an area of "high illegal entry." Even if "high illegal entry" is not interpreted as a comparative concept, the requested data remains relevant because it bears directly on the factual and legal basis for the Secretary's determination that the approximately 600 miles of border covered by the waivers issued in the Big Bend region qualify as areas of "high illegal entry." In either case, the requested data goes directly to the factual predicates underlying Defendants' exercise of IIRIRA Section 102 Waiver authority and the legality of that exercise, and is therefore highly relevant to the merits of Plaintiffs' Major Questions Doctrine, Nondelegation Doctrine, and Take Care Clause claims.

Second, Defendants' reliance on the law enforcement privilege is unsupported by Fifth Circuit case law. *See In re U.S. Dep't of Homeland Sec.*, 459 F.3d at 568–70. As with

Interrogatories No. 1 and 2, Plaintiffs seek aggregate historical statistics, not investigative files, confidential sources, or other information tied to any ongoing criminal investigation. The Fifth Circuit recognizes only a narrow and qualified law enforcement privilege protecting sensitive information relating to ongoing criminal investigations. *See id.* Defendants' assertion that station and substation "got away figures" could reveal "potential weak points" is conclusory and does not demonstrate how disclosure of historical data would interfere with any ongoing criminal investigation or otherwise show how the information falls within the narrow zone of interests protected under the law enforcement privilege. Accordingly, Defendants have failed to establish that the requested information falls within the scope of the law enforcement privilege.

Moreover, as explained above, even if Defendants could articulate a cognizable law enforcement concern, that concern would not justify withholding the information outright. Any legitimate confidentiality interests could be adequately addressed through a confidentiality and protective order or other appropriate safeguards, rather than by refusing to provide the responsive data.

Third, the publicly available document listed in Defendants' response fails to provide the information requested in Interrogatory No. 3. Despite confirming the existence of "got away figures," Defendants withhold these and instead direct Plaintiffs to CBP's online webpage. But this resource does not provide station and substation "got away" data. Indeed, it appears to encompass nationwide statistics, which is of limited utility to understanding the basis for DHS's Waiver determinations in the Big Bend region along the U.S.-Mexico border. Defendants cannot withhold information it concedes is responsive with a bare bones assertion of privilege that facially does not apply to the information sought. *See Dep't of Homeland Sec.*, 459 F.3d at 568–70 (5th Cir. 2006).

To assist Defendants in meeting their disclosure obligations and to advance discovery as efficiently as possible, Plaintiffs are willing to narrow the scope of the information sought in Interrogatory No. 3. Plaintiffs will accept station and substation-level data in the Big Bend and Del Rio Sectors. For the remaining seven CBP Sectors along the U.S.-Mexico border, Plaintiffs will accept station-level data.

**Interrogatory No. 4**

Interrogatory No. 4 asked Defendants to "[d]escribe the metrics used by Defendants to define whether an area is one of "high illegal entry" as that phrase is used in 8 U.S.C. § 1103 note, 91 Fed. Reg. 7297 (Feb. 17, 2026), 91 Fed. Reg. 27969 (May 15, 2026), and 91 Fed. Reg. 34831 (June 9, 2026)."

As a preliminary matter, Defendants object to the Center's use of the term "metrics," claiming it "is vague and ambiguous." Defendants further object on the ground that it purportedly seeks "a legal conclusion and/or legal analysis as to the definition of "high illegal entry" as used in 8 U.S.C. § 1103 note, 91 Fed. Reg. 7297 (Feb. 17, 2026), 91 Fed. Reg. 27969 (May 15, 2026), and 91 Fed. Reg. 34831 (June 9, 2026). Not so. Consistent with the plain meaning of the term, the Interrogatory uses "metrics" to mean the standard of measurement Defendants relied upon in determining that areas covered by the challenged waivers constitute areas of "high illegal entry." The Interrogatory does not seek a legal conclusion or a legal interpretation of the statute. Rather, it seeks identification of the measurements, criteria, or benchmarks Defendants used in making the challenged determinations. Such information concerns the factual basis for Defendants' exercise of the Section 102 waiver authority and is

plainly discoverable. Plaintiffs are willing to work with Defendants and provide further clarification, if needed.

Defendants' response to this Interrogatory is deficient. Defendants fail to answer the interrogatory, which requests a description of the metrics used to determine whether an area constitutes one of "high illegal entry." Instead of providing this, Defendants reproduce background discussion from the Waivers without identifying the metrics used to make the determinations. Further, even if the background information is partially responsive, it does not explain what standards Defendants applied in concluding that the approximately 430 miles of border covered by the challenged waivers qualified as areas of "high illegal entry." Without that information, Plaintiffs are deprived of discovery directly bearing on the factual predicates for the challenged determinations and are unable to test Defendants' asserted justification for invoking the section 102 waiver authority.

