**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| FRIENDS OF THE RUIDOSA CHURCH, *et al.*,<br><br>*Plaintiffs*,<br><br>*v.*<br><br>MARKWAYNE MULLIN, *et al.*,<br><br>*Defendants*. | Civil Action No. 3:26-CV-01099-KC |

**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS


INTRODUCTION ..... 1

ARGUMENT ..... 1

I. The Big Bend Waivers do not violate the Major Questions Doctrine ..... 1

  a. Plaintiffs' Major Questions Claim does not allege a "violation of the Constitution" ..... 1

  b. The Waivers are not extraordinary or novel assertions of power under IIRIRA ..... 4

II. The Big Bend Waivers do not violate the Non-Delegation Doctrine ..... 6

III. The Big Bend Waivers do not violate the Take Care Clause ..... 7

IV. The Big Bend Waivers do not violate the Presentment Clauses ..... 9

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Cases**

*Baker v. Carr*,
369 U.S. 186 (1962) .......... 8

*Border Infrastructure Envtl. Litig. v. U.S. Dep't of Homeland Sec.*,
915 F.3d 1213 (9th Cir. 2019) .......... 5

*BST Holdings LLC v. OSHA*,
17 F.4th 604 (5th Cir. 2021) .......... 2

*City of Columbus v. Trump*,
453 F. Supp. 3d 770 (D. Md. 2020) .......... 8

*Dalton v. Specter*,
511 U.S. 462 (1994) .......... 7

*Egbert v. Boule,*
596 U.S. 482 (2022) .......... 8

*Learning Res., Inc. v. Trump*,
607 U.S. 229 (2026) .......... 2

*Mayfield v. U.S. DOL*,
117 F.4th 611 (5th Cir. 2024) .......... 1, 6

*Mississippi v. Johnson*,
71 U.S. (4 Wall.) 475 (1866) .......... 8

*Panama Ref. Co. v. Ryan*,
293 U.S. 388 (1935) .......... 2

*Pervasive Software Inc. v. Lexware GmbH & Co. KG*,
688 F.3d 214 (5th Cir. 2012) .......... 3

*Sierra Club v. Ashcroft*,
2005 U.S. Dist. LEXIS 44244, at *20 (S.D. Cal. Dec. 12, 2005) .......... 7

*United States v. Novak*,
476 F.3d 1041 (9th Cir. 2007) .......... 5

*Util. Air Regul. Grp. v. EPA*,
573 U.S. 302 (2014) .......... 6

*West Virginia v. EPA*,
597 U.S. 697 (2022) .......... 2, 3, 6

**Statutes**

DHS Appropriations Act, 2008,
Pub. L. No. 110-161, div. E, tit. V, § 564, 121 Stat. 1844 (2007) .......................................... 4

Secure Fence Act of 2006,
Pub. L. No. 109-367, 120 Stat. 2638 (2006) ................................................................. 5

**Rules**

L.R. CV-7(d)(3) ........................................................................................................ 1, 9

## INTRODUCTION

Defendants file this reply to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment. ECF No. 32 ("Response"). Each of Plaintiffs' claims fail as a matter of law, and Defendants are entitled to summary judgment in their favor. Despite Plaintiffs' renewed arguments, the Court lacks jurisdiction to hear Plaintiffs' Major Questions Doctrine claim as it is not a violation of the constitution under the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, div. C, tit. I, § 102, 110 Stat. 3009-554 (Sept. 30, 1996) (codified 8 U.S.C. § 1103 note). Plaintiffs' remaining claims under the Non-Delegation Doctrine, Takings Clause, and Presentment Clauses are all without merit, as Courts have repeatedly found over the previous two decades.

Additionally, Plaintiffs' response exceeds the twenty-page limit prescribed in the local rules by five pages. L.R. CV-7(d)(3). As such, the Court should disregard the excess pages and only consider the first twenty pages.

