**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

FRIENDS OF THE RUIDOSA CHURCH, et al.,

*Plaintiffs*,

v.

MARKWAYNE MULLIN, et al.,

*Defendants.*

Case No. 3:26-cv-01099-KC

**PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL EVIDENCE RELEVANT TO PENDING EMERGENCY MOTION FOR TRO OR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ i

STATEMENT OF ISSUES ........ iii

FACTUAL BACKGROUND ........ 1

ARGUMENT ........ 3

I. New Evidence Regarding Construction in BBT-1, 2 and 3 ........ 3

II. Additional Fact and Expert Reports ........ 5

III. Relevant Testimony from *People of La Junta* Hearing ........ 9

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

## Cases

*Sierra Club v. U.S. Army Corps of Eng'rs*,
482 F. Supp. 3d 543 (W.D. Tex. 2020)........................................................................... 3

*Skurka Aerospace, Inc. v. Eaton Aerospace, L.L.C.*,
781 F. Supp. 2d 561 (N.D. Ohio 2011)........................................................................... 3

*The People of La Junta for Preservation, et al. v. Department of Homeland Security, et al.*,
No. SA-26-CV-5245-OLG (W.D. Tex. Aug. 28, 2026) ............................................................ 9

## Statutes

Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. 104-208, Div. C, 110
Stat. 3009-546 (8 U.S.C. § 1103 note)........................................................................... 1

## STATEMENT OF ISSUES

1. Whether to grant Plaintiffs leave to file supplemental evidence in support of their pending Emergency Motion for a Temporary Restraining Order or Preliminary Injunction, ECF No. 34.

Plaintiffs respectfully request leave to file supplemental evidence to apprise the Court of newly discovered facts and additional evidence relevant to Plaintiffs' pending Emergency Motion for Temporary Restraining Order or Preliminary Injunction, ECF No. 34 ("Emergency Motion"). New evidence recently acquired by Plaintiffs documents ongoing and imminent construction-related harms occurring in the Big Bend Sector, and additional evidence addresses the issues highlighted for an evidentiary hearing in the Court's August 26 Order, ECF No. 41. Given ongoing and imminent construction-related harms pursuant to the challenged waivers in areas outside Big Bend National Park, including the erection of steel bollard walls and the imminent blasting of a pristine canyon and river corridor, as well as the imminent resumption of construction within the National Park, injunctive relief is necessary to prevent irreparable harm to Plaintiffs. Accordingly, for the reasons set forth below, Plaintiffs respectfully request that the Court grant leave to supplement the record with the additional evidence described herein and attached to this Motion.

## FACTUAL BACKGROUND

On August 17, 2026, Plaintiffs moved for emergency injunctive relief to prevent ongoing and imminent ground-disturbing activities associated with border barrier construction pursuant to the challenged waivers issued under the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. 104-208, Div. C, 110 Stat. 3009-546 (codified at 8 U.S.C. § 1103 note), ECF No. 34. That same day, Defendants announced a temporary pause of certain construction activities in Big Bend National Park. *Id.* at 5. Defendants now state that the pause in construction covers "all ground disturbing activity" in Big Bend Projects 2 and 4 ("BBT-2" and "BBT-4"), which encompass an area immediately west of Big Bend Ranch State Park, a portion of the State

Park, Big Bend National Park, and a section immediately east of the National Park.[1] Joint Notice Regarding Consolidation, ECF No. 49 at 2. According to Defendants, that pause will end on September 30, 2026. *Id.*

On August 26, 2026, this Court ordered the parties to attend an evidentiary hearing regarding Plaintiffs' Emergency Motion, ECF No. 41. The Court specifically requested that the Parties present evidence on four topics: (1) whether the Big Bend Sector is an area of high illegal entry; (2) whether Plaintiffs are irreparably harmed by Defendants' current border barrier construction activities; (3) whether Plaintiffs will be irreparably harmed by planned construction; and (4) whether Defendants and/or the public interest will be harmed by a preliminary injunction. *Id.* at 2. Subsequently, the Court canceled the scheduled evidentiary hearing and ordered the parties to meet and confer and file a joint filing setting forth their positions regarding consolidation. ECF No. 46.

