**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| FRIENDS OF THE RUIDOSA CHURCH, *et al.*,<br><br>*Plaintiffs*,<br><br>*v.*<br><br>MARKWAYNE MULLIN, *et al.*,<br><br>*Defendants*. | Civil Action No. 3:26-CV-01099-KC |

**DEFENDANTS' MOTION TO ISSUE A MEMORANDUM OPINION AND STAY PRELIMINARY INJUNCTION PENDING THE FILING AND RESOLUTION OF A PETITION FOR A WRIT OF CERTIORARI**

## TABLE OF CONTENTS

**INTRODUCTION** .......... 1

**ARGUMENT** .......... 2

**I. The Government Is Likely to Succeed on the Merits.** .......... 2

- **A. The Injunction Violates the Federal Rules of Civil Procedure** .......... 2
- **B. Plaintiffs' Constitutional Challenges to DHS's Waivers Are Meritless** .......... 3
  - **i. Plaintiffs' Major Questions Doctrine Claim is Meritless.** .......... 3
  - **ii. Plaintiffs' Nondelegation Doctrine Claim is Meritless.** .......... 5
  - **iii. Plaintiffs' Take Care Clause Claim is Meritless.** .......... 7
  - **iv. Plaintiffs' Presentment Clauses Claim is Meritless.** .......... 7
- **C. The Court's Overbroad Injunction Violates Basic Remedial Principles** .......... 8
- **D. The Issues in This Case Warrant Supreme Court Review** .......... 10

**II. The Balance of Harms Supports a Stay** .......... 10

**CONCLUSION** .......... 16

## TABLE OF AUTHORITIES

### Cases

*Am. Power & Light Co. v. SEC*,
329 U.S. 90 (1946) .......... 6

*Brnovich v. Biden*,
630 F. Supp. 3d 1157 (D. Ariz. 2022) .......... 7

*Califano v. Yamasaki*,
442 U.S. 682 (1979) .......... 8

*Clinton v. City of New York*,
524 U.S. 417 (1998) .......... 7

*Cnty. of El Paso v. Chertoff*,
2008 WL 4372693 (W.D. Tex. Aug. 29, 2008) .......... 6, 7

*Ctr. for Biological Diversity v. McAleenan*,
404 F. Supp. 3d 218 (D.D.C. 2019) .......... 6, 7

*Ctr. for Biological Diversity v. Mullin*,
2026 WL 836278 (D. Ariz. Mar. 26, 2026) .......... 6, 7

*Defs. of Wildlife v. Chertoff*,
527 F. Supp. 2d 119 (D.D.C. 2007) .......... 6, 7, 8

*El Paso Cnty.*, *Texas v. Trump*,
407 F. Supp. 3d 655 (W.D. Tex. 2019) .......... 10

*Evans v. Garza*,
161 F.4th 315 (5th Cir. 2025) .......... 9

*FCC v. Consumers' Rsch.*,
606 U.S. 656 (2025) .......... 6

*Florida v. United States*,
660 F. Supp. 3d 1239 (N.D. Fla. 2023) .......... 7

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
561 U.S. 477 (2010) .......... 7

*Gill v. Whitford*,
585 U.S. 48 (2018) .......... 8

*Holland Am. Ins. Co. v. Succession of Roy*,
777 F.2d 992 (5th Cir. 1985) ........................................ 15

*Hollingsworth* v. *Perry*,
558 U.S. 183 (2010) ........................................ 2, 9

*In re Border Infrastructure Env't. Litig.*,
284 F. Supp. 3d 1092 (S.D. Cal. 2018) ........................................ 6, 7

*Landmark Land Co., Inc. v. Office of Thrift Supervision*,
990 F.2d 807 (5th Cir. 1993) ........................................ 3

*Las Ams. Immigrant Advoc. Ctr. v. Biden*,
571 F. Supp. 3d 1173 (D. Or. 2021) ........................................ 7

*Mayfield v. U.S. Dep't Of Lab.*,
117 F.4th 611 (5th Cir. 2024) ........................................ 4

*Nat'l Infusion Ctr. Ass'n v. Kennedy*,
798 F. Supp. 3d 748 (W.D. Tex. 2025) ........................................ 5

*Nat'l Park Serv. v. Nat'l Tr. for Historic Pres. in the United States*,
No. 26A203, 2026 WL 2564318 (U.S. Aug. 31, 2026) ........................................ 9, 10, 13

*Nat'l Treasury Emps. Union v. Von Raab*,
489 U.S. 656 (1989) ........................................ 11

