**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **FRIENDS OF THE RUIDOSA CHURCH, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CAUSE NO. EP-26-CV-1099-KC** |
| | § | |
| **MARKWAYNE MULLIN, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

**ORDER**

On this day, the Court considered Defendants' Motion to Stay Preliminary Injunction ("Motion"), ECF No. 74. On October 2, 2026, the Court granted Plaintiffs' request for a preliminary injunction, with a memorandum opinion to follow. Oct. 2, 2026, Order, ECF No. 66. Less than a week later, Defendants filed the Motion, primarily asking the Court to stay that injunction pending their efforts to seek review from the Supreme Court. Mot. 2. Defendants also asked the Court to "immediately issue its promised memorandum opinion." *Id.* at 1. Defendants' second request is now moot, as the Court entered its Memorandum Opinion, ECF No. 75, on October 14.

As to the request to stay the injunction, Defendants informed the Court on October 16 that if no decision is issued by October 21, they "will treat the absence of a ruling as a constructive denial of the motion and proceed with seeking relief in the United States Supreme Court." Notice 1, ECF No. 76. Ordinarily, the Court would await a response in opposition before adjudicating an opposed motion. And Plaintiffs' deadline to respond to the Motion has not yet elapsed. *See* W.D. Tex. L.R. CV-7(d)(2) ("A response to [motions other than discovery or case management motions] shall be filed not later than 14 days after the filing of the

motion."). Given the urgency of Defendants' request, the Court considers it without awaiting a response.

A stay pending appeal is "an extraordinary remedy." *Thomas v. Bryant*, 919 F.3d 298, 303 (5th Cir. 2019) (citation omitted). "There is substantial overlap between" the *Winter* factors that the Court just applied to decide Plaintiffs' preliminary injunction request and the *Nken* factors that govern the request to stay that injunction pending further review. *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). To assess a stay request, courts consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* (citation omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the court's] discretion." *Id.* at 433–34.

As to likelihood of success on the merits, the only claim that formed a basis for the Court's injunction was the major questions doctrine claim. Mem. Op. 4–11 & 12 n.4. Defendants' arguments that Plaintiffs' other claims fail are therefore unavailing. *See* Mot. 5–8. And Defendants' major questions doctrine arguments largely reiterate the arguments that the Court rejected in granting the preliminary injunction. *Compare id.* at 3–5, *with* Mem. Op. 4–11. Defendants contend that they will make a strong showing for Supreme Court review because the "injunction conflicts with over 20-years' worth of well-reasoned decisions by other district courts addressing the same issues . . . ." Mot. 10. This appears to be a reference back to seven district court decisions on IIRIRA-waiver border-wall construction, cited earlier in the nondelegation doctrine section of the Motion. *See* Mot. 6–7 (collecting cases). Critically,

however, none of those cases involved a major questions doctrine claim. *See Ctr. for Biological Diversity v. Mullin*, No. 25-cv-365, 2026 WL 836278 (D. Ariz. Mar. 26, 2026); *Ctr. for Biological Diversity v. McAleenan*, 404 F. Supp. 3d 218 (D.D.C. 2019); *In re Border Infrastructure Env't Litig.*, 284 F. Supp. 3d 1092 (S.D. Cal. 2018); *Cnty. of El Paso v. Chertoff*, No. 3:08-cv-196-FM, 2008 WL 4372693 (W.D. Tex. Aug. 29, 2008); *Save Our Heritage Org. v. Gonzales*, 533 F. Supp. 2d 58 (D.D.C. 2008); *Defs. of Wildlife v. Chertoff*, 527 F. Supp. 2d 119 (D.D.C. 2007); *Sierra Club v. Ashcroft*, No. 04-cv-272, 2005 WL 8153059 (S.D. Cal. Dec. 13, 2005). Therefore, the Court perceives no conflict between its decision and these prior decisions. While again "acknowledging that the law is unsettled" when it comes to whether the major questions doctrine is a constitutional clear statement rule sufficient to confer jurisdiction here, the Court finds that Defendants' likelihood of success on appeal is low. *See* Mem. Op. 7; *see also id.* at 4–11.

