# EXHIBIT 1

# SUPREME COURT OF THE UNITED STATES

No. 26A560

MARKWAYNE MULLIN, SECRETARY OF HOMELAND SECURITY, ET AL. *v.* FRIENDS OF THE RUIDOSA CHURCH, ET AL.

ON APPLICATION FOR STAY

[November 9, 2026]

PER CURIAM.

Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) grants the Secretary of Homeland Security broad authority to construct border barriers and roads "to deter illegal crossings in areas of high illegal entry into the United States." §102(a), 110 Stat. 3009–554, as amended, note following 8 U. S. C. §1103. The same section expressly authorizes the Secretary "'to waive all legal requirements'" as "'necessary to ensure expeditious construction'" of those barriers and roads, §102(c)(1), 119 Stat. 306, and sharply limits judicial review of all claims arising from such waiver determinations. Specifically, the statute provides that "'[a] cause of action or claim may only be brought alleging a violation of the Constitution of the United States'" and courts "'shall not have jurisdiction'" over nonconstitutional claims. §102(c)(2)(A).

Earlier this year, the Secretary invoked Section 102's waiver authority to initiate a border-construction project at the U. S.–Mexico border, in a region that U. S. Customs and Border Protection has designated the "Big Bend Sector." The Secretary found that the Big Bend Sector "is an area of high illegal entry" requiring additional border barriers, and waived the application of a variety of environmental and conservation laws to facilitate expeditious construction.

See 91 Fed. Reg. 7298 (2026), as amended by *id.*, at 40550; *id.*, at 27969, as amended by *id.*, at 34831; *id.*, at 46939.

Shortly thereafter, respondents—an individual river guide, an environmental nonprofit, and a nonprofit organization dedicated to preserving a historic church in Ruidosa, Texas—challenged those waiver determinations by filing suit in the U. S. District Court for the Western District of Texas. Respondents claimed, among other things, that the Secretary's waiver determinations "violat[ed] the major questions doctrine under the U. S. Constitution, Article I, Section 1." First Amended Complaint in No. 3:26–cv–01099 (WD Tex.), ECF Doc. 26, ¶¶75–85 (some capitalization omitted). Although styled as constitutional, that claim simply alleged that the Secretary exceeded his statutory authority in issuing the waivers. *Ibid.*

On October 2, 2026, the District Court entered a preliminary injunction blocking the Secretary's waivers and halting all associated construction. The District Court acknowledged that its jurisdiction was limited to constitutional claims. But it nonetheless concluded that respondents' "major questions doctrine claim" qualified because, in its view, the "major questions doctrine is a constitutional clear statement rule grounded in separation of powers." Memorandum Opinion in No. 3:26–cv–01099 (WD Tex.), ECF Doc. 75, at 7–8. The court further held that respondents' "major questions doctrine claim" was likely to succeed on the merits because the Secretary lacked "'clear congressional authorization' to issue" the waivers. *Id.*, at 8. Because the Fifth Circuit lacks jurisdiction to hear this case, IIRIRA §102(c)(2)(C), the Solicitor General filed an application requesting either summary reversal or a stay of the District Court's preliminary injunction.

We grant the requested stay. The Government is exceedingly likely to prevail on its argument that the District Court lacked jurisdiction to adjudicate respondents' so-called major-questions-doctrine claim. However it is

labeled, respondents' claim does not "'alleg[e] a violation of the Constitution of the United States,'" the only type of claim the statute permits district courts to adjudicate. IIRIRA §102(c)(2)(A). It alleges instead that the Secretary exceeded his statutory authority. And we have long recognized that "claims simply alleging" that the Executive Branch has exceeded its "statutory authority are not 'constitutional' claims." *Dalton* v. *Specter*, 511 U. S. 462, 472–474 (1994).

That conclusion does not change where, as here, a plaintiff invokes the major-questions doctrine. Many canons and rules of statutory interpretation reflect constitutional principles, including "constitutional avoidance, the clear-statement federalism rules, and the presumption against retroactivity." *Biden* v. *Nebraska*, 600 U. S. 477, 508 (2023) (BARRETT, J., concurring). When courts invoke those canons, however, they do so in service of adjudicating statutory claims, not constitutional ones. See *Clark* v. *Martinez*, 543 U. S. 371, 382 (2005) (explaining that litigants invoke the constitutional-avoidance canon to vindicate their "*statutory* rights"). The same is true when a court invokes "the major questions canon of statutory interpretation." *FCC* v. *Consumers' Research*, 606 U. S. 656, 705 (2025) (KAVANAUGH, J., concurring). There is no such thing as a "constitutional" major-questions claim.

The remaining factors also warrant a stay. To start, the District Court's order, which bars the Secretary from exercising his statutory authority to waive applicable laws as he "determines necessary to ensure expeditious construction" of border barriers under IIRIRA §102(c)(1), delays the Government's construction of border barriers and roads in the Big Bend Sector. The injunction thus impedes the Government from advancing its "compelling interests" in border security and integrity. *Treasury Employees* v. *Von Raab*, 489 U. S. 656, 672 (1989); see App. to Application 226a, ¶5.

In addition, the Government has presented a declaration from a U. S. Customs and Border Protection official, who attests that—because of the injunction—the Government is incurring nearly half a million dollars in costs per day, which "cannot be recouped" if it prevails at the end of this litigation. *Id.*, 222a, ¶20–22. "[W]hile the loss of money is not typically considered irreparable harm, that changes if the funds cannot be recouped and are thus irrevocably expended." *National Institutes of Health* v. *American Public Health Assn.*, 606 U. S. 998 (2025) (internal quotation marks omitted).

The balance of the equities also favors the Government. Respondents claim that construction in the Big Bend Sector will diminish their ability to use and enjoy the area. But Congress's enactment of IIRIRA §102(c)—which permits the Secretary to waive the requirements of environmental-protection and other conservation laws—reflects a clear preference for expeditious border construction over the very harms respondents assert. §102(c)(1). And courts "of equity cannot, in their discretion, reject the balance that Congress has struck in a statute." *United States* v. *Oakland Cannabis Buyers' Coop.*, 532 U. S. 483, 497 (2001). The Government's interest therefore outweighs any aesthetic, recreational, and environmental harm alleged by respondents. See *Winter* v. *Natural Resources Defense Council, Inc.*, 555 U. S. 7, 25–26 (2008).

* * *

The application for stay presented to JUSTICE ALITO and by him referred to the Court is granted. The injunction entered by the United States District Court for the Western District of Texas in case No. 3:26–cv–01099 is stayed pending the filing and disposition of the Government's petition for a writ of certiorari, if such writ is timely sought. Should certiorari be denied, this stay shall terminate automatically. In the event certiorari is granted, the stay shall

terminate upon the sending down of the judgment of this Court.

*It is so ordered.*

JUSTICE JACKSON would deny the application for stay.