**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| FRIENDS OF THE RUIDOSA CHURCH et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>MARKWAYNE MULLIN et al.,<br><br>*Defendants*. | Case No. 3:26-cv-01099-KC |

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION TO COMPEL DISCOVERY**

## STATEMENT OF ISSUES

1. Whether to grant Plaintiff Center for Biological Diversity's (the "Center's") motion to compel Defendants to provide complete answers to a narrowed subset of its First Set of Interrogatories (Interrogatories Nos. 1–3, as they relate to the Del Rio Sector) and to produce all responsive, nonprivileged documents to a narrowed subset of the Center's First Set of Requests for Production of Documents (Requests for Production Nos. 1–2).

Having repeatedly invoked unlawful-entry levels, construction costs, and contractual obligations to justify the challenged actions and resist relief before this Court and the Supreme Court, Defendants cannot now shield these underlying facts from discovery. Plaintiff Center seeks a narrowly tailored subset of discovery requests directed to those issues alone. Because the requested information bears directly on Plaintiffs' constitutional claims and the Court's consideration of appropriate remedies, Defendants should be required to provide complete responses and produce responsive, nonprivileged documents.

## FACTUAL BACKGROUND

Plaintiff Center moved to compel outstanding discovery on November 13, 2026, ECF No. 81 ("Motion"). Defendants oppose the Center's Motion principally on relevance grounds. ECF No. 83. Notably, and although Defendants alleged that withheld records were subject to the law enforcement privilege in their July 14, 2026 response to Plaintiff Center's discovery requests, Defendants' opposition alleges no such privilege and puts forward no evidence supporting the withholding of documents on that basis. *See* ECF No. 81-3; ECF No. 83. Additionally, inasmuch as Defendants claim that answering Interrogatory No. 2 would be unduly burdensome, ECF No. 83 at 8, Plaintiffs are willing to forgo a response despite its relevance to distinguishing the subset of people who claim asylum between ports of entry.

## ARGUMENT

### I. The geographic scope of the Lower Canyons Waiver is unique.

Defendants claim that the West Waiver, National Park Waiver, and Lower Canyons Waiver (together, the "Big Bend Waivers") are "essentially identical to each other" except, as Defendants rightly point out, for "a geographical distinction." ECF No. 83 at 3. But this geographic distinction is important: together, the Big Bend Waivers encompass the entire U.S.-Mexico border within the

Big Bend Sector. By contrast, the challenged Waivers encompass only a portion of the U.S.-Mexico border within the Del Rio Sector. Thus, it poses little issue for Plaintiffs to evince apprehension rates across the totality of the Waivers that span the Big Bend Sector where the government has provided only sector-wide apprehension data (setting aside the fact that apprehension figures are an imperfect proxy because they do not measure the number of people who unlawfully crossed the border). On the other hand, only a segment of the Del Rio Sector is implicated by the challenged Waivers, diminishing the utility of sector-wide apprehension data.

**II. The requested apprehension figures are relevant to Plaintiffs' claims.**

Final resolution of the Lower Canyons Waiver will likely rise or fall on this Court's decision regarding the West and National Park Waivers. Should this Court ultimately find that none of Plaintiffs' challenges to the West and National Park Waivers have legal merit, the same should be true of the Lower Canyons Waiver. The converse is likewise true. However, inasmuch as this Court's decision rests on any factual determination regarding whether the Big Bend Sector is an "area of high illegal entry," Plaintiffs should be afforded the opportunity to discover and present apprehension figures relevant to the portion of the Del Rio Sector encompassed by the Lower Canyons Waiver.

Apprehension figures are relevant for resolution of the nondelegation doctrine claim. Plaintiffs allege that, generally and as exercised here, Section 102(c) lacks a constitutionally sufficient limiting principle and general policy. Evidence regarding unlawful entry levels is relevant because it bears on whether the statute's purported constraint retains any meaningful limiting force or instead permits the Secretary to waive any law, anywhere along the border, he deems expedient. If the Executive may invoke IIRIRA's waiver authority in areas with low unlawful entry activity, that fact is probative of Plaintiffs' contention that the statutory limitation

and general policy have ceased to function as meaningful constitutional limits on delegated authority. Thus, apprehension figures should inform this Court's determination on whether Congress included an intelligible principle in Section 102(c) *and* whether the Big Bend Waivers amount to an as-applied violation of the nondelegation doctrine.

The same evidence is relevant to Plaintiffs' Take Care Clause claim. There, Plaintiffs contend that the Secretary has invoked Section 102(c) in a manner that effectively transforms a limited waiver authority into a limitless dispensing power. Evidence concerning unlawful crossings is therefore probative of whether the Executive is asserting a dispensing power to set aside a myriad of laws it has been charged with faithfully executing. U.S. Const. art. II, § 3.

**III. The requested discovery on construction contracts is relevant to remedy.**

Courts are "independently" responsible for "effectuat[ing] the will of Congress subject to constitutional limits." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024) (cleaned up). This obligation is fulfilled "by recognizing constitutional delegations" and "fixing the boundaries of the delegated authority." *Id.* It is, after all, "emphatically the province and duty of the judicial department to say what the law is," and when "a law [is] repugnant to the constitution" deem it "void." *See Marbury v. Madison*, 5 U.S. 137, 177 (1803).

The Fifth Circuit sets forth relevant standards for injunctive relief and vacatur—both of which are aided by Plaintiffs' factual inquiries. For example, to demonstrate that injunctive relief is an appropriate remedy, a plaintiff must show, among other things, "that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted." *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (citation omitted). When the Fifth Circuit balances this prong, allegations of "a *concrete* threatened injury in the form of millions of dollars of losses" outweighs "vague" allegations by the opposing party. *See Texas v. United States*, 809 F.3d 134,

186 (5th Cir. 2015), *as revised* (Nov. 25, 2015) (emphasis added). Likewise, in determining whether vacatur is appropriate, courts consider the "disruptive consequences of" setting aside agency action. *See Texas v. Biden*, 20 F.4th 928, 1000 (5th Cir. 2021), *as revised* (Dec. 21, 2021), *rev'd and remanded on other grounds*, 597 U.S. 785 (2022) (quoting *United Steel v. Mine Safety and Health Admin.*, 925 F.3d 1279 (D.C. Cir. 2019)).

Both vacatur and injunctive relief are vehicles that would afford Plaintiffs suitable remedies should this Court find in their favor. And full consideration of the appropriateness of remedial options is aided by Plaintiffs' ability to probe the validity of Defendants' claim, made before both this Court and the Supreme Court, that "the Government is incurring nearly half a million dollars in costs per day, which 'cannot be recouped' if it prevails at the end of this litigation." *See* Defs.' Mot. to Stay Preliminary Injunction, ECF No. 74 at 15; *Mullin v. Friends of the Ruidosa Church*, No. 26A560, 2026 WL 3386954, at *2 (U.S. Nov. 9, 2026).

Defendants cannot simultaneously rely on alleged construction costs and contractual obligations to establish irreparable harm while shielding the factual basis for those assertions from discovery. Information regarding the financial consequences of suspending construction, the extent to which the asserted costs are recoverable, and the contractual commitments[1] allegedly affected by prospective relief bears directly on the balance of equities and the disruptive consequences of any remedy—it is not, as Defendants claim, an attempt to litigate a separate FOIA dispute. Unredacted construction contracts would enable the Court to assess, based on a completed

[1] As Plaintiff stated in its Motion, it seeks, at minimum, the construction and IDIQ contracts for BBT 1 through 5. Mot. 10. Defendants have apparently changed the names of those border barrier projects. *See* CBP Smart Wall Map, https://www.cbp.gov/border-security/along-us-borders/smart-wall-map (last accessed Nov. 22, 2026) (describing the "Sierra Blanca 1 Project," "Van Horn 3 Project," "Presidio 2 Project," "Big Bend National Park 4 Project," and "Sanderson 5 Project").

factual record rather than generalized assertions, the degree of any alleged hardship that relief would impose on Defendants. Accordingly, the requested discovery is relevant not only to testing the factual basis of Defendants' claimed harms, but also to providing this Court with the record necessary to fashion appropriate relief should Plaintiffs prevail on their constitutional claims.

## CONCLUSION

For the reasons set forth above and in the Center's Motion, Plaintiff respectfully requests that this Court compel Defendants to provide complete answers to Plaintiff's interrogatories and to produce all responsive, nonprivileged documents. Additionally, and although Defendants have provided no support for their characterizations of proprietary financial information or law enforcement sensitive information, Plaintiffs would not oppose the entry of an appropriate protective order governing the production of responsive materials. Accordingly, the Court should grant Plaintiff's motion as modified by Plaintiff's proposed narrowing of Interrogatory No. 2.

DATED: November 23, 2026

Respectfully submitted,

/s/ Emma Yip

Emma Yip (CA Bar No. 352446)
Center for Biological Diversity
2100 Franklin St., Ste 375
Oakland, CA 94612
Tel: (206) 858-2297
Fax: (520) 623-9797
eyip@biologicaldiversity.org

Zeynep J. Graves (CA Bar No. 298533)*
Shannon Eva Labuschagne (CA Bar No. 365633)
Center for Biological Diversity
2100 Franklin St., Ste 375
Oakland, CA 94612
Tel: (510) 844-7160
Fax: (520) 623-9797
zgraves@biologicaldiversity.org
slabuschagne@biologicaldiversity.org

Dustin Rynders (TX Bar No. 24048005)
TEXAS CIVIL RIGHTS PROJECT
P. O. Box 1108
Houston, TX 77251
Tel: (832) 767-3630 ext. 196
dustin@texascivilrightsproject.org

Charlotte Weiss (NY Attorney ID: 6313639)*
TEXAS CIVIL RIGHTS PROJECT
P. O. Box 17757
Austin, TX 78760
Tel: (512) 474-5073 ext. 225
cweiss@texascivilrightsproject.org

** Admitted Pro Hac Vice*

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed electronically through the CM/ECF system, which causes all parties or counsel to be served by electronic means.

DATED: November 23, 2026

Respectfully submitted,

*/s/* Emma Yip

Emma Yip (CA Bar No. 352446)
Center for Biological Diversity
2100 Franklin St., Ste 375
Oakland, CA 94612
Tel: (206) 858-2297
Fax: (520) 623-9797
eyip@biologicaldiversity.org