## II. <u>Deficiencies in Defendants' Response to the Center's Requests for Production</u>

### Request for Production No. 1

Request No. 1 asked Defendants to produce "[a]ll documents referred to or otherwise relied upon in formulating your Answers to Plaintiff Center for Biological Diversity's First Set of Interrogatories to Defendants U.S. Department of Homeland Security, U.S. Customs and Border Protection, and Secretary of Homeland Security Markwayne Mullin."

As a preliminary matter, Defendants objected to Request No. 1 on the grounds that "relied upon" and "in formulating" are vague and ambiguous. They are not. Request No. 1 seeks any documents (including ESI) that Defendants relied on in preparing their responses to the Center's Interrogatories. To the extent that Defendants seek to remedy the deficiencies in their responses, any records used in remedial responses also fall within the scope of this Request. Plaintiffs are willing to work with Defendants and provide further clarification on this point, if needed.

Defendants also object to Request No. 1 on the basis "that 'all documents' is overbroad, not relevant, and not proportional to the needs of the case." Yet Defendants' conclusory objection is inconsistent with their response, which simultaneously contends (notwithstanding multiple statements by Defendants that indicate otherwise) that all responsive information is contained in a handful of publicly available materials. Both statements cannot be true. If Defendants in fact relied only on those limited materials, then identifying and producing the documents cannot be considered overbroad, irrelevant, and disproportional to the needs of the case. Alternatively, if Defendants relied on additional documents, then their response is incomplete. The universe of responsive materials is either so expansive as to render the Request overbroad, or so limited that it consists only of a few publicly available sources. It cannot be both.

Defendants' response is further deficient based on internally contradicting statements. Defendants' Interrogatory responses reference information that is not contained in the publicly available sources identified. To name one: Defendants state that they track "got away" figures but do not release them publicly. This necessarily suggests reliance on records beyond the publicly available materials included in Defendants' response. Yet such records were not produced or referenced in Defendants' response to Request No. 1. To the extent Defendants relied on nonpublic data or other materials in formulating their responses to the Center's

Interrogatories, those materials are responsive to Request No. 1 and must be identified and produced.

**Request for Production No. 2**

Request No. 2 asked Defendants to produce "[a]ll documents concerning construction plans for border barrier and related infrastructure in the Big Bend Sector."

As a preliminary matter, Defendants objected to Request No. 2 "on the grounds that this request is overbroad, unduly burdensome, and disproportionate to the needs of the case." The Request is directed to documents concerning planned border barrier and related infrastructure construction in the Big Bend Sector, including, for example, documents reflecting the location, type, and proposed timeline for the construction projects purportedly authorized by the challenged waivers. This information bears directly on the factual and legal issues presented in this case because it concerns the nature and scope of the activities undertaken pursuant to Defendants' exercise of the IIRIRA Section 102 waiver authority. For example, the documents responsive to Request No. 2 would inform the economic impacts of border barriers to the region's ecology, economy, and recreational opportunities, which is central to Plaintiffs' Major Questions Doctrine claim. The Request is therefore relevant and proportional to the needs of the case.

Additionally, Defendants' reliance on the law enforcement privilege is unsupported by Fifth Circuit case law. *See In re U.S. Dep't of Homeland Sec.*, 459 F.3d at 568−70. Request No. 2 seeks documents concerning construction plans, not investigative files, confidential sources, or other information tied to any ongoing criminal investigation. The Fifth Circuit recognizes only a narrow and qualified law enforcement privilege protecting sensitive information relating to ongoing criminal investigations. *See id.* Defendants' assertion that disclosing border barrier plans would allow potential illegal entrants to exploit potential weak points or vulnerabilities is conclusory—it does not demonstrate how disclosure of construction plans would interfere with any ongoing criminal investigation or otherwise show how the information falls within the narrow zone of interests protected under the law enforcement privilege.

Defendants also assert that construction plans "frequently contain proprietary financial, trade secret, and commercial information." Notably, Defendants do not actually contend that any particular responsive document contains protected information. Instead, they rely on the generalized assertion that such information is often found in construction and contracting documents and therefore may be present here. That speculative possibility is insufficient to justify withholding otherwise discoverable documents. Moreover, even if certain responsive documents contain sensitive information, Defendants may employ less restrictive measures, including seeking a confidentiality and protective order, rather than withholding entire categories of responsive documents.

Defendants further object to the extent this request for production implicates information subject to the deliberative process privilege. This objection is misplaced. The deliberative process privilege is a narrow, qualified privilege that "protects predecisional materials reflecting deliberative or policy-making processes, but not materials that are purely factual." *Skelton v. U.S. Postal Serv.*, 678 F.2d 35 (5th Cir. 1982). "Documents are 'predecisional' if they were generated before the executive's final decision on the matter, and they are 'deliberative' if they were prepared to help the executive formulate its position." *League of United Latin Am. Citizens v. Abbott*, No. EP-21-CV-00259-DCG-JES-JVB, 2022 WL 3233406, at *2 (W.D. Tex. Aug. 10,

2022) (cleaned up). Here, in contrast, Request No. 2 seeks factual materials including construction design plans and the locations where construction will occur. Plaintiffs do not seek opinions or evaluations. Thus, Request No. 2 falls squarely outside the ambit of the deliberative process privilege.

Moreover, the invocation of the deliberative process privilege requires "(1) a formal claim of privilege by the 'head of the department' having control over the requested information; (2) assertion of the privilege based on actual personal consideration by that official; and (3) a detailed specification of the information for which the privilege is claimed, with an explanation why it properly falls within the scope of the privilege." *League of United Latin Am. Citizens*, 2022 WL 3233406, at *3 (W.D. Tex. Aug. 10, 2022). Defendants' boilerplate assertion of the privilege falls far short of these requirements.

Defendants' response is deficient. The publicly available information included in Defendants' response does not substantially respond to Request No. 2. Rather than providing documents concerning construction plans, Defendants merely direct Plaintiffs to high-level public descriptions of proposed construction activities. However, those materials reflect only ever-changing or noncommittal intentions, and outline construction plans only in the broadest possible terms. For example, CBP's online "Smart Wall Map," linked in Defendants' response, has been the subject of ongoing public controversy precisely because it has been changed and updated numerous times without any notice or explanation to the public. Defendants cannot credibly contend that such evolving public representations are responsive to the Center's Request.

Likewise, the environmental assessments cited by Defendants do not provide critical details regarding the planned construction, including specific design plans and the locations where construction will occur. As such, they do not substantially respond to the Center's Request for documents concerning construction plans. Indeed, the assessments themselves confirm the existence of responsive documents, as they necessarily rely on planning and design materials. Yet Defendants neither identify nor produce those underlying documents, notwithstanding their apparent responsiveness to Request No. 2.

To assist Defendants in meeting their disclosure obligations and to advance discovery as efficiently as possible, Plaintiffs are willing to narrow the scope of the information sought in RFP No. 2. Plaintiffs will accept records limited to the timing, location, and design of border barrier and associated infrastructure in the Big Bend Sector.

**Request for Production No. 3**

Request No. 3 asked Defendants to produce "[a]ll documents concerning whether the Big Bend Sector, or any subpart of that sector, is an area of 'high illegal entry' as that phrase is used in 8 U.S.C. § 1103 note, 91 Fed. Reg. 7297 (Feb. 17, 2026), 91 Fed. Reg. 27969 (May 15, 2026), and 91 Fed. Reg. 34831 (June 9, 2026)."

Defendants objected to Request No. 3 "on the grounds that this request is overbroad, unduly burdensome, and disproportionate to the needs of the case." The Request is narrowly tailored, relevant, and proportional to the needs of the case because it seeks documents concerning Defendants' determination that the Big Bend Sector constitutes an area of "high illegal entry," which forms the basis for the challenged Section 102 waivers. Documents concerning Defendants' determination are directly relevant to factual and legal claims at issue in this case, including the Major Questions Doctrine, Nondelegation Doctrine, and Take Care

Clause claims. Due to the waiver of the Administrative Procedure Act, the National Environmental Policy Act, the Endangered Species, and dozens of other laws that would ordinarily provide some disclosure, there are no public processes detailing the factual basis for the Secretary's determination. The requested data goes directly to the factual predicates underlying Defendants' exercise of IIRIRA Section 102 Waiver authority and the legality of that exercise, and is therefore highly relevant to the merits of Plaintiffs' Major Questions Doctrine, Nondelegation Doctrine, and Take Care Clause claims.

Defendants' response is deficient. The publicly available documents listed in Defendants' response to Interrogatory No. 1 fail to provide the information requested in Request No. 3. Defendants direct Plaintiffs to CBP's online webpage "Nationwide Encounters", but that resource does not provide information specific to the Big Bend Sector. Likewise, Defendants direct Plaintiffs to DHS's "Border Security Status Report: Fourth Quarter Fiscal Year 2023", which does not include any data beyond Fiscal Year 2023, and is of limited utility to understanding the basis for determinations issued in 2026. Defendants' one-page production, which exclusively concerns illegal drug confiscations, fails to adequately respond to Request No. 3 because it contains no information about the number of individuals entering the United States through the Big Bend Sector without authorization.

* * * *

In light of the foregoing, the Center respectfully requests that Defendants supplement their responses and produce all responsive, nonprivileged documents and information. The Center remains available to meet and confer regarding the issues raised above and is willing to work cooperatively to resolve any remaining disputes without court intervention. To the extent these deficiencies remain unresolved and the case proceeds beyond summary judgment, however, Plaintiffs reserve all rights to seek appropriate relief, including an order compelling complete responses and production of responsive materials.

Sincerely,

Labuschagne
Shannon E. Labuschagne
Center *for* Biological Diversity
2100 Franklin St., Suite 375
Oakland, CA 94612
510.493.2447
slabuschagne@biologicaldiversity.org

Zeynep J. Graves
Emma Yip
Center for Biological Diversity
2100 Franklin St., Ste 375
Oakland, CA 94612
Tel: (510) 844-7160
zgraves@biologicaldiversity.org
eyip@biologicaldiversity.org