## ARGUMENT

### I. The Big Bend Waivers do not violate the Major Questions Doctrine

#### a. Plaintiffs' Major Questions Claim does not allege a "violation of the Constitution."

The Major Questions Doctrine is not a "violation of the Constitution" under IIRIRA § 102(c)(2)(A). Plaintiffs argue that Defendants misinterpret *Mayfield v. U.S. DOL*, 117 F.4th 611 (5th Cir. 2024), because it "left open the question" whether the Major Questions Doctrine is an interpretive rule or clear statement rule. Response 2. Plaintiffs miss Defendants' point. *Mayfield* did leave the question open, but the question presupposed that the Doctrine is a rule of statutory interpretation. Both interpretive rules and clear statement rules are tools to assist courts interpret the text of a statute. The question left open was a mere categorical one. Even if the Major Questions

Doctrine is a clear statement rule, as Plaintiffs contend, Response 6, that in no way transforms it into a violation of the constitution.

The cases Plaintiffs cite only underscore this point. For instance, in *Learning Resources*, the Court, in discussing the Major Questions Doctrine, stated that "[w]e have long expressed 'reluctan[ce] to read into *ambiguous statutory text*' extraordinary delegations of Congress's powers." *Learning Res., Inc. v. Trump*, 607 U.S. 229, 242 (2026) (quoting *West Virginia v. EPA*, 597 U.S. 697, 723 (2022)) (emphasis added). Similarly, *West Virginia* couched its discussion of the Major Questions Doctrine in the language of statutory interpretation. "Extraordinary grants of regulatory authority are rarely accomplished through 'modest words,' 'vague terms,' or 'subtle devices.' Nor does Congress typically use oblique or elliptical language to empower an agency to make a 'radical or fundamental change' to a statutory scheme." *West Virginia*, 597 U.S. at 723 (citations omitted). And *BST Holdings* held that the "the Mandate exceeds the bounds of OSHA's *statutory authority*." *BST Holdings LLC v. OSHA*, 17 F.4th 604, 616-17 (5th Cir. 2021) (emphasis added).

Nor does the Major Questions Doctrine's roots in the separation of powers make it a "violation of the constitution." As Defendants already argued, many canons of interpretation are informed by the Constitution without making them constitutional violations. *See* Defs' Mot. for Summ. J. 7-8, ECF No. 24. Moreover, Plaintiffs' analogy to the Nondelegation Doctrine is misplaced. Response 5. The Nondelegation Doctrine asks whether Congress has violated Article I of the Constitution by delegating too much legislative power to the Executive Branch without an intelligible principle. *See Panama Ref. Co. v. Ryan*, 293 U.S. 388, 432 (1935) ("To repeat, we are concerned with the question of the delegation of legislative power."). By contrast, the Major Questions Doctrine asks whether, as a matter of statutory interpretation and congressional intent,

courts should read "ambiguous" text in a statutory provision to confer broad and "unheralded power" on the Executive Branch. *West Virginia*, 597 U.S. at 723-24, 730. In other words, a Nondelegation violation comes from Congress transgressing a defined constitutional boundary set forth in Article I. In the Major Questions setting, the violation comes from an agency taking action in excess of its statutory authority. The former is a violation of the Constitution; the latter is not.

In case any doubt remains, the Court only need look at the question Plaintiffs ask it to decide. Plaintiffs' entire Major Questions argument hinges an interpretation of the IIRIRA's text. Plaintiffs discuss the structure, language, and amendments of the IIRIRA as proof that, in their view, the IIRIRA does not grant the Secretary the authority to issue the Waivers. Response 11-12. They also ask the Court to "review the statute . . . for clear congressional authorization," *id*. at 10, and claim that "DHS asserts powers far outside the scope of IIRIRA," *id*. at 8. In other words, Plaintiffs challenge the Secretary's interpretation of the IIRIRA as exceeding the authority granted by Congress; they do not argue that the Secretary is violating a specific textual clause in the Constitution. This argument presents a clear question of interpreting the statute, and one which the Court lacks jurisdiction to hear under the IIRIRA's strict jurisdiction-stripping provision.

Finally, Plaintiffs propose that the Court can forego the question of whether the Major Questions Doctrine is a violation of the Constitution and rule directly on the merits. *Id*. 6-7. In fact the opposite is true. Jurisdiction is a threshold issue that the Court must determine before ruling on the merits. *See, e.g.*, *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 232 (5th Cir. 2012) (subject matter jurisdiction and personal jurisdiction claims are "threshold grounds for denying audience to a case on the merits," and require that the courts reach the threshold claims before reaching claims on the merits.) (citation omitted).

**b. The Waivers are not extraordinary or novel assertions of power under IIRIRA.**

Even if the Court finds that it has jurisdiction to hear the Major Questions issue, Plaintiffs' claim fails on the merits. First, Plaintiffs' emphasis on construction of a "Great Wall" is misplaced. Response 7. Plaintiffs essentially argue that because the Big Bend Waivers are part of a larger project, they become extraordinary assertions of power. *See id.* Plaintiffs also assert that the Waivers on their own are significant because "each waiver spans hundreds of miles and together they span a quarter of the southern border." *Id.* at 9. Both of these arguments miss the mark. The power asserted by the Secretary in issuing the Waivers in not power to build border wall, it is the power to waive laws in support of border barrier construction. Thus, the length of proposed construction and the landmass it would encompass are irrelevant. The only question the Court need decide is whether the IIRIRA allows the Secretary to issue waivers of laws. The question would be the same whether the project area was one mile long or three thousand miles long.

Second, the Waivers are in furtherance of Congress' command in IIRIRA § 102(a) and § 102(b) to build border wall. Plaintiffs argue that Section 102(b)(1) is inapplicable because it is cabined to the "southern border" as defined in Pub. L. 110-161, 121 Stat. 1844, 2094 (2007), not the "southwest border" as defined in Pub. L. 110-161, 121 Stat. at 2090. As an initial matter, the distinction between "southern border" and "southwest border" is meaningless. There is nothing in the text of IIRIRA to suggest that it only covers areas west of the Big Bend Sector. In addition, Plaintiffs' argument ignores IIRIRA § 102(a), which Plaintiffs accurately characterize as a "broad grant of authority," Response 11, that requires the Secretary to construct border wall "in the vicinity of *the United States border*." (emphasis added). Moreover, the section defining "southern border" cited by Plaintiffs only applies to that section, as the text literally states "Definitions. — In this title:" *Id.* at 121 Stat. 2094. Further, the Ninth Circuit's interpretation of section 102(b) as

"denot[ing] certain priority projects[]" is inapplicable because it interpreted § 102(b)(1)(B), titled "Priority areas." Response 11-12; *Border Infrastructure Envtl. Litig. v. U.S. Dep't of Homeland Sec.*, 915 F.3d 1213, 1225 (9th Cir. 2019). Defendants' motion referenced § 102(b)(1)(A), which is a command to build border wall "along not less than 700 miles of the southwest border[.]" And § 102(b)(1)(A) is not limited by § 102(b)(1)(D), as its commands apply "[n]otwithstanding paragraph (A)." *See United States v. Novak*, 476 F.3d 1041, 1046 (9th Cir. 2007) (en banc) ("The Supreme Court has indicated as a general proposition that statutory 'notwithstanding' clauses broadly sweep aside potentially conflicting laws.").

Moreover, Plaintiffs' argument that "there is nothing to suggest that Section 102(b) of IIRIRA applies to Big Bend Waivers" once again ignores IIRIRA § 102(a) and is contradicted by the text of IIRIRA itself. Section 102(c), the section permitting waivers, references the preceding portions of the statute. "[T]he Secretary . . . shall have authority to waive all legal requirements [he] . . . determines necessary to ensure expeditious construction of barriers and roads *under this section*." IIRIRA § 102(c)(1) (emphasis added). In stating "under this section," Congress certainly intended the Secretary to issue waivers for border wall constructed under the authority of IIRIRA § 102, including the "not less than 700 miles of the southwest border" commanded in Section 102(b)(1)(A). And as that section did not limit border construction, the Big Bend Sector is included in that command.

Plaintiffs also reiterate their argument that IIRIRA waivers are limited to areas of high illegal entry. As stated in Defendants' motion, the Big Bend Sector is an area of high illegal entry, *see* Defs.' Mot. 14, and the concept of high illegal entry is especially broad when considering Congress' command to prevent "all unlawful entries." Secure Fence Act of 2006, Pub. L. No. 109-367, § 2(b), 120 Stat. 2638 (2006) (8 U.S.C. § 1701 note). Plaintiffs' argument that illegal drug

seizures play no role in the analysis defies common sense. Response 16. Drugs do not cross the border by themselves; thus drug seizures are an appropriate indicator of "illegal crossings" and "areas of high illegal entry."

The Major Questions Doctrine prohibits "novel" or "unprecedented" interpretations of statutes. *West Virginia*, 597 U.S. at 716. The Waivers are far from novel considering the plethora of waivers issued under the same statute for areas with varying degrees of illegal crossings. *See Mayfield*, 117 F.4th at 617 ("the Supreme Court's major-questions analysis turns in part on whether the agency has previously claimed the authority at issue."). The waivers did not invoke a "newfound power," represent a "transformative expansion in [the agency's] regulatory authority," or rely on an "ancillary provision" of a law that has "rarely been used in the proceeding decades." *West Virginia,* 597 U.S. at 724. Accordingly, DHS cannot be said to have "discover[ed]" a previously "unheralded power" in "a long-extant statute." *Util. Air Regul. Grp. v. EPA,* 573 U.S. 302, 324 (2014). Rather, the waivers at issue here build upon a foundation of nearly two decades of precedent using the express authority Congress provided in IIRIRA.

**II. The Big Bend Waivers do not violate the Non-Delegation Doctrine.**

Plaintiffs' nondelegation arguments also lack merit. Plaintiffs claim that "the Court is no longer reviewing the delegation that prior courts upheld[,]" Response 16, but that is impossible. Once Congress passes a statute delegating authority to the Executive, that is the delegation. It has not changed since the last court found it constitutional, and neither can it change based on Plaintiffs' allegation of different interpretations by the Executive. Either the statue is or is not a constitutional delegation to the Executive. Here, that question is easily answered, as every court to consider the issues has concluded that IRRIRA is a lawful delegation of authority. Defs.' Mot. 12 (citing cases).

Plaintiffs' argument that the IIRIRA provides no meaningful policy without the phrase "areas of high illegal entry" is wrong. Response 16. IIRIRA § 102(a) sets a policy of installing border barriers and roads to secure the United States' border. That alone is a sufficient policy statement, as Defendants articulated in their Motion and other Courts have recognized. *See* Defs.' Mot. 15; *See Sierra Club v. Ashcroft*, 2005 U.S. Dist. LEXIS 44244, at *20 (S.D. Cal. Dec. 12, 2005). That, along with the boundaries Defendants articulated in their Motion comprise a sufficient intelligible principle to be a lawful delegation of authority from the legislative branch to the Executive. *Id.* at 11-15.

**III. The Big Bend Waivers do not violate the Take Care Clause.**

As explained in Defendants' opening brief, the Take Care Clause provides no basis to review the actions of subordinate Executive Branch officials. *See id.* at 16. Plaintiffs respond with the unremarkable proposition that the President acts through subordinate officials, but that obvious fact does not turn every alleged violation of the law by lower-level government employees into a constitutional case. If Plaintiffs theory were accepted, every garden-variety action by a federal employee alleged to be in violation of a statutory provision would also violate the Take Care Clause. The Supreme Court foreclosed that line of argument in *Dalton v. Specter*, 511 U.S. 462, 472 (1994). There, the Supreme Court made clear that not "every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id.* Instead, the Court has carefully "distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id*. (collecting cases). Plaintiffs' Take Care Clause claim, which that simply alleges that the Secretary of Homeland Security has "exceeded his statutory authority," is not a "constitutional claim[]." *Id.* at 473.

In any event, "the duty of the President in the exercise of the power to see that the laws are faithfully executed" "is purely executive and political" and is, therefore, not an appropriate subject for judicial intervention. *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 499 (1866). For the Judicial Branch to undertake such an inquiry would express a "lack of the respect due" to the Nation's highest elected official, *Baker v. Carr*, 369 U.S. 186, 217 (1962), by assuming judicial superintendence over the exercise of Executive power that the Clause commits to the President.

Plaintiffs also cannot point to any authority to support a cause of action under the Take Care Clause, as reflected in the multiple cases cited in Defendants' opening brief. *See* Defs.' Mot. 17-18; *City of Columbus v. Trump*, 453 F. Supp. 3d 770, 800 (D. Md. 2020) ("No court in this circuit, or any other circuit, has definitively found that the 'Take Care Clause' provides a private cause of action which a Plaintiff may bring against the President of the United States or his administration."). The Court should there avoid taking the extraordinary step of creating a new constitutional cause of action absent clear and express authorization from Congress. *See, e.g., Egbert v. Boule,* 596 U.S. 482, 486 (2022).

Plaintiffs' remaining arguments on the merits are either irrelevant to the claim or beyond the jurisdiction of this Court. First, Plaintiffs state that "nothing in IIRIRA [] authorizes the Secretary to invoke IIRIRA waiver authority in [an] area[] . . . that is not an "area[] of high illegal entry[,]" Response 19, but this argument is irrelevant because the Big Bend Region is an area of high illegal entry. *See* Defs.' Mot. 14. And even so, Section 102(c) is a clear authorization to waive laws in furtherance of securing the border, which Congress has defined as "prevention of all unlawful entries into the United States, including entries by terrorists, other unlawful aliens, instruments of terrorism, narcotics, and other contraband." *See* § 2(b), 120 Stat. 2638.

Second, Plaintiffs state that "the Secretary is without authority to dispense of dozens of statutes[]" because "the Big Bend Waivers [do not] fall within the limits Congress imposed." Response 19-20. But this is not a "constitutional question" as Plaintiffs claim. Whether the IIRIRA authorizes the Secretary to waive laws in a given instance is a matter of statutory interpretation. As such, the Court lacks jurisdiction under the IIRIRA to answer this question.

Finally, Plaintiffs' mention of waivers allegedly extending beyond barrier construction, *id.* 20, has little to do with whether the Executive is taking care to execute the laws. Because Congress clearly authorized the Executive to waive laws in this context, any effect from those waivers was intended by Congress and is therefore not a violation of the Executive's duty to enforce the laws.

**IV. The Big Bend Waivers do not violate the Presentment Clauses.**

Plaintiffs' arguments in favor of their Presentment Clauses claim run onto pages beyond this Court's prescribed page limits. Response 21-25; L.R. CV-7(d)(3); *see also* Standing Order Regarding Civil Motion Content (May 1, 2012) (stating that "any motion or filing not in compliance with this Order shall not be accepted for filing"). The Court should therefore disregard this section when considering the Motions. Nevertheless, Defendants will briefly respond to Plaintiffs' arguments.

Plaintiffs complain that Defendants failed to mention the National Wild and Scenic Rivers System Section 1274(a) and therefore failed to respond to their claim. But Defendants' general arguments apply equally to this specific statute. Plaintiffs contend that by waiving that statute, the Secretary "stripped [it] of the legal and practical effect Congress conferred upon it." Response 21. But as Defendants argued, the waivers only apply "with respect to the construction of barriers and roads." Defs.' Mot. 19. In all other respects, Section 1274(a) "retain[s] [its] legal force and effect because the Secretary's waiver extends to only a tiny fraction of the universe of cases to which

[the] waived law[] appl[ies].” *Id*. In other words, Section 1274(a) still applies to the Rio Grande River except in this specific instance for border barrier construction, which is a far cry from “amending” the statute. Response 22. As to Plaintiffs’ contention that “border construction would decimate” the Rio Grande, *id*., that is entirely speculative. In fact, DHS has specifically denounced any plans to build a large-scale pedestrian border barrier through Big Bend National Park, Big Bend Ranch State Park, or the Black Gap Wildlife Management Area. *See* Statement from CBP Commissioner Rodney S. Scott Correcting the Record on Big Bend Border Security Projects. https://www.cbp.gov/newsroom/announcements/statement-cbp-commissioner-rodney-s-scott-correcting-record-big-bend. (last visited Sep. 2, 2026); *see also* Decl. of Paul Enriquez, ECF No. 38-1 (explaining project plans and best management practices to minimize environmental impacts).

**CONCLUSION**

For the foregoing reasons, the Court should grant summary judgment to Defendants on all counts and deny Plaintiffs’ motion for summary judgment on all counts.

Dated: September 11, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ANDREW I. WARDEN
Assistant Branch Director

*/s/ Alexander J. Yun*
ALEXANDER J. YUN
(D.C. Bar No. 90028923)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
202-674-0255
Alex.Yun@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that this document and its attachments were filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: September 11, 2026

*/s/ Alexander J. Yun*
ALEXANDER J. YUN
Counsel for Defendants