On September 4, 2026, the Parties filed their Joint Notice to the Court Regarding Consolidation. ECF No. 49. Shortly thereafter, on September 9, 2026, Plaintiffs moved to modify the scheduling order to lift the current stay on discovery. ECF No. 51. That motion is now fully briefed. *See* Defs.' Opp'n, ECF No. 53; Pls.' Reply, ECF No. 54. Despite Defendants' refusal to provide or agree to meaningful discovery, even after this Court identified disputed issues of fact, Plaintiffs have independently obtained additional evidence directly relevant to their pending Emergency Motion.

Plaintiffs requested Defendants' position on their Motion for Leave to File Supplemental Evidence. Declaration of Emma Yip ("Yip Decl.") ¶ 5. Defendants state that they reserve their

---

[1] *See* U.S. CBP Smart Wall Map, available at: https://www.cbp.gov/border-security/along-us-borders/smart-wall-map (last accessed Sep. 17, 2026).

position on the motion pending their review of the motion and additional evidence and will respond in accordance with the Court's rules. *Id.*

**ARGUMENT**

Whether to permit supplemental evidence is within this Court's discretion. *Sierra Club v. U.S. Army Corps of Eng'rs*, 482 F. Supp. 3d 543, 559 (W.D. Tex. 2020) (permitting plaintiff's supplemental evidence submitted after preliminary injunction hearing). Here, where the evidence Plaintiffs seek leave to file is timely, poses no prejudice to Defendants, is highly relevant to the factual disputes identified in this Court's August 26, 2026 Order, ECF No. 41, and largely pertains to ongoing construction activities and associated harms, this Court should allow supplementation. *See, e.g.*, *id.* at 558–59 (granting supplementation after a hearing despite that plaintiff could have possessed the information earlier—because the evidence was submitted to rebut defendants' claims made during the hearing, was filed soon after the hearing, and pertained to ongoing activities); *Skurka Aerospace, Inc. v. Eaton Aerospace, L.L.C.*, 781 F. Supp. 2d 561, 565 (N.D. Ohio 2011) (denying motion to strike supplemental evidence given that both parties had an opportunity to weigh in on the supplemental evidence).

**I. New Evidence Regarding Construction in BBT-1, 2 and 3**

First, Plaintiffs request leave to file supplemental evidence documenting ongoing and imminent construction in Big Bend project areas 1, 2, and 3 ("BBT-1," BBT-2," and "BBT-3"). Although a temporary pause in construction is currently in place for Big Bend National Park and Big Bend Ranch State Park (BBT-2 and BBT-4), the waivers challenged in this action authorize construction across a much broader geography than what is currently subject to the voluntary pause. Five Big Bend construction projects overlap the waiver areas challenged in this lawsuit. *See* Defs.' Opp'n to Pls.' Emergency Mot., ECF No. 38 at 19–20 (describing BBT-1 through 5).

Plaintiffs have now obtained new evidence demonstrating that construction activities in the BBT-1 project area are ongoing and expected to increase in the coming days and that construction in the BBT-2 and/or BBT-3 project areas is imminent. This includes (1) a Declaration from Willard Guerra-Addington detailing ongoing and imminent construction in BBT-1; (2) Facebook images showing newly erected border wall in BBT-1; and (3) an email from Defendant's counsel providing notice of planned construction in BBT-2 and/or BBT-3.

First, Plaintiffs request leave to supplement the record with the attached Declaration of Center member Willard Guerra-Addington, which describes largescale land clearing and earthmoving near his ranch in Hudspeth County, and preparation to detonate explosives at Box Canyon along the Rio Grande corridor—all within the BBT-1 project area. Decl. of Willard "Bill" Guerra-Addington in Supp. of Pls.' Emergency Mot. ¶¶ 5, 12–17. Upon information and belief, use of the explosives is imminent. *See id.* ¶ 17–18. Detonation of the canyon walls at this location to carve new roads and build 30-foot steel bollard walls would permanently alter the geological identity of this place and irreparably harm the community's use of Box Canyon for fishing and hiking. *Id.* ¶ 17.

Second, Plaintiffs request that the Court consider pictures posted on September 17, 2026 on Facebook showing newly erected steel bollard walls near Box Canyon, in the BBT-1 project area in Hudspeth County. Yip Decl. ¶ 4. This evidence demonstrates that construction efforts to expeditiously erect steel bollard walls is currently underway pursuant to the waiver authority challenged in this action.

Third, Plaintiffs offer an email from Defendants' counsel sent on September 16, 2026, notifying Plaintiffs that ground-disturbing activities within ten miles of the Ruidosa Church (also known as the Sacred Heart Church) may begin as early as October 6, 2026. Yip Decl. ¶ 3 & Ex. 1

(email from Alex Yun). These plans deviate from Defendants' earlier representations, where they stated that construction was not expected to commence within ten miles of the Ruidosa Church before February 2027. Joint Mot. for Scheduling Order, ECF No. 15 at 4. Because the Church lies at the juncture of BBT-2 and BBT-3, construction activities associated in one or both of those areas is imminent. Plaintiff Friends of the Ruidosa Church is dedicated to preserving and maintaining this historic landmark, which faces a risk of full or partial collapse due to its fragile adobe walls and the vibrations and other impacts associated with border barrier construction activities, as well as heavy vehicle traffic, particularly on FM 170, which runs parallel to the U.S.-Mexico border and passes within approximately ten feet of the church's left bell tower. Decl. of Michael Wilber Green, ECF No. 19-2 ¶¶ 21–25.

Plaintiffs respectfully request that the Court consider these newly discovered facts in connection with Plaintiffs' Emergency Motion. Each document identifies newly discovered harms arising from Defendants' actions after the close of briefing on the Emergency Motion and are being submitted promptly upon discovery of those harms. This evidence bears directly on ongoing and imminent irreparable harm to Plaintiffs and documents construction that is ongoing or imminent. Finally, Defendants face no undue prejudice by the Court considering this additional evidence, given they may file a response in opposition to Plaintiffs' Motion.

## II. Additional Fact and Expert Reports

Plaintiffs have also obtained additional evidence bearing on several factual disputes identified in the Court's August 26 Order, ECF No. 41. Specifically, Plaintiffs offer (1) an expert report from restoration ecologist Jeffrey Renfrow that assesses the extent of damage from construction in BBT-1 and BBT-4; (2) a supplemental expert report from Adam Isacson, further solidifying that the Big Bend Sector is not an area of high illegal entry; and (3) a declaration from

former Big Bend National Park Superintendent Robert Krumenaker, who served as Superintendent of Big Bend National Park and the Rio Grande Wild and Scenic River from 2018 through 2023 and has first-hand knowledge relevant to border security measures and unlawful entry rates within the area.

First, Plaintiffs submit a declaration from Jeffrey Renfrow, a restoration ecologist, concerning the ecological effects of ongoing border barrier related construction within the Rio Grande corridor. Expert Report of Jeffrey Renfrow (Sep. 18, 2026). Mr. Renfrow conducted field visits to areas in Big Bend National Park that have been affected by border barrier construction activities and reviewed videos and photographs of construction areas in Hudspeth County (BBT-1). *Id.* ¶¶ 4, 6, 25–26. He determined that significant harms have already occurred due to border barrier construction work in the Big Bend Sector, which will necessitate long-term restoration efforts and may result in local ecosystem collapse. *Id.* ¶¶ 15, 22. The most significant long- and short-term impacts from construction activities result from altering local hydrology and water flow patterns, caused by cutting off ephemeral streams, blocking sediment transportation, reducing local groundwater recharge, and causing downstream erosion. *Id.* ¶¶ 36–42, 65–67. Additionally, loss of vegetation, soils, and biological resources has significantly degraded the ecological communities and ecosystem processes supported by native wildlife. *Id.* ¶¶ 43–47, 65–67. Natural recovery could take hundreds of years, and even then, disturbed areas are unlikely to return to their original state, resulting in permanent changes to the area. *Id.* ¶¶ 48–54, 67.

Second, Plaintiffs submit a supplemental declaration from Adam Isacson further analyzing unlawful entry and apprehension data in the Big Bend Sector. Annual CBP apprehension data spanning from 1996 to present illustrates that the Big Bend Sector has consistently experienced the lowest rates of unlawful entry along the U.S.-Mexico border. Supplemental Expert Report of

Adam B. Isacson ("Isacson Supp. Rep.") ¶ 14 & Ex. 1. Specifically, apprehensions in the Big Bend Sector have not exceeded 6 per border mile per month in every year since 1996 and, in most years, remains below 2 per border mile per month. *Id.* ¶ 15. In 1996, when Congress passed IIRIRA and authorized barrier construction in areas of "high illegal entry," the Big Bend Sector experienced 2.1 apprehensions per border mile per month, compared to more than 600 in the San Diego Sector and 18.7 in the Yuma Sector (the sector with the second lowest apprehension rates on the southern border that year). *Id.* ¶ 16.

As Mr. Isacson further explains, CBP's sector-wide apprehension data strongly appears to overstate the number of individuals who unlawfully crossed the border within the Big Bend Sector because those figures include individuals apprehended throughout the Sector's 135,000 square miles, including "at large" apprehensions and apprehensions at interior Border Patrol checkpoints. Indeed, 12,652 of the 140,654 apprehensions recorded in the Big Bend Sector between Fiscal Years 2013 and 2025, or approximately 9%, occurred at Border Patrol checkpoints. Isacson Supp. Rep. ¶ 23. In Fiscal Year 2025, checkpoint apprehensions accounted for 27.3% of all apprehensions in the Sector. *Id.* ¶ 23. Available CBP data further reflects that, among checkpoint apprehensions for which relevant data is available, approximately 42.7% involved individuals who had been present in the United States for more than a month and approximately one-third involved individuals who had been present in the U.S. for more than one year before apprehension. *Id.* ¶ 24. According to Mr. Isacson, this data demonstrates that the number of individuals apprehended after crossing the border in the Big Bend Sector is even smaller than initially represented in his first report, ECF No.19-2, and contradicts Defendants' statements about overall apprehensions. Isacson Supp. Decl. ¶¶ 20, 25–26; Decl. of Paul Enriquez, ECF No. 38-1 ¶ 42 (characterizing those same

figures as "illegal aliens attempting to enter the United States *between border crossings* in the Big Bend Sector") (emphasis added).

Third, Plaintiffs also submit a declaration of former Big Bend National Park Superintendent Robert Krumenaker, who served as Superintendent of Big Bend National Park and the Rio Grande Wild and Scenic River from 2018 through 2023 and was responsible for the management of lands that encompass approximately 245 miles of the U.S.-Mexico border in the Big Bend Sector. According to Mr. Krumenaker—who has years of experience coordinating with U.S. Border Patrol—the natural terrain and existing security operations, which include surveillance technology, law enforcement personnel, and interagency cooperation, effectively support border enforcement operations in Big Bend National Park. Decl. of Robert J. Krumenaker in Support of Pls.' Mot. for Prelim. Inj. ¶ 12. In fact, throughout the entirety of Mr. Krumenaker's service at the National Park, Border Patrol leadership never indicated that existing security operations were inadequate or that any new enforcement mechanisms were necessary. *Id.* ¶ 11. Further supporting that this area is not one of high illegal entry, Mr. Krumenaker provides additional data showing that between 2016 and 2025, the per-mile per-month apprehension figures in the National Park never surpassed 1. Krumenaker Decl. Ex. 1.

The Court should consider the additional expert and fact evidence described above given its highly relevant nature to the issues described in this Court's August 26 Order, ECF No. 41. Since the Court's August 31 Order canceling the Parties' evidentiary hearing, Plaintiffs have worked diligently to develop a factual record responsive to the issues outlined by this Court. Regardless of whether a hearing is ultimately rescheduled or cases are consolidated—the three expert and fact declarations described above will assist the trier of fact in determining whether the Big Bend Sector is an area of high illegal entry, whether Plaintiffs were and will be irreparably

harmed from prior, ongoing, and future construction, and whether Defendants or the public are harmed by a preliminary injunction that maintains the status quo. This evidence is timely submitted within weeks of the canceled hearing, and prior to the expected conclusion of the government's voluntary pause in BBT-2 and BBT-4. Defendants are not prejudiced by this evidence where, again, they may submit a response in opposition.

## III. Relevant Testimony from *People of La Junta* Hearing

Last, Plaintiffs submit the prior testimony of Sheriff Thaddeus Cleveland, given on August 28, 2026, in *The People of La Junta for Preservation, et al. v. Department of Homeland Security, et al.*, No. SA-26-CV-5245-OLG. Sheriff Cleaveland is the Sheriff of Terrell County, Texas, with four years' experience in that role, and a former Border Patrol agent with 26 years of experience. Transcript of Evidentiary Hearing, *The People of La Junta for Preservation, et al. v. Department of Homeland Security, et al.*, No. SA-26-CV-5245-OLG (W.D. Tex. Aug. 28, 2026) ("Cleaveland Tr.") at 4:10–11, 17–22. Sheriff Cleaveland testified regarding the effective security measures already in place to detect and apprehend individuals who unlawfully cross the border. For example, he described seismic sensors that are buried underground and transmit a signal to law enforcement when triggered. *Id.* 11:23–12:12. Sheriff Cleaveland also testified that Border Patrol uses the BuckEye System, a network of trail cameras that transmits images to monitoring agents, reducing unnecessary deployments when triggered by wildlife. *Id.* 12:13–13:1. In addition, he testified about existing Anduril Autonomous Surveillance Towers, which employ radars programmed to detect human gait patterns and, upon detecting a person, automatically direct cameras to the area and transmit the footage to a supervisory Border Patrol agent. *Id.* 13:2–21. Sheriff Cleaveland further testified regarding manned patrols, blimps equipped with cameras and radar, and the Predator B. drones equipped with radar and cameras that monitor the border regions, including

from Sierra Blanca Station on the western end of the Big Bend Sector to the Gulf of Mexico. *Id.* 14:8–15:10.

Sheriff Cleveland's testimony demonstrates that neither Defendants nor the public interest are harmed if construction is enjoined through resolution of this case. Border Patrol already possesses extensive technological and operational capabilities to detect, monitor, and respond to the minimal unlawful border crossings in the Big Bend region. The testimony indicates that border security in the region does not depend on rapid construction of border barriers and road, but instead relies on a system of sensors, cameras, aerial assets, and law-enforcement personnel. This evidence supports Plaintiffs' position that maintaining the status quo during the pendency of this litigation would not materially impact Defendants' ability to carry out their border-security mission in the Big Bend region. Submittal of this testimony is timely, where it took place subsequent to the conclusion of briefing and is submitted prior to the government's stated end-date for the construction pause in BBT-2 and BBT-4. Defendants are not prejudiced by this evidence where they have already had the opportunity to cross-examine the witness and maintain the ability to respond to this motion.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion, permit the filing of the attached supplemental declarations and exhibits, and consider that evidence in adjudicating Plaintiffs' pending Emergency Motion for a Temporary Restraining Order or Preliminary Injunction.

DATED: September 19, 2026

Respectfully submitted,

*/s/* Emma Yip

Emma Yip (CA Bar No. 352446)
Center for Biological Diversity
2100 Franklin St., Ste 375
Oakland, CA 94612
Tel: (206) 858-2297
Fax: (520) 623-9797
eyip@biologicaldiversity.org

Zeynep J. Graves (CA Bar No. 298533)*
Shannon Eva Labuschagne (CA Bar No. 365633)
Center for Biological Diversity
2100 Franklin St., Ste 375
Oakland, CA 94612
Tel: (510) 844-7160
Fax: (520) 623-9797
zgraves@biologicaldiversity.org
slabuschagne@biologicaldiversity.org

Dustin Rynders (TX Bar No. 24048005)
TEXAS CIVIL RIGHTS PROJECT
P. O. Box 1108
Houston, TX 77251
Tel: (832) 767-3630 ext. 196
dustin@texascivilrightsproject.org

Charlotte Weiss (NY Attorney ID: 6313639)*
Kate Gibson Kumar (TX Bar No. 24137588)
TEXAS CIVIL RIGHTS PROJECT
P. O. Box 17757
Austin, TX 78760
Tel: (512) 474-5073 ext. 225
cweiss@texascivilrightsproject.org
kate@texascivilrightsproject.org

** Admitted Pro Hac Vice*

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed electronically through the CM/ECF system, which causes all parties or counsel to be served by electronic means.

DATED: September 19, 2026

Respectfully submitted,

*/s/* Emma Yip

Emma Yip (CA Bar No. 352446)
Center for Biological Diversity
2100 Franklin St., Ste 375
Oakland, CA 94612
Tel: (206) 858-2297
Fax: (520) 623-9797
eyip@biologicaldiversity.org