*Save Our Heritage Org. v. Gonzales*,
533 F. Supp. 2d 58 (D.D.C. 2008) ........................................ 6

*Schmidt v. Lessard*,
414 U.S. 473 (1974) ........................................ 3

*Sierra Club v. Ashcroft*,
2005 WL 8153059 (S.D. Cal. Dec.13, 2005) ........................................ 6

*Trump* v. *CASA, Inc.*,
606 U.S. 831 (2025) ........................................ 9

*Trump v. Sierra* Club,
588 U.S.930 (2019) ........................................ 10, 15

*United States v. Guzman-Padilla*,
573 F.3d 865 (9th Cir. 2009) ........................................ 11

*West Virginia v. EPA*,
597 U.S. 697 (2022) .......... 3, 4

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .......... 10, 13, 15

**Statutes**

Secure Fence Act of 2006,
Pub. L. No. 109-367, 120 Stat. 2638 (Oct. 26, 2006) .......... 5

Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (“IIRIRA”),
Pub. L. No. 104-208, Div. C, Title I, 110 Stat. 3009 (Sept. 30, 1996) .......... 1, 5

**Rules**

Federal Rules of Civil Procedure 52 .......... 1, 2, 3

Federal Rules of Civil Procedure 65 .......... 1, 2, 3

**Executive Materials**

*Declaring a National Emergency at the Southern Border of the United States*,
90 Fed. Reg. 8327 (Jan. 20, 2025) .......... 11

*Protecting the American People Against Invasion*, Exec. Order No. 14159 (Jan. 20, 2025) .......... 11

**Other Authorities**

11A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2955
(3d ed. 2017) .......... 3

H.R. Rep. No. 109-72 (May 3, 2005) .......... 5

## STATEMENT OF ISSUES

1. Whether the Court should issue a memorandum opinion explaining the factual and legal basis for the preliminary injunction entered in this case.

2. Whether the Court should stay the preliminary injunction entered in this case pending the filing and resolution of a petition for a writ of certiorari.

# INTRODUCTION

Defendants move the Court to stay its Order granting a preliminary injunction pending the filing and resolution of a petition for a writ of certiorari in the United States Supreme Court. *See* ECF No. 66 ("PI Order"). The Court's unprecedented order directs that Defendants "**SHALL NOT** build border barrier or related infrastructure, or engage in any construction or ground disturbing activities, in the Big Bend Sector until and unless Defendants comply with all applicable laws." *Id.* Further, the Court stayed the effectiveness of various waivers issued by the Secretary of Homeland Security to expedite border barrier construction in the Big Bend Sector. *Id.* But in violation of Federal Rules of Civil Procedure 65(d)(1)(A) and 52(a)(2), the Court did not provide the legal basis for that preliminary injunction, stating only that Plaintiffs are likely to succeed on "at least one of the claims in suit" without specifying which, and promising a memorandum opinion explaining the Court's "rationale" to follow. *Id.* Nearly one week later, the Court still has not issued an opinion. The Court should immediately issue its promised memorandum opinion.

The Court should also stay its order pending further review. The Court's overbroad injunction conflicts with numerous well-reasoned decisions from other courts and has no basis in law. At a minimum, the lopsided balance of the equities favors staying the injunction pending the Supreme Court's review. Plaintiffs' environmental, recreational, and aesthetic interests do not outweigh the harm to the public from halting the government's efforts to construct barriers to stop the flow of illegal immigration and drug smuggling across the southern border.

Congress has specified that the only available review of a district court order arising from the Secretary of Homeland Security's exercise of his waiver authority is petition for a writ of certiorari to the Supreme Court. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, Div. C, Title I § 102(c)(2)(C), 110 Stat. 3009-554 (Sept. 30,

1996), as amended. The Office of the Solicitor General intends to seek Supreme Court review of this Court's preliminary injunction. If an immediate stay is not granted by this Court, Defendants intend to seek expedited relief in the Supreme Court.

This Court should therefore issue its memorandum opinion, then grant an immediate stay of the preliminary injunction pending Supreme Court review. Defendants request that the Court issue its memorandum opinion as soon as possible, and that it order an accelerated briefing schedule to resolve this motion, with Plaintiffs' response due no later than Tuesday, October 13, 2026. In all events, Defendants ask the Court to resolve this motion on an expedited basis and grant the requested stay.[1]

## ARGUMENT

To obtain a stay of an injunction pending the filing and disposition of a petition for a writ certiorari, an applicant must show a likelihood of success on the merits, a reasonable probability of obtaining certiorari, and a likelihood of irreparable harm. *See, e.g.*, *Hollingsworth* v. *Perry*, 558 U.S. 183, 190 (2010) (per curiam). All factors overwhelmingly support a stay here.

### I. The Government Is Likely to Succeed on the Merits.

#### A. The Injunction Violates the Federal Rules of Civil Procedure

At the threshold, the Court's injunction does not comply with the Federal Rules of Civil Procedure. Rule 65(d)(1) says that "[e]very order granting an injunction . . . must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail ... the act or acts restrained or required." Further, Rule 52(a)(2) states that "[i]n granting or refusing an interlocutory injunction, the court must similarly state the findings and conclusions that support

[1] In accordance with Local Civil Rule 7(G), the parties conferred, and Plaintiffs oppose this motion.

its action." These requirements are "mandatory, and even emergency conditions have not warranted a departure from them." 11A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2955 (3d ed. 2017); *see Schmidt v. Lessard*, 414 U.S. 473, 474-76 (1974). The Court's injunction violates these requirements. It offers no factual or legal basis why the injunction issued, nor any specific findings and conclusions. Instead, the injunction promises that the Court's reasoning "will follow" at an unspecified point in the future. ECF No. 66.

The Court should immediately fix this violation by issuing a memorandum giving the reasons for an injunction. Indeed, the Court's failure to do so is itself grounds for an immediate stay. *See Landmark Land Co., Inc. v. Office of Thrift Supervision*, 990 F.2d 807, 811 (5th Cir. 1993) (vacating preliminary injunction where "the district court did not comply with Federal Rules of Civil Procedure 52(a) and 65(d)").

### B. Plaintiffs' Constitutional Challenges to DHS's Waivers Are Meritless

Without a written memorandum opinion, Defendants are left to guess at the reasoning for the Court's order. But *none* of Plaintiffs' claims has merit, so Defendants are likely to succeed in the Supreme Court regardless of the theory that this Court adopts.

#### i. Plaintiffs' Major Questions Doctrine Claim is Meritless.

Plaintiffs' Major Questions Doctrine claim fails both jurisdictionally and on the merits. First, the Court lacks jurisdiction to hear such a claim. Section 102(c)(2)(a) of IIRIRA states that a "cause or claim [challenging the Secretary's waiver authority] may only be brought alleging a violation of the Constitution of the United States. The court shall not have jurisdiction to hear any claim not specified in this subparagraph." *Id.* The Major Questions Doctrine is not a "violation of the Constitution" within the meaning of this subparagraph.

The Major Questions Doctrine asks whether, as a matter of statutory interpretation and congressional intent, courts should read "ambiguous" text in a statutory provision to confer broad and "unheralded power" on the Executive Branch. *West Virginia v. EPA*, 597 U.S. 697, 723-24, 730 (2022). In other words, the violation comes from an agency taking action in excess of its statutory authority. That the Major Questions Doctrine is not a constitutional claim is especially clear in this case. At heart, Plaintiffs' claim is a simple contrary-to-law argument. In issuing the waivers, the Secretary of Homeland Security, they allege, assumed powers beyond what Congress granted to him in the IIRIRA. *See* ECF No. 34 at 7-10. That is a claim of statutory interpretation. A finding that the Secretary violated, or went beyond, the authority granted to him in the IIRIRA is not "a violation of the Constitution of the United States." IIRIRA § 102(c)(2)(a)

Even if the Court had jurisdiction, Plaintiffs' Major Questions claim fails on the merits. The major questions doctrine only applies in "extraordinary cases" involving assertions of "vast economic and political significance" or "extravagant statutory power over the national economy." *West Virginia*, 597 U.S. at 716, 722-24 (citations omitted). Part of that analysis turns on "whether the agency has previously claimed the authority at issue." *Mayfield v. U.S. Dep't Of Lab.*, 117 F.4th 611, 617 (5th Cir. 2024). The Secretary has repeatedly invoked his waiver authority under the IIRIRA for the past two decades, and no court has ever found it to be improper. The invocation of the same authority in this case is a far cry from an "extraordinary case," "a radical or fundamental change to a statutory scheme," or the location of a newfound power in the vague language of an ancillary provision of the Act." *West Virginia*, 597 U.S. at 700, 722-25.

Moreover, the IIRIRA's language is neither vague nor ambiguous. IIRIRA § 102(c) grants the Secretary the authority to waive "all legal requirements." This means exactly what it says: the Secretary may waive all the legal requirements that would apply to border barrier construction.

Even assuming the Major Questions Doctrine applies in this instance, it is perfectly evident that the IIRIRA grants the Secretary the authority to issue waivers. The Court would be hard-pressed to find language clearer than this.

The separation of powers injury in this case is not from the Secretary acting consistent with his express statutory authority, but the Court's overbroad and intrusive injunction. Congress made the judgment to expedite construction of border infrastructure projects by giving the Secretary specific authority to waive any legal requirement necessary to ensure expeditious construction. Further, Congress's mandated that DHS achieve and maintain operational control of the international land border. *See* Secure Fence Act of 2006, Pub. L. No. 109-367, § 2(a), 120 Stat. 2638 (Oct. 26, 2006). "Operational control" means "prevention of all unlawful entries into the United States, including entries by terrorists, other unlawful aliens, instruments of terrorism, narcotics, and other contraband." *Id.* § 2(b). Congress has thus balanced the competing policy considerations between allowing environmental plaintiffs to delay construction through litigation and the need to secure the border. Indeed, in amending IIRIRA in 2005, Congress expressed frustration with "[c]ontinued delays caused by litigation." In its original form, the IIRIRA only waived the Endangered Species Act of 1973 and the National Environmental Policy Act of 1969. Pub. L. No. 104-208. In amending the law, Congress granted the Secretary of Homeland Security the current authority to waive any "laws that might impede the expeditious construction of security infrastructure along the border." *See* H.R. Rep. No. 109-72, at 171 (May 3, 2005). The Court has no grounds to second guess these legislatives judgments by injunctive decree.

**ii. Plaintiffs' Nondelegation Doctrine Claim is Meritless.**

Plaintiffs' Nondelegation Doctrine claim is equally meritless. "The Supreme Court has only twice in its history struck down federal laws under the nondelegation doctrine[,]" *Nat'l*

*Infusion Ctr. Ass'n v. Kennedy*, 798 F. Supp. 3d 748, 757 (W.D. Tex. 2025), *aff'd*, No. 25-50661, 2026 WL 2517285 (5th Cir. Aug. 26, 2026), and no court has ever found the IIRIRA to be a violation of the Nondelegation Doctrine.

To provide a constitutionally permissible "intelligible principle," Congress need only delineate "both 'the general policy' that the agency must pursue and 'the boundaries of [its] delegated authority.'" *FCC v. Consumers' Rsch.*, 606 U.S. 656, 673 (2025) (alteration in original) (quoting *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946)). In the IIRIRA, Congress established a policy of prioritizing improvement of border protection by expediting the construction of necessary barriers and roads. Section 102(a) delineates a general policy of "install[ing] additional physical barriers and roads" to "deter illegal crossings in areas of high illegal entry into the United States[,]" which § 102(c) incorporates by tying the waiver authority to "expeditious construction of the barriers and roads under this section." Congress also sets boundaries on the Secretary's authority: waivers may only be issued in connection with construction "in the vicinity of the United States border," IIRIRA § 102(a), (c), and, waivers may only be issued when "necessary to ensure expeditious construction" at those locations. *Id.* § 102(c).

This conclusion has been repeatedly recognized by courts in this district and elsewhere for over 20 years—including by a current Justice on the Supreme Court. *See Ctr. for Biological Diversity v. McAleenan*, 404 F. Supp. 3d 218, 242-49 (D.D.C. 2019) (K.B. Jackson, J.); *see also Ctr. for Biological Diversity v. Mullin*, 2026 WL 836278, at *4-5 (D. Ariz. Mar. 26, 2026); *In re Border Infrastructure Env't. Litig.*, 284 F. Supp. 3d 1092, 1130-37 (S.D. Cal. 2018); *Cnty. of El Paso v. Chertoff*, 2008 WL 4372693, at *2-4 (W.D. Tex. Aug. 29, 2008); *Save Our Heritage Org. v. Gonzales*, 533 F. Supp. 2d 58, 63-64 (D.D.C. 2008); *Defs. of Wildlife v. Chertoff*, 527 F. Supp.

2d 119, 126-29 (D.D.C. 2007); *Sierra Club v. Ashcroft*, 2005 WL 8153059, at *4-7 (S.D. Cal. Dec.13, 2005).

**iii. Plaintiffs' Take Care Clause Claim is Meritless.**

Plaintiffs' Take Care Clause claim is meritless. As an initial matter, the Court lacks jurisdiction to hear this claim. The Take Care Clause provides no basis to review the actions of subordinate Executive Branch officials, *see Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492-93 (2010), and also provides no private right of action, *see, e.g.*, *Florida v. United States*, 660 F. Supp. 3d 1239, 1283 (N.D. Fla. 2023); *Las Ams. Immigrant Advoc. Ctr. v. Biden*, 571 F. Supp. 3d 1173, 1180 (D. Or. 2021) (collecting cases); *Brnovich v. Biden*, 630 F. Supp. 3d 1157, 1178 (D. Ariz. 2022). Even so, Plaintiffs' claim fails on the merits. By issuing the waivers, the Secretary is exercising authority expressly granted by Congress, and he is faithfully executing the mandate of the IIRIRA to expeditiously construct barriers and roads along the U.S. border. Obeying a congressional mandate by exercising waiver authority expressly granted under a statute is fully in line with the Executive's obligation to faithfully execute the laws.

**iv. Plaintiffs' Presentment Clauses Claim is Meritless.**

Plaintiffs' Presentment Clauses claim is meritless. This issue has been litigated extensively over the past two decades, but every Court to hear such a claim has found the IIRIRA constitutional. *See Cnty. of El Paso*, 2008 WL 4372693, at *6-7; *Def. of Wildlife*, 527 F. Supp. 2d at 123-26; *Ctr. for Biological Diversity*, 2026 WL 836278, at *5-6; *Ctr. for Biological Diversity*, 404 F. Supp. 3d at 243-50; *In re Border Infrastructure Env't Litig.*, 284 F. Supp. 3d at 1140-41. The Presentment Clauses require that "any federal statute must pass both houses of Congress" and be presented to the President to either sign it into law or reject it. *Cnty. of El Paso*, 2008 WL

4372693 at *6. Accordingly, the Constitution does not authorize the President "to enact, to amend, or to repeal statutes." *Clinton v. City of New York*, 524 U.S. 417, 438 (1998).

Plaintiffs' claim fails because waiver of a legal requirement for a specific purpose is not amendment or repeal of a statute. Under a §102(c) waiver, the waived statutes are inapplicable only with respect to the construction of barriers and roads along the relevant portion of the border. The statutes retain their general legal force and effect because the Secretary's waiver extends to only a tiny fraction of the universe of cases to which any waived laws apply. This authority to waive application of one or more other statutes is both common and lawful. *See, e.g.*, *Defs. of Wildlife v. Chertoff*, 527 F. Supp. 2d at 125 & n.5 (D.D.C. 2007) (collecting some of the "myriad examples of waiver provisions in federal statutes").

**C. The Court's Overbroad Injunction Violates Basic Remedial Principles**

The Court's injunction stops all border barrier construction activity along several hundred miles of the southwest border without any regard for whether such overbroad relief is necessary to remedy the specific injuries asserted by Plaintiffs. This extraordinary injunction violates bedrock principles regarding the scope of judicial power; namely, that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Indeed, it is a basic principle of Article III that "a plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 585 U.S. 48, 73 (2018) (quotation omitted).

The Court's injunction violates these foundational principles several times over. The injunction prohibits Defendants from undertaking any border wall construction activity across five different projects covering approximately 340 miles along the southwest border. *See* Decl. of Paul Enriquez ¶¶ 9, 18-24 (summarizing Big Bend projects 1-5) (ECF No. 38-1) ("Enriquez Decl.").

The Court issued this overbroad relief purportedly to remedy the alleged injuries of only *three plaintiffs*, none of whom have "clearly carried" their burden to establish an entitlement to such sweeping relief. *Evans v. Garza*, 161 F.4th 315, 323 (5th Cir. 2025). Plaintiff Friends of Ruidosa Church alleged injuries solely related to construction activity near a small plot of land on which the church is located in Presidio County. *See* Decl. of Michael Wilber Green (ECF No. 19-2). Plaintiff Danny Miller primarily expressed concerns about alleged recreational and aesthetic injuries related to construction and river access in and around Big Bend National Park and the Lower Canyons corridor. *See* Decl. of Danny William Miller Junior (ECF No. 34-6). And Plaintiff Center for Biological Diversity made no effort to establish that the three members who submitted declarations in this case had ever seen or set foot on more than a small fraction of land where the barriers would be built. *See* Decl. of Willard "Bill" Guerra-Addington (ECF No. 55-1); Decl. of Bernadette Devine (ECF No. 34-4); Decl. of Laiken Jordahl (ECF No. 34-5). Nonetheless, the Court issued a blanket halt on all construction across the entire Big Bend Sector untethered from any record support that would justify such relief to these specific Plaintiffs. *See Trump* v. *CASA, Inc.*, 606 U.S. 831, 859, 861 (2025) (stating that that "federal courts do not exercise general oversight of the Executive Branch" and may not "prevent[] the Government from enforcing its policies against nonparties").

As the Supreme Court recently emphasized, "courts may not exceed the bounds of their lawful authority simply because they may think another branch has exceeded its own." *Nat'l Park Serv. v. Nat'l Tr. for Historic Pres. in the United States*, No. 26A203, 2026 WL 2564318, at *3 (U.S. Aug. 31, 2026). The overbreadth of the injunction alone warrants an immediate stay. *See id.*

**D. The Issues in This Case Warrant Supreme Court Review**

The Supreme Court's review is warranted. *Hollingsworth*, 558 U.S. at 190. The Court's injunction conflicts with over 20-years' worth of well-reasoned decisions by other district courts addressing the same issues and transgresses basic limits on judicial power to superintend critical border security projects expressly authorized by Congress and determined necessary by the Secretary of Homeland Security.

## II. The Balance of Harms Supports a Stay

The Court's injunction prohibiting border wall construction across roughly 340 miles of the southwest border will cause serious and irreparable harm to the Government and the public. The government's compelling interests in stopping illegal immigration and drug smuggling significantly outweigh the environmental, aesthetic, and recreational harms Plaintiffs allege they may suffer if the injunction is stayed.

The Supreme Court has already balanced these same equities in the government's favor in a similar border wall case when it granted a stay of a nationwide injunction in 2019 prohibiting border-wall construction. *See Trump v. Sierra Club*, 588 U.S. 930 (2019). There, in granting a stay, the Supreme Court necessarily concluded that the Government's compelling interests in border security and drug interdiction outweighed the respondents' environmental and recreational concerns. *Id.* Since the Supreme Court issued this decision, courts in this Circuit have either denied or stayed injunctions prohibiting construction of border barrier projects. *See El Paso Cnty. v. Trump*, No. 19-51144 (5th Cir. Jan. 8, 2020); *El Paso Cnty., Texas v. Trump*, 407 F. Supp. 3d 655, 665 (W.D. Tex. 2019). Any contrary decision by this Court would be manifestly erroneous in light of this authority and other Supreme Court decisions balancing similar equities in the government's favor. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24, 26, 33 (2008) (concluding that

the "public interest in national defense" from sonar testing outweighed plaintiffs' observational and scientific interests in while-watching); *Nat'l Park Service*, 2026 WL 2564318, at *3 (granting stay where national security harms outweigh plaintiff's alleged aesthetic injury from White House construction project).

The irreparable harm to the government and the public from enjoining construction of the border wall during this litigation is significant. The President has declared a national emergency because of the large numbers of aliens attempting to cross the southern border outside of designated ports of entry and the significant quantities of illegal drugs that continue to be smuggled across the border each year. *See Declaring a National Emergency at the Southern Border of the United States*, 90 Fed. Reg. 8327 (Jan. 20, 2025). Indeed, the Government's interest in "safety and . . . the integrity of our borders" is unquestionably "compelling," *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 672 (1989), as is its interest in "interdicting the flow of drugs" into the country, *United States v. Guzman-Padilla*, 573 F.3d 865, 889 (9th Cir. 2009). The government's interest is even stronger in the current context because of the "unprecedented flood of illegal immigration" that has occurred over the past several years. Exec. Order No. 14159, *Protecting the American People Against Invasion*, 90 Fed. Reg. 8443 (Jan. 20, 2025).

The injunction significantly frustrates the government's ability to stop the flow of illegal aliens and drugs across the border, and the record includes ample evidence of the severity of this problem. *See* ECF No. 38 at 11-12; Enriquez Decl. ¶¶ 6, 41-42. Tens of thousands of illegal aliens and thousands of pounds of illegal drugs have been apprehended in the Big Bend Sector over the past several years. *See* Enriquez Decl. ¶ 42; Third Declaration of Paul Enriquez ¶ 26. Between fiscal year 2021 and fiscal year 2025, Border Patrol apprehended over 89,000 illegal aliens attempting to enter through the Big Bend Sector and seized over 87,574 pounds of marijuana, over

867 pounds of cocaine, over 1,156 pounds of methamphetamine, over 12 pounds of heroin, and over 94 pounds of fentanyl. *Id.* During fiscal years 2021 and 2022, unlawful entries spiked to record highs of over 30,000 annual encounters in the Big Bend Sector. *See* Gov't PI Exhibits 4-5. Further, the quantity of illegal drugs seized in the Big Bend Sector in fiscal year 2026 surpassed the annual totals for each of the previous three fiscal years. *See* Gov't PI Exhibits 2-3.

Border barriers are effective in preventing these harmful incursions. They deter and impede smugglers and aliens from entering the U.S. illegally and increase the effectiveness of Border Patrol officers. Enriquez Decl. ¶ 6. However, an open segment along the southwest border without adequate border security infrastructure would create funnel points for illegal alien crossings and for the smuggling of contraband, such as narcotics, firearms, or ammunition. Declaration of Josh B. Barrett ("Barrett Decl.") ¶ 5. Such a funneling effect will lead to an increase in illegal crossings and entries in the Big Bend area if the border barrier projects cannot proceed. *Id.* ¶¶ 5, 8.

The necessity of border barrier construction in the Big Bend Sector is particularly critical to protect border security and overall public safety. *Id.* ¶ 7. There is a long history of Transnational Criminal Organizations ("TCOs") operating in the Big Bend Sector, engaging in a range of criminal activity that harms the United States, including human smuggling and trafficking of drugs and weapons. *Id.* ¶ 7-12. In December 2021, Border Patrol Agents in the Big Bend Sector apprehended an individual with murder and felony assault convictions as part of a failed human smuggling attempt. *Id*. ¶ 10. In August 2022, Border Patrol seized approximately 13,000 pounds of marijuana and over a dozen firearms in the Big Bend Sector, and the marijuana was confirmed to have crossed the border in the Big Bend Sector. In August 2023, Border Patrol apprehended the leader of the Juarez Cartel in the Big Bend Sector, and he admitted to wading across the Rio Grand River in the Big Bend Sector. *Id*. ¶ 12.

Recent incidents of illegal entries into the United States through the Big Bend Sector further illustrate the dangers in this area. *Id.*¶¶ 14-17. In May 2026, a Mexican national affiliated with a TCO in Mexico illegally entered the United States on foot near Presidio, Texas. *Id*. ¶ 14. The armed individual attempted to break into a home in Presidio before stealing a vehicle and fleeing to Marfa, Texas. *Id*. There, the suspect attempted to enter a school which housed children as young as four years old and was stopped only by locked doors. *Id*. After a lengthy chase, during which the suspect was actively shooting at the pursuing law enforcement, law enforcement succeeded in neutralizing the individual permanently. *Id*.

In June 2026, three individuals with cartel affiliations were apprehended in the Big Bend Sector. *Id*. ¶ 15. All three individuals admitted to crossing the border in the Big Bend Sector with assault-style rifles. *Id*. In August 2026, nine individuals were apprehended within Big Bend National Park during a failed human smuggling event. *Id*. ¶ 16. As recently as September 20, 2026, Border Patrol apprehended three subjects involved in an alien smuggling event within the Big Bend National Park. *Id.* ¶ 14.

In light of these serious law enforcement and security concerns along the southwest border, the public would benefit from a stay to permit the government to implement the border security policies it has determined are necessary to safeguard the country.

The Court failed to mention the government's compelling interest in border security at all in its order granting the injunction. *See* PI Order. The Court's failure to afford "[a] proper consideration" of these important interests, *Winter*, 555 U.S. at 23, and its "cursory" balancing of the equities, *id.* at 26, was erroneous and warrants an immediate stay. The IIRIRA reflects both a judgment and mandate by Congress that a border barrier system can meaningfully reduce illegal entry across the southern border. *See id.* § 102(a)-(b). Moreover, Congress specifically empowered

the Secretary of Homeland Security to waive "all legal requirements" that he, in his sole discretion, determines necessary to ensure expeditious construction of barriers and roads. *Id.* § 102(c). The Secretary has determined that these specific projects are in the public interest to further border security, and the Court has no legal basis to second guess that conclusion.

In addition to harms the injunction imposes on the Government's exigent interest in securing the border, the Government will sustain further irreparable harm from the financial and resource effects of the Court's injunction. *See generally* Third Enriquez Decl. ¶¶ 9-25. The government has awarded contracts for the five Big Bend border wall construction projects and, prior to the injunction, engineers, project managers, equipment operators, laborers, and specialized personnel have been working on a range of pre-construction and construction activities over the past several months. *See* Third Enriquez Decl. ¶¶ 14-19, 25. The Court's injunction stops all ground-disturbing activities and delays further barrier construction. Given the significant scale of this effort, the suspension of work is now imposing, and will continue to impose, significant costs on the Government, on the contractor and hundreds of individual workers. *See id* ¶¶ 20-24..

Each day the Court's injunction continues and contract performance on the projects is suspended, CBP will incur financial liabilities to the contractors for significant, otherwise-unnecessary costs, all of which CBP would not have incurred but for the Court's injunction. *Id.* ¶ 20. The costs include land leases, offices, maintaining equipment at multiple locations, costs for security to keep the equipment and materials from being stolen or vandalized, and labor costs to ensure that personnel who have been trained and are dedicated to execute the barrier construction projects remain available. *Id.*

CBP estimates that it will incur at least $462,800 per day in suspension costs based on rough projections provided by the contractors. *Id.* CBP will be obligated to pay these additional

costs, all of which would not have been incurred but for the Court's injunction. *Id.* In addition to these per day suspension costs, the injunction may result in the payment of delay damages in the form of acceleration costs to maintain the original project schedules in the event the suspension is lifted. *Id.* CBP will be required to pay these additional costs from funds that would otherwise be spent on actual barrier construction activities. *Id.* ¶¶ 20-21. The suspension and acceleration costs that CBP incurs cannot be recouped from the contractors if the injunction were to be lifted at a later date. *Id.* ¶. 22.

Depending on the duration of the injunction, CBP's contractors may also have to demobilize personnel and equipment from the project sites. *Id.* ¶ 23. Given the tight market for border barrier construction labor and equipment, if the injunction is stayed after the contractors have demobilized, the costs of remobilizing manpower and resources are likely to be significant. *Id.* Equipment and specialized personnel may not be available for remobilization. *See id.* ¶¶ 23-25. Contractors have provided rough estimates of the cost to demobilize and remobilize, and the cost to demobilize the Big Bend 1-5 projects could be well upwards of $7 million. *Id.* ¶ 23.

The government's compelling interests plainly outweigh whatever environmental, aesthetic and recreational injuries Plaintiffs and their members may incur if the district court's injunction remains in place. *See Sierra* Club, 588 U.S. at 930; *Winter*, 555 U.S. at 33. Plaintiffs can only speculate about lack of access and damage to certain areas inside Big Bend National Park because CBP is actively considering adjustments to reduce the scope of the original projects and avoid or minimize impacts based on the input it has received from the National Park Service and other stakeholders. *See* Second Enriquez Decl. ¶ 22, ECF No. 60-1; *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) (stating that "[s]peculative injury is not sufficient" to establish irreparable injury). Additionally, CBP has announced that no barrier

construction is planned inside Big Bend State Park. Second Enriquez Decl. ¶ 22, ECF No. 60-1. Further, the Sacred Heart Church is nearly two football fields away from the proposed barrier construction area, and Plaintiffs have not submitted any scientific or geological evidence to show how construction could possibly impact the foundational structure of the church from such a lengthy distance. *See* Gov't PI Ex. 7 (map of church and construction location); Enriquez Decl. ¶ 32. And for the other projects on private land where Plaintiffs have no ownership interests, Plaintiffs' asserted interests in undisturbed boating, star gazing, and hiking in a law-enforcement zone adjacent to the international border do not justify bringing all border wall construction across several hundred miles to a halt, let alone immediately while a cert petition is pending.

In any event, CBP has taken numerous steps to mitigate any potential environmental harms from barrier construction through the imposition of best-management practices, such as use of infrared lighting in rural areas instead of stadium-style lighting, biological and cultural surveys of the project area to identify cultural or biological resources, including plant and animal species, artifacts, or historic or cultural sites, and environmental monitors that observe construction activities. Enriquez Decl. ¶¶ 32-40. These steps ensure that construction is undertaken in an appropriate manner in recognition of the potential environmental impacts. The diminished recreational pleasure and sense of emotional fulfilment that a Plaintiffs may experience as a result Defendants' proposed barrier construction projects are insufficient to overcome the compelling harms to the public and Government explained above.

## CONCLUSION

For these reasons, the Court should immediately issue a memorandum opinion explaining the basis for its order granting a preliminary injunction. It should then stay the order granting a preliminary injunction pending the filing and disposition of Defendants' petition for a writ of certiorari and the Supreme Court's judgment in the case if certiorari is granted.

Dated: October 8, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ANDREW I. WARDEN
Assistant Branch Director

*/s/ Alexander J. Yun*
ALEXANDER J. YUN
(D.C. Bar No. 90028923)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
202-674-0255
Alex.Yun@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 8, 2026, the foregoing pleading was filed electronically through the CM/ECF system, which causes all parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

*/s/ Alexander J. Yun*
ALEXANDER J. YUN
Trial Attorney
United States Department of Justice