On the second factor, Defendants claim that the Government will suffer irreparable harm to its ability to stop illegal immigration and drug smuggling; and "incur at least $462,800 per day in suspension costs based on rough projections provided by . . . contractors." Mot. 10–14; Mot. Attach. A ("Enriquez Decl.") ¶¶ 10–12, ECF No. 74-1; Mot. Attach. B ("Barrett Decl.") ¶¶ 5–19, ECF No. 74-2. Regardless, "[a]ny time [a government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted). The core of Plaintiffs' major questions doctrine claim is that the people's representatives—Congress—did not, in fact, authorize Defendants' border wall infrastructure construction activities in the Big Bend Sector. But Defendants are also the people's representatives. And

because they will continue to be prevented from effectuating their policies, Defendants have demonstrated that they will experience at least some degree of irreparable harm absent a stay.

On the final two factors, Plaintiffs' irreversible environmental, aesthetic, economic, and recreational harms outweigh Defendants' inability to construct new border wall infrastructure for reasons discussed in the Memorandum Opinion. *See* Mem. Op. 12–14. The Court reiterates its conclusion that the primary harm to Defendants is in the form of "a temporary delay while this Court assesses the merits of the pending summary judgment motions." *Id.* at 14. If Defendants ultimately prevail on the merits, they can resume construction. But if Defendants are allowed to proceed with construction and Plaintiffs ultimately prevail on the merits, then both the natural landscape and Plaintiffs' ability to put it to their preferred uses will have been forever altered. Therefore, at least three of the four *Nken* factors cut against a stay of the injunction pending further review.

Defendants make one additional argument: that the Court's injunction is overbroad, in violation of the "basic principle" that "a plaintiff's remedy must be tailored to redress the plaintiff's particular injury." Mot. 8 (quoting *Gill v. Whitford*, 585 U.S. 48, 73 (2018)). To be sure, any injunction of a federal government policy that exceeds the scope necessary to remedy the plaintiffs' injuries constitutes an improper intrusion into the purview of the executive branch. *Trump v. CASA, Inc.*, 606 U.S. 831, 859 (2025). Defendants frame the Court's injunction as a sledgehammer to crack a nut—"a blanket halt on all construction across the entire Big Bend Sector" for the benefit of only "three plaintiffs," who have never "seen or set foot on more than a small fraction of land where the barriers would be built." Mot. 9. This framing poorly characterizes Plaintiffs themselves and the nature of the harm they seek to redress in this lawsuit.

First, Defendants elide the fact that two of the three Plaintiffs in this case are organizations. One Plaintiff, the Center for Biological Diversity, is an organization with "more than 101,600 members, including members who visit, recreate in, and enjoy the wildlife and public lands of the Big Bend region."[1] Pls.' Proposed Undisputed Facts ¶ 85, ECF No. 19-1. The Court heard testimony from two of the Center's members during the preliminary injunction hearing. *See* Prelim. Inj. Hr'g Tr. 117:7–149:8, ECF No. 72. Their testimony was emblematic not only of their own experience, but also their fellow members', and it described their activities throughout the Big Bend Sector. *See* Mem. Op. 12–13 (describing some of this testimony).

Second, the evidence showed that the harm that Plaintiffs have and would continue to suffer due to Defendants' construction activities is not isolated to the areas in which they "set foot." Mot. 15. The Court heard testimony from Jeffrey Renfrow, who was recognized without objection as an expert on "the nature, extent, and duration of the ecological impacts from recent border barrier construction activities in the Big Bend [Sector]." *See* Prelim. Inj. Hr'g Tr. 149:14–167:19. Renfrow testified at length regarding how this year's limited construction activities have already caused "significant harm to hydrologic function, vegetation and soils . . . that . . . will probably persist for decades if not centuries, and, in some cases, never recover," even with "significant long-term restoration" efforts. *Id.* at 155:10–15. Renfrow described how construction negatively affects the entire desert ecosystem by disturbing "hydrologic function" and "drainage patterns," such that even limited construction has widespread effects. *See, e.g.*, *id.* at 161:10–163:11 ("[W]e'll see a much larger impact on vegetation communities than the actual footprint."). In this way, the Court's injunction—stopping all ground disturbing activities pursuant to the Big Bend Waivers—is as narrowly tailored a remedy as the Court can conceive to

[1] This fact is undisputed. Defs.' Resp. Pls.' Proposed Undisputed Facts ¶ 85, ECF No. 24-2.

preserve the status quo in the context of the potential for such widespread harm. Defendants have not suggested any narrower alternative. *See* Mot. 8–9.

For the foregoing reasons, the Motion to Stay Preliminary Injunction, ECF No. 74, is **DENIED**. The Court's October 2, 2026, Preliminary Injunction **REMAINS IN EFFECT**.

**SO ORDERED**.

**SIGNED this 20th day of October, 2026.**

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE